1
2
3                    **UNITED STATES DISTRICT COURT**
4                    **EASTERN DISTRICT OF CALIFORNIA**
5
6    **JOE FLORES, an individual; and**          **1:05-CV-0291 OWW DLB**
     **CONNIE FLORES, an individual,**
                                                 **ORDER RE APPLICABILITY OF**
7                        **Plaintiffs,**          **STAY**
8                        **v.**
9    **EMERICH & FIKE, a professional**
     **corporation, et al.**
10                       **Defendants.**
11
12
13                       **I.   INTRODUCTION**
14        This is the third case filed by Joe and Connie Flores
15   ("Plaintiffs") concerning a series of packing and marketing
16   agreements entered into between Plaintiffs and DDJ, Inc., DDJ
17   LLC, and related entities and individuals.  DDJ, Inc., and DDJ
18   LLC filed for Chapter 7 Bankruptcy Protection on January 3, 2005.
19   Shortly thereafter, on March 1, 2005, Plaintiffs filed the
20   instant complaint (*Flores III*).
21        On May 26, 2005, the district court ruled that claims
22   brought against a number of the defendants[1] in *Flores III* are
23   subject to the automatic stay provision of the Bankruptcy Code,
24   because the allegations against those defendants concerned
25
     _____
26         [1]    Dennis Hagobian, Victoria Hagobian, the Dennis Hagobian
     Residence Trust, the Victoria Hagobian Residence Trust, Dennis
27   Vartan, the Dennis Vartan Residence Trust, the Dennis Vartan
     Family Trust, Judith Yeramian, the Lee Yeramian Exempt QTIP
28   Turst, the Judith Mary Yeramian Family Trust, W.D. Farming LLC,
     Russell Davidson, William Davidson, Michael Hedberg, Rod
     Christensen, and Yosemite Technologies, Inc.

                                    **1**

property of or belonging to the bankruptcy estate.  Doc. 72.  The district court requested further briefing on whether the stay should apply to the remaining Flores III defendants:  Emerich & Fike, David R. Emerich, David A. Fike, Jeffrey D. Simonian, Thomas A Pedreira, and Lawrence E Westerlund (the "Fike Defendants").  Finally, the district court ordered off calendar the pending motions to dismiss and to strike filed by the Fike Defendants, pending a decision on the applicability of the stay.[2] The Fike Defendants, the Flores', and the bankruptcy trustee have all responded to the district court's request for further briefing.

As discussed at the hearing on the instant motions, it is necessary to determine which claims against the Fike Defendants are subject to the automatic stay and which may be assertable in district court.  At the conclusion of the hearing, the district court ordered the bankruptcy trustee to file a report explaining whether the trustee intends to pursue any of the claims in this case on behalf of the estate.  If the trustee chooses to participate in this litigation, reconsideration of the conclusions contained herein may be necessary.

## II.   SUMMARY OF THE PARTIES' ARGUMENTS

The Fike Defendants responded to the district court's request for further briefing with a supplemental memorandum, Doc. 81, filed June 6, 2005, arguing that the stay should not apply to

---

[2]     An additional defendant, Sandy L. Vartan, who had not previously made an appearance in this case, filed an Ex Parte application for an order staying the proceedings against her. Doc. 80, filed June 6, 2005.  The district court ordered that the time for Ms. Vartan to respond would be extended until further order of the court.  Doc. 82, filed June 6, 2005.

