**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOE FLORES, an individual; and CONNIE FLORES, an individual,<br><br>                    Plaintiffs,<br><br>              v.<br><br>EMERICH & FIKE, a professional corporation, et al.<br><br>                  Defendants. | 1:05-CV-0291 OWW DLB<br><br>**ORDER GRANTING MOTION TO STRIKE (DOC. 34) AND MOTION TO DISMISS (DOC. 33/35).** |

## I.   INTRODUCTION

This is the third case filed by Joe and Connie Flores ("Plaintiffs") concerning a series of packing and marketing agreements entered into between Plaintiffs and DDJ, Inc., DDJ LLC, and related entities and individuals. DDJ, Inc., and DDJ LLC filed for Chapter 7 Bankruptcy Protection on January 3, 2005. Shortly thereafter, on March 1, 2005, Plaintiffs filed the instant complaint (*Flores III*), naming as defendants a number of individuals involved with DDJ and affiliated corporate entities (the "DDJ Defendants"). The *Flores III* complaint also names as defendants the law firm of Emerich & Fike and several individual attorneys at that firm (collectively, the "Fike Defendants") who represent many of the DDJ Defendants.

The Fike Defendants move to dismiss and/or strike all of the claims against them. Specifically, the Fike Defendants move to dismiss the eighth cause of action (civil RICO) and to strike the

1

second (malicious prosecution), third (abuse of process), fourth
(violation of the uniform fraudulent transfer act), seventh
(conversion), ninth (negligent interference with contract), tenth
(conspiracy), and eleventh (invasion of privacy/defamation)
causes of action.

## II.   PROCEDURAL HISTORY

Plaintiffs' filed their initial complaint against DDJ, Inc.,
DDJ LLC, and others in 1999, asserting claims under the
Perishable Agricultural Commodities Act ("PACA"), along with
state law contract and tort claims.  *See Flores et al v. DDJ,
Inc., et al.*, 1:99-cv-5878 AWI DLB ("*Flores I*").  In 2003, a jury
found for the Flores' on all claims against DDJ Inc. and DDJ LLC
("the Judgment Debtors").

On October 15, 2004, the Flores' filed a second lawsuit,
alleging that individual officers of the Judgment Debtors
fraudulently transferred assets from the Judgment Debtors into
their own names.  *See In Re Joe Flores, et a. v. Dennis Hagobian*,
et al., 1:04-cv-6405 OWW DLB ("*Flores II*").

On January 3, 2005, DDJ, Inc. and DDJ, LLC filed for Chapter
7 bankruptcy protection.  Further proceedings in *Flores I* were
stayed pursuant to the automatic stay provision of the Bankruptcy
Code.  *Flores I,* Doc. 408 at 2.  Similarly, *Flores II* has been
stayed pending notice of whether the bankruptcy trustees will
authorize the case to proceed and whether the stay should be
lifted for that case.  (*Flores II*, Doc. 19 at 3.)

Shortly after the bankruptcy filing, the Flores' filed the
141-page complaint in this case ("*Flores III*").  The third

**2**

1   complaint alleges various forms of alter ego liability,

2   fraudulent transfers, and the existence of a racketeering

3   enterprise.  (Doc. 1 ("Compl."), filed Mar. 1, 2005.)  *Flores III*

4   names as defendants many of the individual and corporate

5   defendants named in *Flores I* and *Flores II*, although the Judgment

6   Debtors (DDJ Inc. and DDJ LLC) are not named.  The new complaint

7   names as defendants:  Emerich & Fike, a law firm that represented

8   DDJ Inc. and DDJ LLC in *Flores I*, and a number of individual

9   lawyers who practice at Fike (the "Fike Defendants").  Plaintiffs

10  request damages, injunctive relief, and attorney's fees.

11      On May 10, 2005, counsel for DDJ Inc. and DDJ LLC filed a

12  "notice of filing bankruptcy" in this case, asserting that these

13  proceedings also are subject to the automatic stay because the

14  pending claims concern property belonging to the debtors' estate.

15  The district court determined that the automatic stay applied to

16  some of the defendants, but requested further briefing on the

17  applicability of the stay to the remaining defendants.  (Doc.

18  72.)

19      The Chapter 7 Bankruptcy Trustee then submitted a report

20  indicating that the Trustee does not intend to pursue any of the

21  claims against the Fike Defendants and consented to an order

22  vacating the stay.  The district court vacated the stay and set

23  the Fike Defendants' previously-filed motions to dismiss and to

24  strike for hearing.

25      Oral argument on these motions was heard December 12, 2005.

26  On February 3, 2006, the related adversary bankruptcy proceeding

27  in Enoch Packing Inc., Joe Flores and Connie Flores v. DDJ Inc,

28  et al., James Salvan Trustee, Case No. 02-17736-A-7, was

1  dismissed without leave to amend.  (Docs 105 & 106.)  The Flores'

2  moved for reconsideration before the bankruptcy court.  (Doc.

3  107, dated Feb. 9, 2006.)

4

5                      III.  **FACTUAL BACKGROUND**

6      Joe and Connie Flores are apple growers based in Visalia,

7  California.  In September 1995, the Flores' entered into a

8  packing and marketing agreement with Fruit Marketing, Inc. (FMI),

9  now known as DDJ Inc.  During this relationship, FMI advanced the

10  Flores' money in exchange for a security interest in the Flores'

11  apple crops.  The terms of the loan are set forth in a promissory

12  note signed by Joe Flores.

13      In or around early 1998, the Flores began to suspect that

14  FMI was using improper accounting practices to calculate the

15  amount due to the Flores' under the packing and marketing

16  contract.  In April 1998, the Flores demanded access to all of

17  FMI's documents related to the handling and selling of the

18  Flores' 1997 and 1998 apple crops.  Throughout the remainder of

19  1998, the parties disputed the extent to which the Flores' were

20  entitled to access these documents and whether the Flores would

21  need to pay $0.53 per page for copies of the documents.

22      At some point in mid-1998, the Flores entered into a packing

23  and marketing agreement with a different fruit packer, Hemphill &

24  Wilson enterprises ("H&W").  On October 16, 1998, the Fike

25  Defendants, on behalf of their client FMI, sent a letter to H&W,

26  informing H&W that FMI had a secured interest in the proceeds

27  from the Flores' 1998 apple crop.  On October 26, a

28  representative from H&W informed the Flores that H&W would not

                                **4**

perform the contract under such circumstances.  On October 27,
the Fike Defendants sent a letter to the Flores' formally
demanding payment of the amount due under the note.  Throughout
this entire period, the Flores' were still engaged in a dispute
with FMI, represented by the Fike Defendants, over how much the
Flores would pay to obtain copies of FMI's documents.

On April 27, 1999, an attorney filed a complaint on behalf
of the Flores, naming DDJ and related entities and individuals as
defendants.  *Flores, et al., v. DDJ Inc., et al.*, 1:99-cv-5878.
Disputes over access to documents from FMI's files continued
throughout 1999 and 2000.  Eventually, the Flores' received a
large number of documents from FMI.  However, the Flores' now
assert that these documents had been "sanitized," by one of the
DDJ Defendants, Dennis Hagobian, who was seen "shredding
documents from sales jackets for many days."  (*See* J. Flores
Decl. at ¶58.)  The evidence of document destruction was known to
the Flores' during the Flores I trial.

On July 31, 1999, DDJ sold most of its property to Norman
Trainer and his partner Steven Taft ("Trainer and Taft").  Among
the assets transferred to Trainer and Taft was the Flores'
promissory note. As part of the transaction, DDJ and Trainer and
Taft entered into an agreement whereby DDJ agreed to defend
against the Flores' lawsuit and pursue the counterclaim on behalf
of Trainer and Taft.

The Fike Defendants filed a cross-complaint against the
Flores on behalf of DDJ, alleging breach of contract and seeking
payment on the promissory note.  The Flores later challenged
DDJ's standing to bring the counterclaim on behalf of Trainer and

1  Taft.  Judge Ishii allowed the claim to go forward.

2      A jury trial commenced in July 2003.  On July 25, a jury

3  returned a special verdict, finding for plaintiffs on all causes

4  of action alleged against DDJ and finding for the Flores' on the

5  counterclaims.  The jury determined that the Flores' were

6  entitled to damages.

