**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOE FLORES, an individual; and CONNIE FLORES, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>EMERICH & FIKE, a professional corporation, et al.<br><br>Defendants. | 1:05-CV-0291 OWW DLB<br><br>MEMORANDUM DECISION AND ORDER: (1) DENYING PLAINTIFFS' MOTION TO VACATE JUDGMENT (DOC. 169); (2) GRANTING PLAINTIFFS' MOTION FOR CERTIFICATION OF PARTIAL JUDGMENT FOR APPEAL UNDER RULE 54(b) AND ORDERING ENTRY OF JUDGMENT IN FAVOR OF THE FIKE DEFENDANTS ONLY (DOC. 171); AND (3) STAYING AND TAKING OFF CALENDAR DEFENDANTS' MOTION FOR ATTORNEY'S FEES (DOC. 140) |

## I. BACKGROUND

This is the third case filed by Joe and Connie Flores ("Plaintiffs") concerning a series of packing and marketing agreements entered into between Plaintiffs and DDJ, Inc., DDJ LLC, and related entities and individuals.

Plaintiffs' filed their initial complaint against DDJ, Inc., DDJ LLC, and others in 1999, asserting claims under the Perishable Agricultural Commodities Act ("PACA"), along with state law contract and tort claims. *See Flores et al v. DDJ, Inc., et al.*, 1:99-cv-5878 AWI DLB ("*Flores I*"). In 2003, a jury found for the Flores' on all claims against DDJ Inc. and DDJ LLC ("the Judgment Debtors").

On October 15, 2004, the Flores' filed a second lawsuit, alleging that individual officers of the Judgment Debtors fraudulently transferred assets from the Judgment Debtors into

1

their own names. *See In Re Joe Flores, et a. v. Dennis Hagobian*, et al., 1:04-cv-6405 OWW DLB ("*Flores II*").

On January 3, 2005, DDJ, Inc. and DDJ, LLC filed for Chapter 7 bankruptcy protection. Further proceedings in *Flores I* and *Flores II* were stayed pursuant to the automatic stay provision of the Bankruptcy Code. (*Flores I,* Doc. 408 at 2; *Flores II*, Doc. 19 at 3.)

On March 1, 2005, Plaintiffs filed the initial complaint in this lawsuit (*Flores III*), naming as defendants a number of individuals involved with DDJ and affiliated corporate entities (the "DDJ Defendants"). The *Flores III* complaint also named as defendants the law firm of Emerich & Fike and several individual attorneys at that firm (collectively, the "Fike Defendants") who represent many of the DDJ Defendants. The complaint contained a single federal claim, for Civil RICO, and numerous state law claims alleging, among other things, that the DDJ Defendants misappropriated funds from the Judgment Debtors and that the Fike Defendants assisted in this misappropriation.

Because of the pending bankruptcy proceeding, *Flores III* was briefly stayed as to all claims against DDJ Defendants and as to certain claims against the Fike Defendants. Other claims against the Fike Defendants were permitted to proceed. (Docs. 72 & 89.) The district court later lifted the stay as to all claims against all defendants in light of the fact that the Chapter 7 Trustee does not intend to pursue any of the claims in this case. (Doc.

92.)[1]

The Fike Defendants moved to dismiss the single federal claim in *Flores III* (for Civil RICO) and to strike the numerous state law claims against them pursuant to California's Anti-SLAPP statute, Cal. Code Civ. Pro. § 425.16. The district court granted both motions as to all claims. (Doc. 108, filed February 21, 2006.) Specifically, with respect to the Anti-SLAPP motion to strike, the district court found that the Anti-SLAPP statute applied to all of the state law claims against the Fike Defendants, including the malicious prosecution claim. The district court then found that the litigation privilege, Cal. Code Civ. Pro § 47, barred all of the state law claims as pled, with the exception of the malicious prosecution claim, to which the litigation privilege does not apply. The district court then examined the evidence presented by Plaintiffs regarding the malicious prosecution claim and concluded that Plaintiffs had not