the claims against them and urging the court to decide the pending motion to dismiss.  The Flores' responded to this memorandum by arguing that the stay should apply to the Fike Defendants because the *Flores III* complaint alleges that the Fike Defendants received property from the debtor's estate and engaged in a conspiracy to misappropriate assets of the estate.  Doc. 83, filed June 13, 2005, at 3.  The Bankruptcy Trustee also filed comments regarding the applicability of the stay, pointing out that the Flores' allege, among other things, that the Fike defendants received at least $100,000 in legal fees at a time when claimants, such as the Flores' remained unpaid.  Doc. 85, filed June 14, 2005 at ¶7.  The Bankruptcy trustee "believes that it is his duty to investigate the payment of these funds and attempt to recover, or preserve for recovery, these funds for the PACA claimants in the estate which include the Flores'."  *Id*. The Trustee admits that he has not been able to investigate the matter thoroughly, but believes that there may be actionable legal malpractice claims against the Fike defendants.  Id. at ¶¶8, 10.  The trustee "respectfully requests this Court determine that the automatic stay has application to the claims against the [Fike Defendants]... to allow both the Trustee to investigate the estate's claims further, and to allow either for an order for relief from the automatic stay to be entered in the bankruptcy court or [to approve] an agreement between the parties [identifying] a procedurally appropriate manner for the Trustee to join or intervene in this action prior to this matter moving forward...."  *Id*. at 4.

The Fike Defendants filed objections to the Bankruptcy Trustee's comments, Doc. 87, filed June 15, 2005, questioning

whether the Bankruptcy Trustee has standing to comment, arguing that the trustee misunderstands the nature of the complaint's allegations.

### III.  PROCEDURAL HISTORY

Plaintiffs' filed their initial complaint against DDJ, Inc., DDJ LLC, and others in 1999, asserting claims under the Perishable Agricultural Commodities Act ("PACA"), along with state law contract and tort claims.  *See Flores et al v. DDJ, Inc., et al.*, 1:99-cv-5878 AWI DLB ("*Flores I*").  In 2003, a jury found for the Flores' on all claims against DDJ Inc. and DDJ LLC ("the Judgment Debtors").

On October 15, 2004, the Flores' filed a second lawsuit, alleging that individual officers of the Judgment Debtors fraudulently transferred assets from the Judgment Debtors into their own names.  *See In Re Joe Flores, et a. v. Dennis Hagobian*, et al., 1:04-cv-6405 OWW DLB ("*Flores II*").

On January 3, 2005, DDJ, Inc. and DDJ, LLC filed for Chapter 7 bankruptcy protection.  Further proceedings in *Flores I* were stayed pursuant to the automatic stay provision of the Bankruptcy Code.  *Flores I,* Doc. 408 at 2.  Similarly, *Flores II* has been stayed pending notice of whether the bankruptcy trustees will allow the case to proceed.  *Flores II*, Doc. 19 at 3.

Shortly after the bankruptcy filing, the Flores' filed the 141-page complaint in this case ("*Flores III*").  The third complaint alleges various forms of alter ego liability, fraudulent transfers, and the existence of a racketeering enterprise.  Doc. 1 ("Compl."), filed Mar. 1, 2005.  *Flores III* names as defendants many of the individual and corporate

defendants named in *Flores I* and *Flores II*, although the Judgment Debtors (DDJ Inc. and DDJ LLC) are not named.  The new instant complaint names as defendants:  Emerich & Fike, a law firm that represented DDJ Inc. and DDJ LLC in *Flores I*, and a number of individual lawyers who practice at Fike (the "Fike Defendants").  Plaintiffs request damages, injunctive relief, and attorney's fees.

On May 10, 2005, counsel for DDJ Inc. and DDJ LLC filed a "notice of filing bankruptcy" in this case, asserting that these proceedings also are subject to the automatic stay because the pending claims concern property belonging to the debtors' estate.  The district court determined that the automatic stay applied to some of the defendants, but requested further briefing on the applicability of the stay to the remaining defendants.  Doc. 72.

## IV.   ALLEGATIONS IN *FLORES III*

Plaintiffs' complaint, which is 142 pages long, presents the following eleven "causes of action."

1.   Alter ego liability.  Compl. at 26.

2.   Malicious prosecution.  Compl. at 46.

3.   Malicious use of process, spoilation of evidence, and fraudulent concealment of evidence.  Compl. at 51.

4.   Violation of the Uniform Fraudulent Transfer Act [Civil Code § 3439 et seq.].  Compl. at 60.

5.   Violation of 7 U.S.C. §§ 499(b)(1), (2) & (4); PACA §§ 2(2) &(5); 21 U.S.C. §§ 331(a), (b), (c) & (k).  Compl. at 84.