7      On October 15, 2004, the Flores' filed a second lawsuit,

8  alleging that individual officers of the Judgment Debtors

9  fraudulently transferred assets from the Judgment Debtors into

10 their own names.  *See In Re Joe Flores, et al. v. Dennis*

11 *Hagobian*, et al., 1:04-cv-6405 ("*Flores II*").

12     On January 3, 2005, DDJ, Inc. and DDJ, LLC filed for Chapter

13 7 bankruptcy protection.

14

15            **IV.   ALLEGATIONS IN *FLORES III***

16     Plaintiffs' complaint, which is **142 pages long**, presents the

17 following eleven "causes of action."[1]

18     1.   Alter ego liability.  (Compl. at 26.)

19     2.   Malicious prosecution.  (*Id*. at 46.)

20     3.   Malicious use of process, spoilation of evidence, and
            fraudulent concealment of evidence.  (*Id*. at 51.)
21
22     4.   Violation of the Uniform Fraudulent Transfer Act [Civil
            Code § 3439 et seq.].  (*Id*. at 60.)
23     5.   Violation of 7 U.S.C. §§ 499(b)(1), (2) & (4); PACA §§
            2(2) &(5); 21 U.S.C. §§ 331(a), (b), (c) & (k).  (*Id*.
24          at 84.)
25     6.   Fraud, Deceit, Intentional and Negligent Fraud, and
            Constructive Fraud and Breach of Fiduciary Duty.  (*Id*.
26

27 ────────────────

       [1]   Many of these causes of action are subdivided into
28 numerous separate "claims."

**6**

1    at 86.)

2    7.    Conversion.  ((*Id.* at 89.)

3    8.    Civil Racketeering in violation of 18 U.S.C. § 1961.

4    9.    Negligent interference with or procurement of a breach
           of contract.  (*Id.* at 124.)

5

6    10.   Conspiracy to defraud and commit various other offenses
           against Plaintiff's business interests.  (*Id.* at 127.)

7    11.   Invasion of privacy.  (*Id.* at 132.)

8    Although the complaint in this case is detailed and very lengthy,

9    only a few factual allegations are directed at the Fike

10   Defendants.  Specifically, the Complaint alleges that the Fike

11   Defendants:

12       (1)    Prosecuted the cross-complaint in *Flores I* without

13              probable cause as to both Joe Flores and Connie Flores.

14       (2)    Attempted to charge Joe Flores $0.53 per page to copy

15              documents prior to the commencement of litigation in

16              *Flores I*.

17       (3)    Sent correspondence to H&W, the Flores' new marketing

18              agent, notifying H&W that FMI had a secured interest in

19              the Flores' 1998 apple crop based on an outstanding

20              debt allegedly owed to FMI by the Flores'.

21       (4)    Failed to produce documents in discovery that Fike

22              defendants later attempted to use at trial.

23       (5)    Destroyed relevant documents (or at least conspired to

24              destroy them).

25       (5)    Maintained the underlying action in a manner to buy the

26              DDJ Defendants additional time to defraud their

27              creditors.

28       (6)    The DDJ Defendants' alleged fraudulent transfers were

1    used to pay the Fike defendant's legal fees.

2    **V.   STANDARD OF REVIEW**

3    **A.   Motion to Strike**.

4    The Fike Defendants move to strike the second (malicious

5    prosecution), third (abuse of process), fourth (violation of the

6    uniform fraudulent transfer act), seventh (conversion), ninth

7    (negligent interference with contract), tenth (conspiracy), and

8    eleventh (invasion of privacy/defamation) causes of action under

9    California's "Anti-SLAPP" statute, California Code of Civil

10   Procedure Section 425.16, which provides in relevant part:

11       A cause of action against a person <u>arising from</u>
         any act of that person in furtherance of the
12       person's right of petition or free speech under
         the United States or California Constitution in
13       connection with a public issue shall be subject to
         a special motion to strike, unless the court
14       determines that the plaintiff has established that
         there is a probability that the plaintiff will
15       prevail on the claim.

16                        ***

17       As used in this section, "act in furtherance of a
         person's right of petition or free speech under
18       the United States or California Constitution in
         connection with a public issue" includes:
19
20           (1) any written or oral statement or writing
             made before a legislative, executive, or
21           judicial proceeding, or any other official
             proceeding authorized by law;
22
             (2) any written or oral statement or writing
23           made in connection with an issue under
             consideration or review by a legislative,
24           executive, or judicial body, or any other
             official proceeding authorized by law;
25
             (3) any written or oral statement or writing
26           made in a place open to the public or a
             public forum in connection with an issue of
27           public interest;
28           (4) or any other conduct in furtherance of
             the exercise of the constitutional right of
             petition or the constitutional right of free
             speech in connection with a public issue or

**8**

1     an issue of public interest.

2   Cal. Code Civ. Pro. § 425.16(b)(1) & (e)(emphasis added).

3     A court considering a motion to strike under the anti-SLAPP

4   statute must engage in a two-part inquiry.  First, a <u>defendant</u>

5   must make an initial *prima facie* showing that the plaintiff's

6   suit "aris[es] from" activity protected by the Anti-SLAPP

7   statute.  *Brill Media Co. v. TCW Group, Inc.,* 132 Cal. App. 4th

8   324, 329 (2005); Cal. Code Civ. Pro. § 425.16(b)(1).  In

9   performing this analysis, the California Supreme Court has

10  stressed, "the critical point is whether the plaintiff's cause of

11  action itself was *based on* an act in furtherance of the

12  defendant's right of petition or free speech." *City of Cotati v.*

13  *Cashman*, 29 Cal. 4th 69, 78 (2002) (emphasis in original).

14    If the defendant is able to make this threshold showing, the

15  burden shifts to the plaintiff to demonstrate a probability of

16  prevailing on the challenged claims.  In practice, a plaintiff

17  must show that the claim is "both legally sufficient and

18  supported by a sufficient prima facie showing of facts to sustain

19  a favorable judgment if the evidence submitted by the plaintiff

20  is credited." *Jarrow Formulas, Inc. v. LaMarche,* 31 Cal. 4th

21  728, 744 (2003).  Claims for which Plaintiff is able to satisfy

22  this burden are "not subject to being stricken as a SLAPP." *Id*.

23

24    **B.   <u>Motion to Dismiss</u>**.

25    The Fike Defendants move to dismiss the eighth cause of

26  action (civil RICO).  Federal Rule of Civil Procedure 12(b)(6)

27  provides that a motion to dismiss may be made if the plaintiff

28  fails "to state a claim upon which relief can be granted."

1    However, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are

2    disfavored and granted only where the claim is legally

3    insufficient.  The question before the court is not whether the

4    plaintiff will ultimately prevail; rather, it is whether the

5    plaintiff could prove any set of facts in support of his claim

6    that would entitle him to relief.  *See Hishon v. King & Spalding*,

7    467 U.S. 69, 73 (1984).  "A complaint should not be dismissed

8    unless it appears beyond doubt that plaintiff can prove no set of

9    facts in support of his claim which would entitle him to relief."

10   *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002)

11   (citations omitted).

12        In deciding whether to grant a motion to dismiss, the court

13   "accept[s] all factual allegations of the complaint as true and

14   draw[s] all reasonable inferences" in the light most favorable to

15   the nonmoving party.  *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th

16   Cir. 1999); *see also Rodriguez v. Panayiotou*, 314 F.3d 979, 983

17   (9th Cir. 2002).  A court is not "required to accept as true

18   allegations that are merely conclusory, unwarranted deductions of

19   fact, or unreasonable inferences."  *Sprewell v. Golden State*

20   *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

21

22                        **VI.   DISCUSSION**

23   **A.   Motion to Strike the Second, Third, Fourth, Seventh,
          Ninth, Tenth, and Eleventh Causes of Action as to the**

24        **Fike Defendants**.