---

[1] The Flores' suggested during oral argument on the instant motions that this ruling, lifting the stay as to all of the remaining claims against the remaining defendants, was subsequently "corrected" (i.e., altered) by the district court. But, the record does not reflect any order (written or oral) containing any subsequent ruling on the status of the stay. It appears that Plaintiffs are referring to a different series of orders regarding the pending attorney's fee petition, filed on October 13, 2006. Plaintiffs filed their appeal on November 19, 2006. On November 13, 2006, the district court erroneously entered a minute order indicating that it no longer had jurisdiction over the fee petition because an appeal was pending. The Fike Defendants moved for reconsideration of that ruing, pointing to Ninth Circuit authority indicating that a district court retained discretion to exercise jurisdiction over a fee petition while an appeal was pending. In light of this authority, the district court granted the motion for reconsideration and set the fee petition for hearing. (*See* Doc. 157.) This ruling had nothing to do with the operation of the stay as to the remaining claims in this case, which was lifted according to the minute order entered on September 16, 2005.

met their burden of establishing a prima facie case for malicious prosecution under the Anti-SLAPP burden-shifting framework. At the time, Plaintiffs made no formal request for further time to conduct discovery on this claim, nor did they represent that they had previously propounded any discovery to the Fike Defendants. The district court granted Plaintiffs leave to amend the RICO claim and the state law claim for malicious prosecution. Plaintiffs then filed an amended complaint, re-alleging <u>all</u> of their original state claims, without amending the RICO claim as to the Fike Defendants. (Doc. 113, filed March 13, 2006.)

The Fike Defendants again moved to strike all of the state law claims from the amended complaint, arguing that it had been inappropriate for the district court to grant Plaintiffs leave to amend claims stricken pursuant to the Anti-SLAPP statute. Plaintiffs opposed this motion on various grounds, but, again, never raised the issue of pursuing further discovery. (*See* Doc. 121.) In an August 24, 2006 decision, the district court granted the Fike Defendants' renewed motion to strike the claims <u>without</u> leave to amend, agreeing that granting leave to amend state law claims stricken pursuant to the Anti-SLAPP statute undermined the purpose of the Anti-SLAPP statute. Judgement was entered against Plaintiffs and in favor of the Fike Defendants on November 12, 2006. (Doc. 139.)

Plaintiffs timely appealed the August 24, 2006 ruling, but their appeal was dismissed for lack of jurisdiction. The Ninth Circuit explained:

> A review of the record demonstrates that this court lacks jurisdiction over this appeal because the order challenged in the appeal is not final or

> appealable. *See* Fed. R. Civ. P. 54 (b); *Chacon v. Babcock*, 640 F.2d 221 (9th Cir. 1981)(order is not appealable unless it disposes of all claims as to all parties or judgment is entered in compliance with rule; *see also Frank Briscoe Co., Inc. v. Morrison-Knudsen Co., Inc.,* 776 F.2d 1414, 1416 (9th Cir. 1985)(certification of final judgment should contain "express determination that there is no just reason for delay"). Consequently, this appeal is dismissed for lack of jurisdiction.

(*See* Doc. 158, *Order*, *Flores v. Emerich & Fike*, No. 06-17047 (9th Cir., Dec. 26, 2006).) Plaintiff filed a motion for reconsideration with the Court of Appeals, which was denied on February 22, 2007. (*See* Doc. 179.)

Now before the court for decision are three motions. First, Plaintiffs move to vacate the partial judgment in favor of the Fike Defendants pursuant to Federal Rule of Civil Procedure 60(b)(3). Second, Plaintiffs move for "clarification" of certain "procedural issues still pending before this court," which "are prohibiting Plaintiffs in this matter from perfecting their appeal." Finally, Defendants move for attorneys fees under California Code of Civil Procedure Section 425.16(c).

## II.  **DISCUSSION**

### A.  **Plaintiffs' Motion to Vacate Judgment**.

Pursuant to Federal Rule of Civil Procedure 60(b), Plaintiffs move to vacate the judgment, entered November 12, 2006 in favor of the Fike Defendants. Plaintiffs assert that, for the period of time between November 11, 2002 and July 23, 2003, which included the entire *Flores I* jury trial, the State of California had stripped DDJ, Inc. of its corporate powers, rights, and privileges for nonpayment of taxes, pursuant to California

5

1 Revenue and Tax Code § 23301.  Under § 23301, a corporation's
2 rights may be suspended for nonpayment of taxes, rendering the
3 corporation incapable of participating in litigation activities.
4 *See Palm Valley Homeowners Ass'n, Inc. v. Design MTC*, 85 Cal.
5 App. 4th 553, 560 (2000).