6.   Fraud, Deceit, Intentional and Negligent Fraud, and Constructive Fraud and Breach of Fiduciary Duty.  Compl. at 86.

7.   Conversion.  Compl. at 89.

8.   Civil Racketeering in violation of 18 U.S.C. § 1961.

**5**

9.   Negligent interference with or procurement of a breach of contract.  Compl. at 124.

10.   Conspiracy to defraud and commit various other offenses against Plaintiff's business interests.   Compl. at 127.

11.   Invasion of privacy.  Compl. at 132.

Many of these causes of action are subdivided into numerous separate claims.[3]

## V.   **DISCUSSION**

### A.   **General Legal Standard**

The filing of a petition for bankruptcy, voluntary or otherwise, operates to automatically stay:

> the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

11 U.S.C. § 362(a)(2). The automatic stay provision usually precludes an action against non-debtor defendants.  *See United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1491 (9th 1993)(unless assets of bankrupt estate are at stake, automatic stay does not extend to actions against parties other than debtor); *Matter of Lockard*, 884 F.2d 1171, 1177-79 (9th Cir. 1989).[4]

---

[3]    The excessive length and repetitive nature of the complaint make it exceedingly difficult to understand and arguably violates Federal Rule of Civil Procedure 8(a)(requiring that a complaint contain a short and plain statement of the claims).

[4]    The Flores', in their supplemental response, cite to cases that do not shed light upon the legal questions presented in this motion.  For example, they cite *In re Continental Airlines, Inc.*, 152 B.R. 420 (D. Del. 1993), *In re Parkinson*, 102 B.R. 141 (C.D. Ill. 1988), *Matter of McGaughey*, 24 F.3d 904 (7th Cir. 1994), *In re Countryside Manor, Inc.*, 188 B.R. 489 (D. Conn.

**B.   Claims That Do Not Name the Fike Defendants**

The first (alter ego), fifth (violations PACA and related statutes), and sixth ("Fraud, Deceit, Intentional and Negligent Fraud, and Constructive Fraud and Breach of Fiduciary Duty") do not name the Fike Defendants.   These claims are stayed pursuant to previous orders in this case.

**C.   Claims that Clearly Do Not Implicate the Assets of the Bankruptcy Estate.**

Four additional causes of action, which do name the Fike Defendants, do not implicate assets of the Bankruptcy estate:

*Second Cause of Action for Malicious Prosecution*. Plaintiffs' malicious prosecution claim appears to allege, among other things, that the Fike Defendants asserted a breach of contract cross-complaint against the Flores without probable cause.   Compl. at ¶158.   Plaintiffs do not allege, however, that

─────────────────

1995), and *In re Conejo Enterprises, Inc., 96 F.3d 346* (9th Cir. 199), each of which discusses the test(s) that the ***Bankruptcy Court*** must apply to determine whether to modify the operation of an automatic stay.   These case do not address the threshold jurisdictional question of whether the automatic stay bars the district court from hearing a claim.   Similarly, the Flores' cite a number of cases concerning the Bankruptcy Court's "related to" jurisdiction:   *In re WorldCom, Inc., Securities Litigation,* 293 B.R. 308 (S.D.N.Y 2003); *In re Boston Regional Medical Center, Inc.,* 265 B.R. 645 (D. Mass. 2001); *Concerto Software, Inc. v. Vitaquest Intern., Inc.*, 290 B.R. 448 (D. Me. 2003); *Davis v. Life Investor's Ins. Co of America*, 282 B.R. 186 (S.D. Miss 2002); *In re Karta Corp.*, 296 B.R. 305 (S.D.N.Y. 2003).   Again, all of these cases concern the authority of the ***Bankruptcy Court*** to hear claims, not the operation of the automatic stay upon claims before the district court.   These cases might be relevant in the context of an appeal from a Bankruptcy court's decision on a petition for relief from the stay, but are not relevant to the instant motion.

any of the assets of the bankruptcy estate were affected by this alleged conduct.