25        The Fike Defendants advance a number of general arguments in

26   support of their motion to strike the Second, Third, Fourth,

27   Seventh, Ninth, Tenth, and Eleventh Causes of Action (all of

28   Plaintiff's state law causes of action against the Fike

                                **10**

Defendants).  First, the Fike Defendants maintain that
California's Anti-SLAPP statute applies to all of these claims.
If the Anti-SLAPP statute applies, Plaintiffs are required to
establish a probability of prevailing on the covered claims by
setting forth facts that support a prima facie case.

The Fike Defendants maintain that Plaintiffs cannot
establish a prima facie case for any of the claims subject to the
motion to strike.  Along with claim-specific arguments, the Fike
Defendants argue generally that (a) that California's Litigation
Privilege, Cal. Civ. Code § 47(b), bars all of Plaintiffs' state
law claims because the claims arise out of communications they
made as attorneys in the context of litigation; and (b) any state
law claims based upon a conspiracy theory are barred by
California Civil Code § 1714.10(a), which requires a plaintiff to
obtain a court order prior to filing a claim against an attorney
for civil conspiracy with his or her client.

### 1.   Legal Background.

#### a.   California's Anti-SLAPP Statute.

As discussed, a court considering a motion to strike under
the anti-SLAPP statute must engage in a two-part inquiry.  First,
a <u>defendant</u> must make an initial *prima facie* showing that the
plaintiff's suit "aris[es] from" activity protected by the Anti-
SLAPP statute.  *Brill Media,* 132 Cal. App. 4th at 329; Cal. Code
Civ. Proc. § 425.16(b)(1).  A cause of action does not "arise
from" protected activity simply because it is filed after
protected activity took place.  *Cashman*, 29 Cal. 4th at 76-77.
Nor does the fact "[t]hat a cause of action arguably may have

1  been triggered by protected activity" necessarily mean that it

2  arises from such activity. *Cashman*, 29 Cal. 4th at 78.  The

3  trial court must instead focus on the substance of the

4  plaintiff's lawsuit in analyzing the first prong of a special

5  motion to strike.  *Scott v. Metabolife Intern., Inc.*, 115 Cal.

6  App. 4th 404, 413-414 (2004); *see also Cashman,* 29 Cal. 4th at

7  78.  In performing this analysis, the California Supreme Court

8  has stressed, "the critical point is whether the plaintiff's

9  cause of action itself was *based on* an act in furtherance of the

10  defendant's right of petition or free speech." *Cashman,* 29 Cal.

11  4th at 78 (emphasis in original).  In other words, "the

12  defendant's act underlying the plaintiff's cause of action must

13  *itself* have been an act in furtherance of the right of petition

14  or free speech."  *Id.*

15      If the defendant is able to make this threshold showing, the

16  burden shifts to the plaintiff to demonstrate a probability of

17  prevailing on the challenged claims.  In practice, a plaintiff

18  must show that the claim is "both legally sufficient and

19  supported by a sufficient prima facie showing of facts to sustain

20  a favorable judgment if the evidence submitted by the plaintiff

21  is credited."  *Jarrow,* 31 Cal. 4th at 738.  Claims for which

22  Plaintiff is able to satisfy this burden are "not subject to

23  being stricken as a SLAPP."

24

                   **b.**   ***Plaintiffs' General Objections to the***
25                          ***Application of the Anti-SLAPP Statute.***

26      The Flores rase two general arguments, based on statutory

27  exemptions to the Anti-SLAPP law, in an attempt to establish that

28  the Anti-SLAPP provisions do not apply to any of their claims.

Section 425.17 exempts from Anti-SLAPP coverage certain public interest lawsuits:

> Section 425.16 does not apply to any action brought <u>solely in the public interest or on behalf of the general public</u> if all of the following conditions exist:
>
>> (1) The plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member. A claim for attorney's fees, costs, or penalties does not constitute greater or different relief for purposes of this subdivision.
>>
>> (2) The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons.
>>
>> (3) Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter.

However, nowhere in the nine pages of Joe Flores' opposition brief or their 142 page complaint is there any indication that this lawsuit satisfies the conditions set forth in Section 425.17. In fact, the record suggests it is strictly a private dispute. Plaintiffs here seek monetary damages for themselves only. None of Plaintiff's claims purport to vindicate an important right solely in the public interest or on behalf of the general public. Plaintiffs have large, and very personal, stakes in the outcome of this litigation. The section 425.17 exemption does not apply.

Plaintiffs also argue that a second exemption, set forth in § 425.17(c) applies in this case. Section 425.17(c) provides:

> Section 425.16 [the Anti-SLAPP provisions] do[] not apply to any <u>cause of action brought against a person primarily engaged in the business of selling or leasing goods or services</u>, including, but not limited to,

**13**

insurance, securities, or financial instruments, arising from any statement or conduct by that person if both of the following conditions exist:

(1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services.

(2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer, or the statement or conduct arose out of or within the context of a regulatory approval process, proceeding, or investigation, except where the statement or conduct was made by a telephone corporation in the course of a proceeding before the California Public Utilities Commission and is the subject of a lawsuit brought by a competitor, notwithstanding that the conduct or statement concerns an important public issue.

(emphasis added).  Essentially, this provision exempts from the Anti-SLAPP statute any statements or conduct made by a seller or lessor of goods and services during the course of a commercial transaction either to a potential buyer or customer.  However, the exemption only applies to causes of action brought against "person[s] primarily engaged in the business of selling or leasing goods or services...."   The Fike Defendants, who are attorneys, are not covered by the plain language of this provision, even though, technically, as attorneys, they market legal services to the public.  Their alleged actions here do not pertain to efforts to market their services nor were representations made to potential consumers or to gain a competitive advantage.  This exception is also inapplicable.

**14**

### c.    California's Litigation Privilege.

California Civil Code § 47(b) provides in pertinent part.

A privileged publication or broadcast is one made:

(a)   In the proper discharge of an official duty.

(b)   In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure, except as follows:

> (1) An allegation or averment contained in any pleading or affidavit filed in an action for marital dissolution or legal separation made of or concerning a person by or against whom no affirmative relief is prayed in the action shall not be a privileged publication or broadcast as to the person making the allegation or averment within the meaning of this section unless the pleading is verified or affidavit sworn to, and is made without malice, by one having reasonable and probable cause for believing the truth of the allegation or averment and unless the allegation or averment is material and relevant to the issues in the action.

                        ***

(c)   In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information. This subdivision applies to and includes a communication concerning the job performance or qualifications of an applicant for employment, based upon credible evidence, made without malice, by a current or former employer of the applicant to, and upon request of, one whom the employer reasonably believes is a prospective employer of the applicant. This subdivision authorizes a current or former employer, or the employer's agent, to answer whether or not the employer would rehire a current or former employee. This subdivision shall not apply to a communication concerning the speech or activities of an applicant for employment if the speech or activities are constitutionally protected, or otherwise protected by Section 527.3 of the Code of Civil Procedure or any other provision of law.

**15**

The most relevant portion of section 47 is subsection b, which provides absolute privilege for any "publication or broadcast" made in any judicial proceeding.  California courts have given this privilege an "expansive reach." *Rubin v. Green*, 4 Cal. 4th 1187, 1193-94 (1993).  It extends to any communication that bears "some relation to any ongoing or anticipated lawsuit." *Id*. at 1194.  The privilege also applies to a wide range of causes of action.  The California Supreme Court noted "the only exception to [the application of [section 47(b) to tort suits has been for malicious prosecution." *Id*.  The California courts have applied the privilege to claims of abuse of process, *Pollock v. Univ. of So. Cal.*, 112 Cal. App. 4th 1416 (2003), fraud, *Carden v. Getzoff*, 190 Cal App. 3d 907 (1987), invasion of privacy, *Ribas v. Clark*, 38 Cal. 3d 355, 364 (1985), *and interference with contract*, *Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118 (1990).