6      In their opening brief, Plaintiffs indicated that they had
7 only recently learned of the temporary suspension.  (Doc. 169-3
8 at 4.)  However, in a subsequent filing, Plaintiffs acknowledge
9 that they were aware of the suspension of DDJ's corporate status
10 during the underlying PACA litigation.  (Doc. 182.)
11 Specifically, Mr. Flores brought the issue to the attention of
12 Judge Ishii and the Fike Defendants during the PACA trial.
13 (Trial Tr. at 1241, Doc. 183, Request for Judicial Notice, Ex.
14 4.)  Mr. Fike indicated that he had been unaware of the
15 suspension and would undertake to correct the situation
16 immediately.  (*Id*. at 1241-42.)

17      Plaintiffs invoke Rule 60(b)(3), asserting that the Fike
18 Defendants committed "fraud or misconduct" justifying relief from
19 the judgment entered in this case, because they defended DDJ Inc.
20 during the *Flores I* trial, even though DDJ's corporate status had
21 been suspended for a period of time.  Federal Rule of Civil
22 Procedure 60(b)(3) provides:

>           On motion and upon such terms as are just, the court
>           may relieve a party or a party's legal representative
>           from a final judgment, order, or proceeding
>           for....fraud (whether heretofore denominated intrinsic
>           or extrinsic), misrepresentation, or other misconduct
>           of an adverse party....

Plaintiffs' invocation of Rule 60(b)(3) is misplaced for several
reasons.  First, Plaintiffs totally fail to explain why the issue

**6**

of DDJ's corporate status was never raised in this litigation prior to the instant motion to vacate.  Mr. Flores explained during oral argument that he had "forgotten."  But, this is not a valid legal excuse.

Second, even if this information had been discovered yesterday, the logic of Plaintiffs' argument does not withstand scrutiny.  In order to understand Plaintiffs' logic, it is important to note that the district court struck all but one[2] of the state law claims against the Fike Defendants on the ground that the Fike Defendants were protected by California's litigation privilege, Cal. Civ. Code § 47(b), which provides an absolute privilege for any "publication or broadcast" made in connection with any judicial proceeding.  Plaintiffs argue that the Fike Defendants should not benefit from protection under the litigation privilege because their client, DDJ Inc., did not have standing to sue during at least part of the underlying PACA litigation.  This argument is without merit.  California courts have held that "the focus of the applicability of the [litigation privilege under § 47] lies in whether the publication was connected to or related to the underlying proceedings...<u>even lack of standing does not vitiate the privilege</u>."  *Obos v. Scripps Psychological Assoc.,* Inc., 59 Cal. App. 4th 103, 108 (1997)(emphasis added).

> We believe that the judicial privilege protects the [] motions made here, despite the possible lack of standing. We see no reason why mere lack of standing

---

[2] The remaining state law claim was for malicious prosecution, to which the litigation privilege does not apply as a matter of law.  This claim was stricken on other grounds.

**7**

> should have the effect of necessarily vitiating the privilege. The movant's lack of standing can only be relevant to the issue of privilege in two ways.
>
> First, lack of standing could constitute such lack of connection with the lawsuit as to make a motion tortious, as for instance if a complete stranger to the action filed irrelevant but scurrilous matter in a proceeding. The lack of connection, not the lack of standing, would be the reason for denying the privilege in such a case. But here, as pointed out, there was ample connection; relevant evidence was offered; but arguably the wrong party did the offering. Accordingly the reason for denying the privilege-lack of connection with the proceeding-does not apply here.
>
> Second, standing could be relevant in the sense that lack of standing could be the reason a filing in an action was unwarranted or "wrongful." But the lack of standing, though making the filing "wrongful," does not necessarily vitiate the privilege. Cases hold that the judicial privilege applies broadly to publications in a proceeding that are connected in some way to that proceeding, to protect the rights of litigants and interested parties to communicate with the court. (See Silberg v. Anderson, supra, 50 Cal.3d at pp. 211-212, 266 Cal.Rptr. 638, 786 P.2d 365.) Here, the connection exists, and therefore the privilege applies.