*Third Cause of Action for Malicious Use of Process, Spoilation of Evidence, and Fraudulent Concealment of Evidence*. This cause of action appears to allege that the Fike Defendants conducted Discovery in an unfair and/or unlawful manner.  For example, Plaintiffs allege that the Fike Defendants (1) levied excessive copying charges upon Plaintiffs; (2) improperly sent a UCC-1 Financial Statement concerning the Flores' to another fruit packer (3) failed to produce documents in discovery that they later attempted to use at trial; and (4) destroyed relevant and discoverable documents.  Compl. at ¶¶ 180, 182, 184, 189-192, 196.  This cause of action does not appear to implicate any assets of the bankruptcy case.  Whether it states a claim is a separate issue.

*Ninth Cause of Action Negligent Interference With or Orocurement of a Breach of Contract*.  Plaintiffs' negligent interference with contract claim alleges that the Fike Defendants negligently sent a copy of the Flores' financial statement to another fruit packer.  As a result, Plaintiffs' assert that they lost their contract with that fruit packer.  This claim does not implicate assets of the bankruptcy estate.

*Eleventh Cause of Action for Invasion of Privacy*:[5] Referencing the UCC-1 Financial statement that was allegedly sent by the Fike Defendants to another fruit packer, Plaintiffs allege that this conduct constitutes an invasion of privacy.  this allegation do not implicates any assets belonging to the bankruptcy estate.

---

[5]     This claim is more appropriately labeled "Defamation" and the Fike Defendants refer to it as such.

In sum, the second, third, ninth and eleventh causes of action against the Fike Defendants do not implicate assets of the bankruptcy estate.  It has not been shown that the automatic stay bars litigation of these claims.  The Fike Defendants motion to dismiss and to strike as to these claims will be re-calendared for hearing.

**D.   Claims Requiring Additional Analysis.**

The four remaining causes of action -- the fourth, seventh, eighth, and tenth -- require additional analysis.

*The Fourth Cause of Action for Violation of the Uniform Fraudulent Transfer Act*.  Plaintiff alleges that various defendants engaged in unlawful transfers in violation of the Uniform Fraudulent Transfers Act (UFTA).  The complaint sets forth the dates, amounts, and parties involved in each allegedly fraudulent transfer.  The Fike Defendants are not mentioned in any of these specific fraudulent transfer allegations.  However, the Complaint does allege that:

> [T]he malicious prosecution as alleged in the SECOND CAUSE OF ACTION, the malicious abuse of process as alleged in the THIRD CAUSE OF ACTION, [the statutory violations] as alleged in the EIGHTH CAUSE OF ACTION, and Conspiracy to Defraud, to Interfere with the Business Relationship, to Unlawfully Injure a Business, to Destroy a Business, and to Defraud a Creditor...as alleged in the TENTH CAUSE OF ACTION...***played a major contributing factor in allotting time for the planning of the actual fraudulent transfer of proceeds*** belonging to ALTER EGO DDJ, INC. and AlTER EGO DDJ, LLC by [the Fike Defendants] with the actual intent to hinder, delay or defraud some or all of ALTER EGO DDJ, INC. and ALTER EGO DDJ, LLC's then and future creditors including and principally Plaintiffs in connection with the collection of their claims.

Compl. at 71.  This passage arguably suggests that the Fike

**9**

Defendants aided and abetted the fraudulent transfers by "alloting time for the planning of the actual fraudulent transfer of proceeds...." *Id.*

*The Seventh Cause of Action for Conversion.* Plaintiffs allege that many of the individual and corporate defendants committed a number of acts of conversion. As with the UFTA claim above, Plaintiffs assert that the Fike Defendants aided the other defendants' acts of conversion, by "conspiring, participating, and aiding and abetting by and through their actions as attorney(s) of record for Defendants... [the] successful...unlawful practice of conversion by means of [] fraudulent transfers..." Compl. ¶342.