Critically, the privilege only applies to communicative acts, not noncommunicative conduct.  *Rubin v. Green*, 4 Cal. 4th 1187, 1195-96 (1993).  For example, an attorney's act of counseling his or her client is covered, even if it is alleged that the attorney made misrepresentations during the course of such communications.  *Id*.  However, pure conduct, such as eavesdropping, is not covered.  *Id*.

The Flores' raise one general objection to the application of the litigation privilege.  The Flores point to language in section 47 that appears to limit the applicability of section 47 to certain types of communications only if those communications are made "without malice," impliedly arguing that the Fike

Defendants' actions were made with malice and therefore should

not be covered by the privilege.  (*See* J. Flores' Opp'n at 30).

But the "without malice" language, which is mentioned twice in

section 47, is inapplicable here.  The phrase first occurs in an

exception to the litigation privilege for certain communications

made during the course of "marital dissolution or legal

separation."  *See* Cal. Civ. Code

§ 47(b)(1).  It appears again in section 47(c), which provides:

> A privileged publication or broadcast is one made:

> (c) In a communication, <u>without malice</u>, to a person
> interested therein, (1) by one who is also interested,
> or (2) by one who stands in such a relation to the
> person interested as to afford a reasonable ground for
> supposing the motive for the communication to be
> innocent, or (3) who is requested by the person
> interested to give the information.

(emphasis added).  Subsection (c) operates to protect against

liability for communications made outside the context of

litigation (i.e., statements that would not qualify for

protection under subsection (b)).  The statute gives an example

of such a communication:

> This subdivision applies to and includes a
> communication concerning the job performance or
> qualifications of an applicant for employment, based
> upon credible evidence, made without malice, by a
> current or former employer of the applicant to, and
> upon request of, one whom the employer reasonably
> believes is a prospective employer of the applicant.

Cal. Civ. Code § 47(c).  With respect to communications falling

under the scope of subsection (c), the privilege only applies in

the absence of evidence of malice.  However, Defendants do not

invoke this form of the privilege.  Rather, they rely upon

subsection (b), at all times asserting the "litigation" privilege

only as it relates to communications made in the context of

pending or active litigation.  The "without malice" language is inapplicable here.

### 2.    Second Cause of Action for Malicious Prosecution.
#### a.    Applicability of Anti-SLAPP Statute.

Plaintiffs' second cause of action for malicious prosecution alleges that the Fike Defendants prosecuted the cross-complaint in *Flores I* without probable cause as to both Joe Flores and Connie Flores.  There is only one act underlying this claim -- the filing of a cross-complaint.  The Anti-SLAPP statute explicitly covers "any written or oral statement or writing made before a...judicial proceeding."  Cal. Code Civ. Pro. § 425.16(e)(1);[2] *Jarrow*, 31 Cal. 4th 728.

In addition to the general arguments discussed above, Plaintiffs raise several additional arguments against application of the Anti-SLAPP statute to this claim.  None of these arguments have merit.  First, Plaintiffs place great emphasis on the phrase "public issue" contained in the introductory paragraph of the Anti-SLAPP statute:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a <u>public issue</u> shall be subject to a special motion to strike...

Cal. Code Civ. Proc. § 425.16(b)(1).  The Flores argue that the Fike Defendants' acts in filing the cross-complaint were not

---

[2]    Access to the court is a constitutional right founded upon the First Amendment.  *Cal. Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972).

**18**

undertaken in connection with a "public issue" and therefore are
not covered by the statute.  Plaintiffs operate under a mistaken
understanding of the statute.  Section 425.16(e) explicitly
defines the phrase "act in furtherance of a person's right of
petition or free speech under the United States or California
Constitution in connection with a public issue" to include "any
written or oral statement or writing made before a legislative,
executive, or <u>judicial proceeding</u>, or any other official
proceeding authorized by law."  (emphasis added).

Plaintiffs again raise the commercial speech exception to
the Anti-SLAPP statute, Cal. Code Civ. Proc. § 425.17(c).  As
discussed above, the plain language of this provision makes it
inapplicable to the Fike Defendants who advanced claims for money
allegedly due their clients, not to market their services as
attorneys.  Moreover, Mr. Flores' general discussion of
constitutional theory applicable to commercial speech is
misplaced.  Nowhere does Mr. Flores explain or suggest why
general first amendment protections for categories of speech have
a bearing on whether the § 425.17(c) exception should be applied
in this case to these defendants.

Finally, Mr. Flores cites *Bertero v. National General
Corporation*, 13 Cal. 3d 43 (1972), an appeal of a jury verdict in
a malicious prosecution case.  In *Bertero*, the court acknowledged
that a malicious prosecution case could be based upon the filing
of a cross-complaint without probable cause.  However, as *Bertero*
was a post trial proceeding and was decided before the passage of
the Anti-Slapp law, it is not relevant to the current inquiry.

The Fike Defendants have satisfied the threshold burden of

**19**

establishing that the Anti-SLAPP statute applies to the malicious prosecution claim.  As attorneys, they asserted claims to recover alleged unpaid loans from Plaintiffs on behalf of a client.  To advance such claims in court, a public forum, implicates FMI's and the Fike defendants' right to assert claims in a public forum, in the form of written statements made in a judicial proceeding.

### b.    Applicability of the Litigation Privilege.

The litigation privilege does not apply to claims of malicious prosecution.  Malicious prosecution actions are permitted because "the policy of encouraging free access to the courts is outweighed by the policy of affording redress for individual wrongs when the requirements of favorable termination, lack of probable cause, and malice are satisfied.  *Silberg*, 50 Cal.3d at 216.  This is perhaps the only exception to the absolute nature of the litigation privilege.  *Id.; see also Rubin,* 4 Cal. 4th 1193-94.

### c.    Merits of the Malicious Prosecution Claim.

Because Defendants have met their burden to prove the applicability of the Anti-SLAPP statute, Plaintiff must then make a "sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." The elements of a prima facie case of malicious prosecution are (1) a judicial proceeding favorably terminated; (2) lack of probable cause; and (3) malice.  *Villa v. Cole*, 4 Cal. App. 4th 1327, 1335 (1992).  Malicious prosecution actions are disfavored

under California law.  *Sheldon Appel. Co. v. Albert & Oliker*, 47
Cal. 3d 863, 872 (1989) (tort of malicious prosecution "has
historically been carefully circumscribed so that litigants with
potentially valid claims will not be deterred from bringing their
claims to court by the prospect of a subsequent malicious
prosecution" action).

     The first element is satisfied in this case because the
Flores' obtained a favorable jury verdict in *Flores I* and
defeated the defendants' cross-complaints.  The Fike Defendants
maintain that Plaintiffs are unable to establish either lack of
probable cause or malice.


                         (1)  <u>Probable cause</u>.

     Here, Plaintiffs allege that the Fike Defendants prosecuted
the cross-complaint in *Flores I* without probable cause as to both
Joe and Connie Flores.  The Flores' make a number of general
arguments in support of this contention, but none of these
arguments satisfy Plaintiffs' burden.

     First, Joe Flores suggests that the absence of probable
cause is established because the jury found that the Flores' were
not liable under the cross-complainant.  (J. Flores' Opp'n at
17.)  This argument defies logic.  The <u>first</u> element of a prima
facie case of malicious prosecution is a "judicial proceeding
favorably terminated."  The jury's verdict satisfies the first
element, but Joe Flores suggests that the verdict also satisfies
the second element -- absence of probable cause.  If this were
the case, the second element would be redundant and unnecessary.
A greater showing is needed to establish absence of probable

1   cause.

2       Probable Cause exists to file a claim whenever "any
3   reasonable attorney would have thought the claim tenable."
4   *Sheldon Appel.*, 47 Cal. 3d at 885.  Litigants have the right to
5   present claims that are arguably correct, "even if it is
6   extremely unlikely that they will win."  *Id.* at 885.  Plaintiff
7   correctly points out that, even if a reasonable attorney might
8   believe in the merits of a claim, one cannot escape liability if
9   the action "was prosecuted with knowledge of the falsity of the
10  claim."  *Albertson v. Raboff*, 46 Cal. 2d 375, 382; *Bertero*, 13
11  Cal. 3d at 55.