*Adams v. Superior Court*, 2 Cal. App. 4th 521, 529-530 (1992). Accordingly, actions that would otherwise be covered by the litigation privilege are not stripped of that privilege simply because the litigant lacked standing. The covered action must simply be connected in some way to the proceeding. *Id*. Here, all of the challenged actions taken by the Fike Defendants were directly connected to the underlying PACA litigation and are therefore covered by the litigation privilege, even though DDJ Inc. had been stripped of its corporate privileges for a period of time.

Plaintiffs's reliance on *Palm Valley Homeowners Association v. Design*, 85 Cal. App. 4th 553 (2000), is also misplaced. In *Palm Valley*, a law firm <u>admitted</u> having knowledge that its corporate client's rights had been suspended under the California Corporations Code, yet pursued litigation activities without

**8**

disclosing this fact to opposing counsel or the court. The *Palm Valley* court affirmed the trial court's imposition of sanctions upon the firm for acting in bad faith because it "knew or should have known that [the company] was disqualified from representing itself in the litigation." *Id*. at 561. Here, in light of Plaintiffs' acknowledgment that the suspension was raised by them and discussed during the underlying PACA trial, it is not clear how the Fike Defendants acted in bad faith or made misrepresentations to either Judge Ishii or this court regarding the suspension. Rather, it is Plaintiffs who misrepresented the record to this court in their opening brief.

Plaintiffs emphasize the fact that DDJ Inc did not actually obtain its certificate of corporate revival until after the trial was concluded and the jury returned its special verdict. Plaintiffs cite *Alhambra-Shumway Mines, Inc. v. Alhambra Gold Mine Corp.*, 155 Cal. App. 2d 46, 49-51 (1957). In *Alhambra* judgment was entered in favor of a corporation while its corporate powers were suspended. On appeal, the judgment was reversed because the corporation had not been revived prior to entry of judgment. *Id*. But, Alhambra simply stands for the proposition that Plaintiffs could have <u>appealed</u> a jury verdict returned <u>against</u> Plaintiffs if such judgment had been entered before DDJ's corporate status was revived. Here, however, judgment was entered <u>against</u> DDJ Inc. and in favor of <u>Plaintiffs</u>. Plaintiffs cannot challenge the judgment they obtained in the prior case, in <u>this</u> case as having been obtained through fraud or misconduct without calling into question their favorable judgment in the underlying PACA litigation.

Plaintiffs next cite language from *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973 (C.D. Cal. 1999), and *Metabolife v. Int'l, Inc. v. Womick*, 264 F.3d 832 (9th Cir. 2001). To the extent that these cases are cited to suggest that the judgment should be vacated because Plaintiffs' were never afforded an opportunity for discovery, this argument is also without merit.[3] Plaintiffs are correct that *Rogers* and *Metabolife* stand for the proposition that, where an Anti-SLAPP motion to strike is based on a plaintiff's alleged failure of proof, the motion must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56, except that the attorney's fee provision of the Anti-SLAPP statute applies. Plaintiffs are also correct that, when a nonmoving party has not had the opportunity to discover information that is essential to their opposition to such an Anti-SLAPP motion to strike, the court must allow such discovery. *See Aeroplate v. Arch Ins. Co.*, 2006 WL 3257487 (E.D. Cal.)(summarizing relevant authorities). Here, at least with respect to the malicious prosecution claim, the Fike Defendant's motion to dismiss was based on an alleged failure of proof. However, at no time prior to the district court granting the motion to strike did Plaintiffs ever formally request a stay to permit them to conduct discovery, nor did they propound discovery requests upon the Fike Defendants or move to

---

[3] Plaintiffs expressly cite these cases to explain why they should not be punished for failing to earlier discover information concerning DDJ's suspension. (*See* Doc. 180 at 4-5.) But, as discussed above, Plaintiffs later acknowledged that they knew about DDJ's suspension during the underlying PACA trial, raising the entirely separate question of why they failed to raise the issue in this case prior to this motion to vacate.

**10**

compel the Fike Defendants to answer any such discovery requests. Discovery is a process that must be initiated by the parties, not the court. The time for Plaintiffs to have requested discovery was prior to the ruling on the Fike Defendants' first motion to strike.