*Eighth Cause of action for Civil Racketeering in violation of 18 U.S.C. § 1961.* In this cause of action, Plaintiffs allege generally that the "Defendants" engaged in Racketeering to further the general goal of misappropriating funds belonging to the bankruptcy estate. Specifically, the complaint alleges that one of the individual (non-Fike) defendants committed mail fraud by mailing allegedly fraudulent documents prepared by one of the individual non-Fike defendants. In addition, the complaint alleges that the Fike Defendants committed wire fraud when, among other things, the Fike Defendants faxed allegedly false documents to Plaintiffs during discovery in *Flores I*.[6]

*Tenth Cause of Action for Conspiracy to Defraud.* This claim alleges, among other things, that the Fike Defendants conspired with other individual defendants to (1) cover up unlawful

---

[6]    The Fike Defendants note that their previously-filed Motion to Dismiss asserts that these allegations fail to state a fraud claim at all, let alone a RICO claim.

activities by filing a counterclaim against Plaintiffs in *Flores I*; and (2) interfering with Plaintiffs' contractual business relationship with another fruit packing company.  Here, Plaintffs finally allege that the Fike Defendants may have come into possession of some assets of the bankruptcy estate. Specifically, the complaint asserts that Emerich & Fike were paid more than $100,000 in attorneys fees to accomplish many of the allegedly "questionable business transactions" described in the complaint.  Compl. at 510.  In response, the Fike Defendants assert that they received only $10,000 from their clients, with the remaining balance being paid out by the clients' insurer, Fireman's Fund.  *See* David Fike Decl. at ¶8 (attached to Doc. 34).

The Fourth, Seventh, Eighth, and Tenth causes of action described above set forth three types of allegations against the Fike Defendants: (1) that the Fike Defendants engaged in Racketeering, and otherwise aided the efforts of and/or conspired with the other defendants to misappropriate funds properly belonging to the bankruptcy estate; and (2) that the Fike Defendants received property of the bankruptcy estate in the form of attorney's fees from the other defendants.

The automatic stay provision usually precludes an action against non-debtor defendants.  *See Dos Cabezas Corp.*, 995 at 1491.  However, courts have carved out limited exceptions to this general rule:  (1) where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the

third-party defendant will in effect be a judgment or finding against the debtor," or (2) where "extending the stay against codefendants contributes to the debtor's efforts of rehabilitation." *Id.* at 1491 n.3 (9th Cir. 1993); *see also Morgan Stanley Mortg. Capital Inc. v. Insurance Com'r of State of Cal.*, 18 F.3d 790, 794 (9th Cir. 1994); *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 431 (2d Cir.1987) ("[W]here a non-debtor's interest in property is intertwined... with that of a bankrupt debtor [and] [i]f action taken against the non-bankrupt party would inevitably have an adverse impact on property of the bankrupt estate, then such action should be barred by the automatic stay."), cert. denied, 485 U.S. 103 (1988).[7]

A recent Bankruptcy case out of the Northern District of Illinois applying the above exceptions is instructive.  In *In re Kmart Corp.*, 285 B.R. 679 (N.D. Ill. 2002).  In *Kmart*, a creditor brought fraud, civil conspiracy, and other claims against a nondebtor.  The Bankruptcy Court examined two lines of cases establishing exceptions to the general rule that the automatic stay provision does not extend to claims against a nondebtor. The first set of cases concerns non-debtor defendants who might