12      Turning then to the factual allegations contained within the
13  Complaint and the Flores' oppositions to this motion to strike,
14  the Flores' have not alleged facts to show absence of probable
15  cause or knowledge of the falsity of the claim.  First, the
16  Flores' conclusorily allege that the Fike Defendants lacked
17  probable cause to believe that any debt was owed by the Flores'
18  at all under the promissory note.  They do not allege facts
19  showing why or how the Fike defendants could then know the claims
20  were meritless.  But, the Fike Defendants represent that they
21  reviewed the accounting records and concluded that these records
22  evidenced a $9,843.66 debt to FMI.  Although the jury in *Flores I*
23  ultimately found that the Flores did not owe DDJ, as assignee,
24  any money on the counterclaim, nothing in the record indicates
25  that the Fike Defendants knew at the time that the claim was
26  filed that the allegations in the counterclaim were false or that
27  the monetary claim was spurious.  Nor is there any indication in
28  the record that no reasonable attorney would have believed the

**22**

counter-claim debt owed was unjustified.  (Plaintiffs bear the
burden of establishing as much in this case, and cannot rely upon
the trial record from *Flores I* unless there are undisputed
judicially noticeable facts that exist.)

Second, the Flores' emphasize that, although Joe Flores
signed a promissory note to DDJ, DDJ later sold the note to a
third party, Taft & Trainer, Inc.  The Fike Defendants
acknowledge that this transfer occurred, but maintain that DDJ
Inc. had an agreement with Taft & Trainer that DDJ would defend
the *Flores I* lawsuit and pursue any counterclaim for the Flores'
outstanding debt under the note.  (Fike Decl. ¶16)  The existence
of such an agreement was supported by written agreements.  (*Id*.
at Exhibit 2.)  Although the jury in *Flores I* ultimately found
that the Flores' did not owe money to either DDJ or Taft &
Turner, there is absolutely no indication that the indemnity,
assignment, and litigation enforcement agreement was invalid,
and, even if invalid, that the Fike Defendants knew of any
invalidity or that no reasonable attorney would have believed the
agreement to be valid.

Finally, Ms. Flores specifically alleges that the Fike
Defendants lacked probable cause to claim that she was a
signatory to the promissory note.  Accordingly, Ms. Flores
alleges that there was no probable cause to name her as a
counter-defendant.  Ms. Flores correctly points out that the
promissory note itself repeatedly refers to <u>Mr. Flores</u> and never
to Ms. Flores (or Connie Flores).  For example, it declares that
"DDJ, Inc. holds a secured interest in certain apples and
proceeds belonging to Mr. Flores."  However, the Fike Defendants

submit that both Joe and Connie Flores were responsible for the promissory note because <u>both</u> were signatories to various packaging and marketing agreements and that the promissory note was entered into as part of an overall package of agreements. (Fike Decl. ¶ 15.)  Moreover, the promissory note itself states that the note "is secured by the financing statement given to lender from borrower pursuant to their Packing and Marketing Agreement dated February 18, 1997." (*See* Promissory Note.)

The only relevant inquiry is whether the attorney's client provides facts that establish the existence of probable cause for the lawsuit's claims.  The opposing party's competing evidence is irrelevant

> Plaintiffs and their attorneys are not required, on penalty of tort liability, to attempt to predict how a trier of fact will weigh competing evidence, or to abandon their claim if they think it likely that evidence will ultimately weigh against them.  They have a right to bring a claim they think unlikely to succeed, so long as it is arguably meritorious.

*Wilson v. Parker Covert & Chidester*, 28 Cal. 4th at 822. Plaintiffs offer no evidence suggesting that the Fike Defendants had any reason to doubt the existence of probable cause to believe that Ms. Flores was a proper counter-defendant.


### (2)  <u>Malice</u>.

To prove malice, Plaintiffs must show that the Fike Defendants filed the underlying action with a wrongful motive. *Centers v. Dollar Markets*, 99 Cal. App. 2d 534, 541 (1950). Malice can be inferred from willful misconduct, *see Drum v. Bleau, Fox & Assoc.*, 107 Cal. App. 4th 1009, 1020 (2003), but no willful misconduct, such as the intent to vex or annoy, on the

part of the Fike Defendants is alleged in the complaint or
otherwise evident in the record.   This omission is a fatal defect
in a malicious prosecution claim.

The Anti-Slapp law applies to Plaintiffs' second cause of
action.   However, Plaintiffs have failed to establish that this
claim is "both legally sufficient and supported by a sufficient
prima facie showing of facts to sustain a favorable judgment if
the evidence submitted by the plaintiff is credited."  *Jarrow,* 31
Cal. 4th at 738.   The Fike Defendants' motion to strike the
second cause of action for malicious prosecution is **GRANTED, with
leave to amend.**

### 3.   Third Cause of Action for Abuse of Process.

Plaintiff's third cause of action is entitled "malicious use
of process," but appears to be a claim for "abuse of process."
The tort of abuse of process constitutes "the use of a legal
process against another to accomplish a purpose for which it is
not designed."  *Drum*, 107 Cal. App. 4th at 1019.   Its elements
are: (1) "an ulterior motive;" and (2) "a willful act in the use
of process not proper in the regular conduct of the proceedings."
*Id*.

> The essence of the tort 'abuse of process' lies in the
> misuse of the power of the court; it is an act done in
> the name of the court and under its authority for the
> purpose of perpetrating an injustice....

Here, Plaintiffs allege that the Fike Defendants abused
legal process in several ways:

(1)   By attempting to charge Joe Flores $0.53 per page for
copying FMI's documents *before* the Flores filed suit;

1   (2) By sending correspondence to another packing agent,

2      H&W, with an attached UCC-1 Financing Statement,

3      notifying H&W that FMI had a secured interest in the

4      Flores' 1998 apple crop based on an outstanding debt,

5      thereby causing other packers to "blackball" the

6      Flores';

7   (3) By failing to produce documents in discovery that the

8      Fike Defendants later attempted to use at trial and by

9      destroying (or somehow aiding or having knowledge of

10     the destruction of) relevant documents that should have

11     been preserved for discovery.

12 (Compl. ¶¶180, 182, 184, 189-192, 196.)

13

14     ***a. Applicability of the Anti-SLAPP Statute.***

15   The Anti-SLAPP statute has been applied to abuse of process

16 claims where the underlying act arises from the exercise of the

17 right to petition the courts for redress.  *See Siam v. Kizilbash*,

18 130 Cal. App. 4th 1563, 1570 (2005)(reasoning that a cause of

19 action for abuse of process is subject to the Anti-SLAPP statute

20 because "it arises from the exercise of the right of petition.").

21   The important question is whether the underlying act

22 constitutes an exercise of the right of petition and/or invokes

23 the court process.  It is not so clear whether the Fike

24 Defendants' initial demand that Plaintiffs pay $0.53 per page to

25 copy DDJ documents was made in connection with the underlying

26 lawsuit.  In other words, it is not clear that Plaintiff's

27 conduct invoked any "process" of the court or implicated the Fike

28 Defendants' right to petition the courts.  The dispute over copy

**26**

1  costs occurred before any lawsuit was filed.  Nor is it clear

2  whether a lawsuit was anticipated at that time.  The copy charge

3  complaint, if *not* connected with a lawsuit, cannot constitute

4  "abuse of process."  Giving Plaintiffs the benefit of the doubt

5  on this point, even if Fike Defendants' attempt to collect $0.53

6  per page for copying DDJ documents was made in anticipation of

7  litigation, the Anti-SLAPP statute would apply as the attempt to

8  collect copying costs is an incident of the litigation process by

9  which the Fike Defendants sought to defend DDJ before a court of

10  law.  Moreover, the Flores, as prevailing parties, could have

11  sought to recover excessive copying costs through a cost bill or

12  otherwise addressed during the underlying lawsuit.