Plaintiffs' motion to vacate the judgment under Rule 60(b) is **DENIED**.

    **B.**    <u>**Plaintiffs' Motion for Clarification of Procedural Issues Preventing Plaintiffs' from Perfecting Their Appeal**</u>.

Plaintiffs next request "clarification" of certain procedural issues that are preventing Plaintiffs from perfecting their appeal. In its order indicating that it lacked jurisdiction over Plaintiffs' appeal from the October 10, 2006 judgment in favor of the Fike Defendants and against Plaintiffs, the Ninth Circuit explained:

> A review of the record demonstrates that this court lacks jurisdiction over this appeal because the order challenged in the appeal is not final or appealable. *See* Fed. R. Civ. P. 54 (b); *Chacon v. Babcock*, 640 F.2d 221 (9th Cir. 1981)(order is not appealable unless it disposes of all claims as to all parties or judgment is entered in compliance with rule; *see also Frank Briscoe Co., Inc. v. Morrison-Knudsen Co., Inc.*, 776 F.2d 1414, 1416 (9th Cir. 1985)(certification of final judgment should contain "express determination that there is no just reason for delay"). Consequently, this appeal is dismissed for lack of jurisdiction.

(*See* Doc. 158, *Order*, *Flores v. Emerich & Fike*, No. 06-17047 (9th Cir., Dec. 26, 2006).) The Court of Appeals' order clearly explains that a judgment is not appealable unless it disposes of all claims as to all parties, <u>or</u> if judgment is entered in compliance with Federal Rule of Civil Procedure 54(b), which provides:

**11**

> **Judgment Upon Multiple Claims or Involving Multiple Parties**. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, <u>the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment</u>. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Here, partial judgment was entered in favor of the Fike Defendants and against the Plaintiffs, but was not accompanied by the finding required by Rule 54(b) that "there is no just reason for delay." Although Plaintiffs have not formally moved for certification under 54(b), their motion for clarification can reasonably be interpreted as such a request.

In deciding whether there is no just reason to delay the appeal of a partial final judgment, a court "must take into account judicial administrative interests as well as the equities involved." *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8 (1980).

> Consideration of the [issue of judicial administrative economy] is necessary to assure that application of the Rule effectively "preserves the historic federal policy against piecemeal appeals." [Citation] It was therefore proper for the District Judge here to consider such factors as whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals.

*Id*. Accordingly, Rule 54(b) certification would be appropriate if the claims to be reviewed are separable from the remaining

claims in the case. The claims against the Fike Defendants satisfy this requirement. All of the allegations directed at the Fike Defendants concern acts taken in connection with their role as counsel to the DDJ Defendants and were therefore covered by the Anti-SLAPP statute. For similar reasons, the district court found that the litigation privilege barred all but one of the state law claims against the Fike Defendants. The remaining claim, for malicious prosecution, was stricken because Plaintiffs had not pleaded a prima facie showing that the Fike Defendants lacked probable cause to file counterclaims against Plaintiffs in the underlying PACA lawsuit. Nevertheless, the Anti-SLAPP statute was applied to the malicious prosecution claim, in part because of the Fike Defendants' role as counsel to DDJ. (See Doc. 108 at 18-20.)

In contrast, the allegations against the other Defendants, which include claims of alter ego liability, violation of the uniform fraudulent transfer act, fraud, conversion, and civil RICO, focus on conduct that is only tangentially related to court proceedings, if at all. (*See* First Amended Complaint, Doc. 113.) It is unlikely that either the Anti-SLAPP statute or the litigation privilege would apply to the bulk of these claims.[4] The legal issues that will be raised in the imminent appeal from judgment in favor of the Fike Defendants is unlikely to resurface in subsequent or concurrent litigation concerning the claims against the remaining defendants. The interests of judicial economy will not be offended by certification under Rule 54(b).

---

[4] The district court has not thoroughly analyzed the applicability of the Anti-SLAPP statute or the litigation privilege to the remaining claims and need not decide the issue here.