---

[7]    "[W]hile seemingly broad in scope, the automatic stay provisions should be construed no more expansively than is necessary to effectuate legislative purpose." *In re Chugach Forest Prod., Inc.,* 23 F.3d 241, 245 (9th Cir. 1994).  The stated purpose of § 362(a)(3) is to "to prevent dismemberment of the estate" and to "enable an orderly distribution of the debtor's assets." *Id.* (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 341 (1977)).  So long as conduct does not "threaten to dismember the bankruptcy estate or impede the reorganization proceedings," incidental effects upon the bankruptcy estate are not sufficient to trigger the operation of the stay. *Id.*

have contribution claims against debtor defendants "sufficient [to create] identity of interest [] warrant[ing] staying litigation against [the] nondebtors." *Id*. at 688-89.   This exception the court found inapplicable under the circumstances. The court then examined a second line of cases "where the debtor's key personnel are diverted from the reorganization by the demands of discovery related to the third-party suit," citing cases that suggest irreparable harm would result when resources of the debtor are consumed in third-party litigation. *Id*. at 689.   The *Kmart* court found this exception inapplicable as well because (1) "uncontraverted evidence shows that Kmart has not participated in the trial since being severed from the case;" (2) the case would not demand burdensome discovery from the debtor; and (3) there was little chance that a judgment would threaten the debtor's interests.

Here, the claims brought against the Fike Defendants are intimately intertwined with the conduct of their former clients who are officers and directors of the debtors.   The Plaintiffs assert that the Fike Defendants in effect conspired with their former clients to injure Plaintiffs' economic interests arising out of Plaintiffs' business dealings with the DDJ parties.   A verdict in favor of the Flores' on a RICO claim against the Fike Defendants would likely implicate the remaining defendants, which, in turn, might require recovery from the debtors. Extending the stay to these claims against the Fike Defendants arguably would "contribute to the debtor's efforts of rehabilitation." *Dos Cabezas Corp.*, 995 at 1491 n.3.

By contrast, staying the aforementioned intertwined claims would not prejudice the Fike Defendants.   Although the Fike

Defendants "strenuously resist any dely in adjudicating the inflammatory and baseless claims that have been lodged against them" and suggest that the claims demand "prompt adjudication because they are patently without merit," they have not demonstrated any real potential for prejudice.

Based on the bankruptcy trustee's assertions, it is not unreasonable to afford the trustee a limited time to investigate the nature of the claims against the Fike Defendants.  A sixty (60) day stay is imposed to permit the trustee to evaluate potential claims.  As to the claims that do not implicate assets of the bankruptcy estate, allowing the claims to go forward results in piecemeal litigation.  Nevertheless, the Fike Defendants are entitled to have their motion to dismiss heard and decided.  As to claims that might impose potential liability upon the bankruptcy estate, these are not presently errors and omission claims against attorneys by their former clients or by an adverse party claiming to be a third party beneficiary of the attorney-client contract.  Rather, because the alleged acts of the Fike Defendants are so intertwined with the financial dealings of individuals associated with the debtor, these claims must be stayed.

## VI.  CONCLUSION

For the reasons set forth above:

(1)    The first (alter ego), fifth (violations PACA and related statutes), and sixth ("Fraud, Deceit, Intentional and Negligent Fraud, and Constructive Fraud and Breach of Fiduciary Duty") remain **STAYED** pursuant to previous orders in this case;

**14**

(2)    The second (malicious prosecution), third (malicious use of process, spoilation of evidence, fraudulent concealment of evidence), ninth (negligent interference with contract) and eleventh (invasion of privacy) causes of action against the Fike Defendants are not subject to the automatic stay;

(3)    The fourth (violation of the UFTA), seventh (conversion), eighth (civil racketeering), and tenth (conspiracy) causes of action have the potential to implicate assets of the bankruptcy estate and therefore must be **STAYED**, pending further order of the court.

(4)    With respect to those claims against the Fike Defendants that have **_not_** been stayed (the second, third, ninth, and eleventh causes of action), the Fike Defendants' motion to dismiss will be heard on **September 26, 2005, at 10:00 a.m. in Courtroom 2,** unless the court, upon receipt and review of the bankruptcy trustee's forthcoming status report, finds it necessary to take the motion off calendar.

SO ORDERED.


Dated: July 5, 2005

                                    /s/ OLIVER W. WANGER

                                    _____

                                        Oliver W. Wanger
                                    UNITED STATES DISTRICT JUDGE