13       The Fike Defendants' mailing of the notice of secured

14  interest to H&M is more closely connected to the Fike Defendants'

15  right of petition.  Communications made in anticipation of

16  litigation may be protected by <u>both</u> the Anti-SLAPP provision <u>and</u>

17  the litigation privilege.  *See Briggs v. Eden Council for Hope &*

18  *Opportunity*, 19 Cal. 4th 1106, 1115 (1999) ("Just as

19  communications preparatory to or in anticipation of the bringing

20  of an action or other official proceeding are within the

21  protection of the litigation privilege of Civil Code section 47,

22  subdivision (b)....such statements are equally entitled to the

23  benefits of section 425.16.").  The letter to H&M is a

24  communication made in anticipation of litigation.  It

25  specifically puts another crop-lender/creditor that FMI/DDJ

26  expects H&W to "honor and recognize the prior secured interest

27  held by [FMI/DDC] in apple crops and proceeds otherwise belonging

28  to Mr. Flores.  In the event that [H&W] distributes proceeds

without regard to the security interest of [FMI/DDJ] in those
proceeds, [FMI/DDJ] will <u>exercise all remedies available to it
with respect to such conduct.</u>" (*See* Ex. B to Emerich Decl.
(emphasis added)).  The mailing of this letter is an act
protected by the Anti-SLAPP statute, as it is a conventional
notice of the claim of a prior security interest in crops, which
endeavored to protect the priority of that security interest and
put the new lender on notice.

The allegations of discovery misconduct and the related
destruction of evidence are also acts that fall within the scope
of the Anti-SLAPP statute.

Defendants have met their burden of establishing that the
Anti-SLAPP statute should apply to this cause of action.

### b.    Applicability of the Litigation Privilege.

Defendants assert generally that all of the acts which
underlie the abuse of process claim are subject to the litigation
privilege.  As discussed above, the letter to H&M is a
communication sent in anticipation of litigation to protect a
claimed security interest, which naturally falls within the
coverage of the litigation privilege.  The applicability of the
privilege to the other alleged acts is not so clear-cut.  On the
one hand, the attempt to charge the Flores' $0.53 per page for
copies is communicative, and arguably conduct: the act of
demanding payment for copies.  Similarly, the Fike Defendants
alleged attempt to use documents at trial that were not produced
at discovery and the Fike Defendants alleged involvement in the
destruction of evidence is arguably conduct, not communication.

28

1    However, such matters are inherently part of the discovery

2    process and were redressible under discovery rules and should

3    have been addressed during the underlying litigation.

4         Arguendo, even if the litigation privilege does not

5    absolutely bar this claim, the conduct is not sufficiently

6    described and not for a purpose the law intends to constitute

7    abuse of process as opposed to alleged discovery abuse.

8

9              *c.    Merits of the Abuse of Process Claim.*

10        Even if the litigation privilege does not apply, because the

11   Anti-SLAPP statute applies to all of the alleged acts underlying

12   Plaintiff's abuse of process claim, Plaintiffs must establish a

13   possibility of prevailing on an abuse of process claim based upon

14   these facts.  In other words, do these factual allegations set

15   forth a prima facie claim of abuse of process.  The elements of

16   an abuse of process claim are: (1) "an ulterior motive;" and (2)

17   "a willful act in the use of process not proper in the regular

18   conduct of the proceedings."

19        The ulterior motive element can be inferred from proof of a

20   willful improper act, *Drum*, 107 Cal. App. 4th, at 1020, so the

21   critical question is whether Plaintiffs have established a

22   "willful act in the use of process not proper in the regular

23   conduct of the proceedings."

24        Put another way, to abuse process, a defendant must use

25   court process for a purpose not intended, such as to obtain a

26   collateral advantage.  Plaintiffs' allegations are confusing, but

27   it can be inferred from Plaintiffs' submissions that in early

28   1998, the Flores began to suspect that DDJ was using

**29**

1   inappropriate accounting practices to calculate the amount of
2   moneys owed to the Flores' for several years worth of apple
3   crops.  The Flores began to demand access to DDJ's accounting
4   records but were never satisfied with the manner and scope of
5   access granted to those documents.  The specific allegation of
6   the Complaint is that costs were wrongfully demanded for copying
7   these documents.  The Flores believed they were entitled to
8   copies of accounting for their crops, without having to pay for
9   them.  They allege that the Fike Defendants and DDJ believed (at
10  least at the time) that defendants were entitled to be reimbursed
11  for the costs of copying the documents.  It also appears that the
12  Flores' and the Fike Defendants had numerous disagreements as to
13  the time, manner, and method of access to the accounting
14  documents.

15       Eventually, the Flores' turned to the Marketing Enforcement
16  Branch of the California Department of Food & Agriculture ("MEB")
17  to assist in resolving the disputes over access to the documents.
18  Individuals at MEB appear to have corresponded with the Fike
19  Defendants to direct the Fike Defendants' attention to applicable
20  regulations.  These regulations required DDJ to afford the
21  Flores' <u>access</u> to documents concerning the marketing of their
22  fruit.  This and other correspondence eventually resulted in an
23  agreement that the Fike Defendants and DDJ would provide the
24  Flores with copies of certain files.  **Critically, however,**
25  **nowhere in the complaint is it alleged that it was improper for**
26  **the Fike Defendants to demand reimbursement for the costs of**
27  **copying documents for the Flores.**  Nor could it be.  (It is also
28  worth noting that the Fike Defendants ended up <u>not</u> charging the

Flores' $0.53 per page.)  Plaintiffs have made no allegation that
the demand for copy cost reimbursement was "a willful act in the
use of process not proper in the regular conduct of the
proceedings."  Moreover, the issue could and should have been
redressed at the underlying trial.

Even if the notice of secured interest sent to H&W was not a
communication protected by the litigation privilege, the mailing
of that notice which was a normal step a secured party takes to
protect priority of a security interest and was not an abuse of
process.  Nothing submitted demonstrates that the Fike Defendants
lacked probable cause to believe that the Flores' actually owed
money to FMI/DDJ pursuant to the promissory note and that a filed
financing statement reflecting a security interest in the Flores'
crops had been granted and perfected.  Sending notice of the
second promissory note debt for crop loans along with a warning
that FMI/DDJ would take steps to protect its security interest
was a commercially reasonable and permissible action, unless
Plaintiffs can allege contrary facts.

Although the Fike Defendants acknowledge that there were
numerous discovery disputes during the *Flores I* litigation,
nothing in the record indicates that the Fike Defendants engaged
in "a willful act in the use of process not proper in the regular
conduct of the proceedings."  In the hundreds of pages of
submissions from the Flores regarding the instant motions, the
alleged discovery violations are mentioned only a few times.
Specifically, Joe Flores' declaration, at paragraphs 60 and 61,
states:

On January 14, 2003, after Fike, on numerous occasions declaring that there were no more documents in their care, custody or control, suddenly by Court Order, manages to find numerous documents previously requested which he denied existed.  [citations]

Accordingly, it is well documented and further evidenced that Defendants, David R. Emerich, Esq., and David A. Fike, Esq., knew or should have known they were abusing the process since inception of this matter, which commenced on April 29, 1999 [citation], and continued on through pre-trial discovery by the spoilation and concealment of evidence...

These conclusory allegations are insufficient to establish that the Fike Defendants willfully used "process not proper in the regular conduct of the proceedings."  At most, they suggest a violation of civil discovery rules.  Such a violation, on its own, does not constitute an abuse of process.  Moreover, there were adequate remedies to enforce the discovery rules in the prior case.  It is impermissible to sue for prior violations of discovery rules in a subsequent lawsuit.  There are any number of legitimate (i.e., not improper) reasons why documents initially not disclosed might later be provided in discovery.  This is the nature of civil litigation.

The Fike Defendants' motion to strike the third cause of action is **GRANTED**.