13

The Fike Defendants oppose certification, either under Rule 54(b) or 28 U.S.C. 1292(b) (interlocutory appeal), primarily because the instant lawsuit has spawned a separate legal dispute between the Fike firm and their former clients, which has been stayed pending resolution of this lawsuit.  The Fike Defendants are concerned that certification of the Anti-SLAPP decision for immediate appeal would remove any incentive for Plaintiffs to promptly pursue their claims against the remaining defendants, thereby delaying the ultimate resolution of the separate lawsuit.  Although this is a legitimate concern, the Fike Defendants did not suggest that any serious prejudice would result from delaying the outcome of that lawsuit.

In the final analysis, Plaintiffs are pro se litigants facing the possibility of a having a large attorney's fee award entered against them under the Anti-SLAPP statute.[5]  As noted in the November 29, 2006 order on Fike Defendants' motion for reconsideration, a district court may hear and decide an attorney's fee petition while an appeal is pending.  (Doc. 157 (citing *Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 957 (9th Cir. 1983).)  But, the parties do not point to any cases suggesting that the district court must do so.  Here, under the

---

[5]   It is well-settled that an award of attorney's fees and costs to a successful Anti-SLAPP movant is mandatory. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001). "[A]bsent circumstances rendering an award unjust, the fee should ordinarily include compensation for all hours reasonably spent, including those relating solely to [obtaining] the fee [award]." *Serrano v. Unruh*, 32 Cal. 3d 621, 624 (1982)(applying Cal. Code Civ. Pro § 1021.5)(cited in *Ketchum*, 24 Cal. 4th at 1141).  The fee provision of the Anti-SLAPP statute has been applied in federal court. *Metabolife Intern., Inc. v. Wornick*, 213 F. Supp. 2d 1220 (S.D. Cal. 2002).

**14**

circumstances, fairness suggests that Plaintiffs should be afforded an opportunity to immediately appeal the partial judgment in favor of the Fike Defendants <u>prior</u> to resolution of the attorney's fee petition.[6]

//
//
//
//
//
//
//
//
//
//
//

---

[6] In exercising its discretion to stay decision on the attorney's fee petition, the district court is <u>not</u> accepting Plaintiffs' argument that such a stay is <u>required</u> under *Varian Medical Systems, Inc. v. Delfino*, 35 Cal. 4th 180 (2005), in which the California Supreme court held that the perfecting of an appeal from the <u>denial</u> of an Anti-SLAPP motion to strike automatically stays all further proceedings on the merits. The *Varian* court reasoned that "an appellate reversal of an order denying [an Anti-SLAPP motion] may [] result in a dismissal." *Id*. at 193. Therefore, proceeding with the case on the merits while such an appeal is pending would be inconsistent with the appeal "because the appeal seeks to <u>avoid</u> that very proceeding. Indeed, the point of the Anti-SLAPP statute is that you have a right not to be dragged through the courts because you exercised your constitutional rights." *Id.* (internal quotations and citations omitted)(emphasis added). *Varian* is wholly inapplicable to the present circumstances, where Plaintiffs appeal from an order <u>granting</u> a motion to dismiss. The purpose of the Anti-SLAPP statute, to prevent parties from being dragged through the courts because they exercised their constitutional rights, does not protect Plaintiffs, who filed the state law claims that are the subject of the Anti-SLAPP motion.

Although Plaintiffs will now be free to appeal the partial judgment entered against the Fike Defendants, there is no stay in effect as to the claims against the remaining defendants. Plaintiffs must move those forward with reasonable dispatch.

### III. CONCLUSION

For the reasons set forth above:

(1) Plaintiffs' motion to vacate the partial judgment is **DENIED.**

(2) Plaintiffs' motion for clarification of procedural issues, construed as a motion for certification under Federal Rule of Civil Procedure 54(b), is **GRANTED.** There is no just reason for delay of entry of final judgment in favor of the Fike Defendants. **The Clerk of Court is directed to enter final judgment in favor of the Fike Defendants and against Plaintiffs. This does not close the case, as there are outstanding claims against other defendants.**

(3) Plaintiffs' request to delay decision on the Fee Petition while they attempt to perfect their appeal is **GRANTED.** The fee petition is **DENIED WITHOUT PREJUDICE**, but, should the Fike Defendants' prevail on appeal, the fee petition may be re-noticed at that time.

IT IS SO ORDERED.

**Dated:   March 29, 2007**           /s/ Oliver W. Wanger
b2e55c                                UNITED STATES DISTRICT JUDGE