### 4.    Fourth Cause of Action for Violation of the Uniform Fraudulent Transfer Act ("UFTA").

Plaintiff alleges that various defendants engaged in unlawful transfers in violation of the Uniform Fraudulent Transfers Act (UFTA).  The complaint sets forth the dates, amounts, and parties involved in each allegedly fraudulent transfer.  **Critically, however, the Fike Defendants are not**

**mentioned in __any__ of these specific fraudulent transfer allegations**.   Rather, the UFTA allegation only relates to the Fike defendants in two ways.   First, Plaintiffs allege that the Fike Defendants' activities bought time for the other defendants to plan and execute the fraudulent transfers:

> [T]he malicious prosecution as alleged in the SECOND CAUSE OF ACTION, the malicious abuse of process as alleged in the THIRD CAUSE OF ACTION, [the statutory violations] as alleged in the EIGHTH CAUSE OF ACTION, and Conspiracy to Defraud, to Interfere with the Business Relationship, to Unlawfully Injure a Business, to Destroy a Business, and to Defraud a Creditor...as alleged in the TENTH CAUSE OF ACTION...***played a major contributing factor in allotting time for the planning of the actual fraudulent transfer of proceeds*** belonging to ALTER EGO DDJ, INC. and AlTER EGO DDJ, LLC by [the Fike Defendants] with the actual intent to hinder, delay or defraud some or all of ALTER EGO DDJ, INC. and ALTER EGO DDJ, LLC's then and future creditors including and principally Plaintiffs in connection with the collection of their claims.

(Compl. at 71.)   This passage arguably suggests that the Fike Defendants contributed to "allotting time" for the fraudulent transfers by defending against the *Flores I* lawsuit, filing the counter-claim, and taking various other steps to protect its clients interests.   Second, Plaintiffs suggest that the Fike Defendants are liable in fraud for accepting payment from DDJ for services rendered.


> ### a.   *Applicability of the Anti-SLAPP Statute.*

The alleged acts are all related to the Fike Defendants' right to petition the courts to represent clients as attorneys and are therefore covered by the Anti-SLAPP statute.

**b.   Applicability of the Litigation Privilege.**

The Fike Defendants maintain that the acts alleged in this cause of action are protected by the litigation privilege as well.  However, it is difficult to determine the applicability of the privilege because neither the complaint or any subsequent filing explains the exact nature of the Fike Defendants' conduct that allegedly contributed to "allotting time" for the other defendants to engage in fraudulent transfers.  There is not even conduct alleged that constitutes a fraudulent conveyance.  The parties are not required to guess as to the basis of the claims. As a general matter, each party to litigation is entitled to have legal representation of its choice.

**c.   Merits of the Uniform Fraudulent Transfer Act Claim.**

Again, even if the litigation privilege is inapplicable, because the Anti-Slapp statute applies, the Flores must establish that this claim is "both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Jarrow,* 31 Cal. 4th at 738.

A transfer of assets made by a debtor is fraudulent as to a creditor if the transfer was made with an actual intent to defraud any creditor, or was made without receiving reasonably equivalent value.  Cal. Civil Code § 3439.04; *Reddy v. Gonzales,* 8 Cal. App. 4th 188, 122-23 (1992).

First, Plaintiffs assertion that the Fike Defendants' committed fraud by accepting payment for services rendered is not

1   legally cognizable.

2           An encumbrance by a debtor to an attorney, made for
            value in the form of an antecedent obligation for legal
3           services, is not fraudulent as to another creditor,
            under applicable provisions of the Uniform Fraudulent
4           Transfer Act, and this is true even though the transfer
            was a preference that resulted in the debtor being
5           unable to satisfy debts of other creditors.

6   *Wyzard v. Goller*, 23 Cal. App 4th 1183, 1185 (1994).

7           Second, an allegation that the Fike Defendants intentionally

8   worked to "allot time" for the other defendants to engage in

9   fraudulent transfers is legally unintelligible.  Plaintiffs have

10  submitted correspondence from the Fike Defendants to Plaintiffs

11  and others, which is covered by the litigation privilege.  No

12  facts are alleged as to how the Fike Defendants engaged in any

13  conduct that helped allot time for the other defendants to engage

14  in fraud, or that the Fike Defendants engaged in any improper

15  conduct or had any knowledge or intent to defraud.  Conclusory

16  allegations do not substitute for necessary facts to maintain a

17  claim, particularly in the face of an Anti-Slapp motion to

18  strike.

19          The Fike Defendants' motion to strike the fourth cause of

20  action is **GRANTED**.

21

22

23                  **5.    The Seventh Cause of Action for Conversion and
                            Conspiracy to Convert.**

24          Plaintiffs allege that many of the individual and corporate

25  defendants committed a number of acts of conversion.  As with the

26  UFTA claim above, Plaintiffs assert that the Fike Defendants

27  aided the other defendants' acts of conversion, by "conspiring,

28  participating, and aiding and abetting by and through their

                                    35

1  actions as attorney(s) of record for Defendants... [the]

2  successful...unlawful practice of conversion by means of []

3  fraudulent transfers...."  (Compl. ¶342.)  These conclusory

4  allegations have no legal significance.  It is not alleged that

5  the Fike Defendants independently converted the Flores' property,

6  only that they conspired to do so.  This is not a legally

7  cognizable claim.

8      In California, Civil Code § 1714.10 requires a plaintiff to

9  obtain a court order prior to filing any claim premised upon an

10 attorney's conspiracy with a client:

11          No cause of action against an attorney for a civil
            conspiracy with his or her client arising from any
12          attempt to contest or compromise a claim or dispute,
            and which is based upon the attorney's representation
13          of the client, shall be included in a complaint or
            other pleading unless the court enters an order
14          allowing the pleading that includes the claim for civil
            conspiracy to be filed after the court determines that
15          the party seeking to file the pleading has established
            that there is a reasonable probability that the party
16          will prevail in the action.

17 §1714.10(a)(emphasis added).  Failure to seek such an order is a

18 complete defense to the filing of any action for civil

19 conspiracy, and may form the basis of a motion to strike.

20 § 1714.10(b).

21     The allegation in this cause of action falls squarely within

22 the coverage of this provision and Plaintiffs did not obtain a

23 court order prior to filing this claim.

24     The Flores' rejoin by pointing to language in § 1714.10(c)

25 which carves out an exception for an attorney's acts which "go

26 beyond the performance of a professional duty to serve the client

27 and involve a conspiracy to violate a legal duty in furtherance

28 of the attorney's financial gain."  (See J. Flores' Opp'n at 22.)

**36**

1  However, the complaint fails to allege the existence of acts that

2  go beyond the performance of a professional duty and/or that

3  violate a legal duty in furtherance of the Fike Defendants' own

4  financial interests.

5      The Fike Defendants' motion to strike the seventh cause of

6  action is **GRANTED.**

7

8          **6.    Ninth Cause of Action for Negligent Interference**
           **With or Procurement of a Breach of Contract.**

9

10     Plaintiffs' negligent interference with contract claim

   alleges that the Fike Defendants negligently sent a copy of the

11
   Flores' "financial statement" to H&W.[3]  As a result, Plaintiffs'

12
   assert that they lost their contract with H&W.  As discussed

13
   above, the sending of the notice of a security interest to H&W

14
   was an act taken in anticipation of litigation which is protected

15
   by both the Anti-SLAPP statute and the litigation privilege.  The

16
   litigation privilege operates as an absolute bar to tort

17
   liability.  Accordingly, the Fike Defendants' motion to strike

18
   this cause of action from the complaint is **GRANTED.**

19

20

21          **7.    Tenth Cause of Action for Conspiracy to Defraud.**

22     Plaintiffs' tenth cause of action alleges that the Fike

23  Defendants conspired with other individual defendants (1) to

   cover up unlawful activities by filing a counterclaim against

24
   Plaintiffs in *Flores I*; and (2) to interfere with Plaintiffs'

25
   contractual business relationship with another fruit packing

26

27  ───────────────────

28      [3]    As discussed, this was not a "financial statement" it
     was a standard-form UCC notice of secured interest.

company.  Specifically, the complaint also alleges that Emerich & Fike were paid more than $100,000.00 in attorneys fees to accomplish many of the allegedly "questionable business transactions" described in the complaint.  (Compl. at 510.)  In response, the Fike Defendants assert that they received only $10,000 from their clients, with the remaining balance being paid out by the clients' insurer, Fireman's Fund.  (*See* David Fike Decl. at ¶8, Doc. 34).

As discussed above, California Civil Code § 1714 operates to bar this cause of action completely, because Plaintiffs failed to obtain a court order prior to filing this conspiracy claim.  The Fike Defendants' motion to strike the tenth cause of action is **GRANTED.**

### 8.   Eleventh Cause of Action for Invasion of Privacy/ Defamation.

Plaintiffs' eleventh cause of action for invasion of privacy alleges that the Fike Defendants sent a copy of the Flores' "financial statement" to H&W.  Plaintiffs allege that this constituted an invasion of privacy and defamation.  As with the negligent interference with contract claim, the sending of the notice of secured interest to H&W was an act taken in anticipation of litigation which is protected by both the Anti-SLAPP statute and the litigation privilege.  The litigation privilege operates as an absolute bar to tort liability. Accordingly, the Fike Defendants' motion to strike the eleventh cause of action is **GRANTED.**

**B.   Motion to Dismiss the Eighth Cause of action for Civil Racketeering in violation of 18 U.S.C. § 1961.**

Defendants move separately to dismiss the eighth cause of action (Civil Racketeering).  Plaintiffs allege generally that the "Defendants" engaged in Racketeering to further the general goal of misappropriating funds belonging to the bankruptcy estate.  Specifically, the complaint alleges that one of the DDJ Defendants committed mail fraud by mailing allegedly fraudulent documents prepared by one of the other DDJ defendants.  As to the Fike Defendants, the complaint alleges generally that the Fike Defendants committed wire fraud by faxing allegedly false documents to Plaintiffs during discovery in *Flores I*.  (Compl. at ¶336.)  Plaintiffs also conclusorily describe the allegedly false document.  (Compl. at ¶389.)

A civil RICO complaint must at least allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'"  *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.,* 431 F.3d 353, 361 (9th Cir. 2005) Here, Plaintiffs allege that the Fike Defendants violated sections 1962(c) (conducting the affairs of a racketeering enterprise) and (d) (conspiring to commit racketeering).  The racketeering enterprise must exist independently from the acts of racketeering.  *Chang v. Chen*, 80 F.3d 1293, 1298-99 (9th Cir. 1996).  Assumedly, Plaintiffs claim the law firm is a racketeering enterprise, although they have not so alleged.

Section 1961 enumerates acts which are considered to be "racketeering activity" (i.e., "predicate acts").  Included is "any act or threat involving murder, kidnapping, gambling, arson,

1   robbery, bribery, extortion, dealing in obscene matter, or

2   dealing in a controlled substance or listed chemical (as defined

3   in Section 102 of the Controlled Substances Act), which is

4   chargeable under State Law and punishable by imprisonment for

5   more than one year." § 1961(1)(A).  Also included are any of

6   more than twenty types of conduct indictable under enumerated

7   provisions of the United States Code, ranging from mail fraud and

8   wire fraud, through robbery and extortion, to white slave trade.

9   § 1961(1)(B).  Finally, a "predicate act" may also be established

10  by any offense involving fraud "connected with" a bankruptcy

11  case, "fraud in the sale of securities," or any act related to a

12  controlled substance or listed chemical "punishable' under

13  federal law."  § 1961(1)(C).

14        Plaintiffs have failed to adequately allege facts that show

15  the Fike Defendants committed a predicate act.  Here, Plaintiffs

16  conclusorily allege that the Fike Defendants engaged in a

17  laundry-list of purported predicate acts: Theft From Interstate

18  Shipments (18 U.S.C. 659); Mail Fraud (1341); Wire Fraud (1342);

19  Interstate and Foreign Travel to Aid in Racketeering Enterprise

20  (1952); Laundering of Monetary Instruments (1956); Engaging in

21  Monetary Transactions in Property Derived from Specified Unlawful

22  Activity (1957) and Trafficking in Counterfeit Goods (2320).

23  (Compl. at ¶362, 367).  However, Plaintiffs only mention the Fike

24  Defendants in the context of Mail Fraud, Wire Fruad, and Engaging

25  in Monetary Transactions in Property Derived From Specified

26  Unlawful Activity.

27        As a threshold matter, Federal Rule of Civil Procedure 9(b)

28  applies to RICO Fraud allegations, including Mail Fraud and Wire

**40**

1  Fraud.  *Moore v. Kayport Package Express, Inc.,* 855 F.2d 531, 541

2  (9th Cir. 1989).   Rule 9(b) requires that the pleader state the

3  "time, place, and specific content of the false representations,

4  as well as the identities of the parties to the

5  misrepresentation."  Plaintiffs have not met this standard here

6  and the Mail Fraud and Wire Fraud claims must be dismissed.

7      As to the allegation that the Fike Defendants engaged in

8  Monetary Transactions in Property Derived From Specified Unlawful

9  Activity, Plaintiffs have not properly pled such a claim against

10  the Fike Defendants.  The elements of such an claim are: (1) the

11  defendant engaged or attempted to engage, (2) in a monetary

12  transaction, (3) in criminally derived property that is of value

13  greater than $10,000.00, (4) knowing that the property is derived

14  from unlawful activity, and (5) that the property is in fact

15  derived from specified unlawful activity.  Here, Plaintiffs

16  allege that the Fike Defendants received payment for services

17  rendered as counsel to the DDJ Defendants.  Wholly absent from

18  the complaint is any allegation that such payments were illegal

19  or represented the proceeds of unlawful activity; or that the

20  Fike Defendants knew this money was derived from unlawful

21  activity.  This cannot serve as a predicate offense under the

22  RICO statute.

23      Moreover, even if Plaintiffs had alleged the commission of a

24  predicate act, Plaintiffs have in no way alleged that the Fike

25  Defendants violated 1962(c) by conducting the affairs of a

26  racketeering enterprise that was independent of the racketeering

27  acts.  *Chang*, 80 F.3d at 1298-99.  To "conduct or participate

28  directly or indirectly in the conduct of such [an] enterprise [],

one must participate in the operation or management of the

1  enterprise.  *Reves v. Ernst & Young*, 507 U.S. 170, 185

2  (1993)(finding that accounting firm could not be liable under

3  1962(c) merely by being associated with the enterprise).  *See*

4  *also Baumer v. Pachl*, 8 F.3d 1341 (9th Cir. 1993)(finding that a

5  defendant attorney was not liable under 1962c even though he took

6  numerous steps to perpetuate the alleged fraud, including the

7  preparation of two letters designed to forestall and cover up the

8  fraud).  Plaintiffs have not alleged that the Fike Defendants

9  participated in the management of DDJ.

10      Plaintiffs also allege that the Fike Defendants conspired to

11  violate RICO under 18 U.S.C. 1962(d).  But, that provision

12  provides that "it shall be unlawful for any person to conspire to

13  violate any of the provisions of subsection (a), (b) or (c) of

14  this section."  There can be no RICO conspiracy without having

15  committed a RICO violation.  Here, Plaintiffs' allegations under

16  1962(c) are insufficient, and their allegation under 1962(d)

17  fails as well.

18      Defendants' motion to dismiss the eighth cause of action is

19  **GRANTED WITHOUT PREJUDICE.**

20

21                              *///*

22                              *///*

23                              *///*

24                              *///*

25                              *///*

26                              *///*

27

28

**42**

1

2

3                            **VII.   <u>CONCLUSION</u>**

4        The Fike Defendants' motions to strike and to dismiss are

5  **GRANTED** in their entirety.  Any amended complaint shall be filed

6  within fifteen (15) days following service of this decision by

7  the Clerk of Court.

8  Dated: February 21, 2006

9                                    /s/ OLIVER W. WANGER

10                              _____

11                                  **Oliver W. Wanger**
                                **UNITED STATES DISTRICT JUDGD**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28