1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JOE FLORES, an individual, and CONNIE FLORES, an individual,** | ) ) ) **1: 05 - CV - 0291 AWI DLB** |
| **Plaintiffs,** | ) **ORDER GRANTING MOTION TO** ) **DISMISS AND DISMISSING SECOND** ) **AMENDED COMPLAINT** |
| **v.** | ) ) **ORDER GRANTING LEAVE TO** ) **AMEND CERTAIN CAUSES OF** |
| **EMERICH & FIKE, a professional corporation, et al.,** | ) **ACTION** ) ) |
| **Defendants.** | ) (Documents #309 #310 #314, #315) ) |

**BACKGROUND**

On October 9, 2007, Plaintiff Joe Flores and Plaintiff Connie Flores ("Plaintiffs") filed a

second amended complaint ("complaint").    The complaint contains six causes of action: (1)

Malicious Prosecution and Malicious Use of Process; (2) Conversion; (3) Civil RICO; (4) Breach

of Duty of Care; (5) Civil Conspiracy; and (6) Constructive Trust.

On October 25, 2007, Defendants Dennis Hagobian, Victoria Hagobian, Dennis

Hagobian Residence Trust, Victoria Hagobian Residence Trust, Rod Christensen, and Yosemite

Technologies Inc. ("Hagobian Defendants") filed a motion to dismiss the complaint.    On

October 26, 2007, Defendant Russell Davidson joined the motion to dismiss filed by Hagobian

Defendants.  On October 31, 2007, Defendants Sandy L. Vartan, Judith Yeramian, the Judith

Mary Yeramian Family Trust, and the Lee Yeramian Exempt QTIP Trust ("Yeramian

Defendants") joined the motion to dismiss.    Defendants contend that Plaintiffs' first cause of

action for malicious prosecution must be dismissed for failure to state a claim because the complaint does not allege lack of probable cause or malice.   Defendants contend that Plaintiffs' second cause of action for malicious use of process is barred by the litigation privilege and fails to state a claim.   Defendants contend that Plaintiffs' third cause of action for RICO violations is barred by the statute of limitations and fails to state a claim.   Defendants contend that Plaintiffs' fourth cause of action for breach of the duty of care fails to state a claim.   Defendants contend that Plaintiffs' conspiracy allegations fail to state a claim.   Defendants contend that Plaintiffs have alleged nothing that would entitle them to the remedy of a constructive trust.

On November 21, 2007, Plaintiff Joe Flores filed an opposition to the motion to dismiss. On November 21, 2007, Plaintiff Connie Flores filed an opposition.   On November 26, 2007, Hagobian Defendants filed a reply brief.   On November 26, 2007, Plaintiff Joe Flores filed a supplemental opposition, which Plaintiff Connie Flores joined.   On December 5, 2007, Hagobian Defendants filed a substantive reply to Plaintiffs' oppositions.

## LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted".   Fed.R.Civ.Pro. 12(b)(6).   A Rule 12(b)(6) dismissal can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory.   Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984).    In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976); Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003).

For a complaint to avoid dismissal pursuant to Rule 12(b)(6), the complaint need not

2

contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, – U.S. – , 127 S.Ct. 1955, 1974 (2007); Weber v. Department of Veterans Affairs, 512 F.3d 1178, 1181 (9th Cir. 2008).   While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level."  Twombly, 127 S.Ct. at 1964-65.    Federal Rule of Civil Procedure 8(a)(2) requires a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of entitlement to relief.  Id. at 1965 n. 3.  Legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. Robertson v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.1981). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.2001), *amended by* 275 F.3d 1187 (9th Cir. 2001).   A Rule 12(b)(6) motion to dismiss should be granted when a plaintiff fails to nudge his or her claims "across the line from conceivable to plausible."  Twombly, 127 S.Ct. at 1974.

**FACTS**

**A.  FACTS ALLEGED IN THE COMPLAINT**

The complaint alleges that Plaintiff Joe Flores and Plaintiff Connie Flores ("Plaintiffs") owned and operated an apple farm.   Plaintiffs sued DDJ, Inc. and DDJ LLC ("DDJ Entities") in a case entitled Flores v. DDJ, Inc., et al., 1:99-CV-5878 AWI DLB ("Flores I").   On July 25, 2003, the jury returned a special verdict in Plaintiffs' favor for over $750,000.00.

The complaint alleges that Hagobian Defendants and Yeramian Defendants are or were the owners, members, or directors with more than 10% of stock in the DDJ Entities.    The complaint alleges that Defendant Yosemite Technologies, Inc. ("Defendant Yosemite") is a corporation organized under the laws of the State of Delaware and conducting business within

1  the confines of the State of California.    The complaint alleges that Defendant Rod Christensen

2  is the co-founder and chief technology officer of Defendant Yosemite.

3      The complaint alleges that on February 9, 2001, DDJ, Inc., at the direction of Defendants

4  Dennis Hagobian, Victorian Hagobian, Dennis Vartan, and Judith Yeramian, filed a counter

5  complaint against Plaintiffs in Flores I.   The complaint alleges that the counter complaint was

6  meritless and non-tenable, and any reasonable attorney would have abstained from filing and

7  prosecuting this counter complaint.   The complaint alleges that the counter complaint was filed

8  as a tactic to scare Plaintiffs into dismissing  Flores I.   The complaint alleges that the actions of

9  the DDJ Entities were malicious and vexatious, purely to cause annoyance and worry to

10  Plaintiffs.

11      The complaint alleges that after the Clerk of the Court filed judgment in Flores I,

12  Plaintiffs made attempts to collect the judgment.    The complaint alleges that soon thereafter,

13  Plaintiffs found out that Defendants had converted Plaintiffs' Property.   Specifically, the

14  complaint alleges that Defendants Dennis Hagobian, Victoria Hagobian, Dennis Vartan, Judith

15  Yeramian, Russell Davidson, William Davidson and Michael Hedberg as owners, shareholders,

16  directors, and members of the DDJ Entities conspired with Defendant Rod Christensen to

17  actively participate in a pattern of unlawful activities.  The complaint alleges that shortly after the

18  sale of all assets and property belonging to the DDJ Entities, the DDJ Entities hired Defendants

19  Dennis Hagobian and Dennis Vartan as consultants to find investments for the DDJ Entities.

20  The complaint alleges that Defendants found it worthy to invest a capital infusion into Defendant

21  Yosemite by converting proceeds that rightfully belonged to Plaintiffs.

22      The complaint alleges that Defendants are "sued under their individual and/or fictitious

23  names, was or is the principal, and/or actual or ostensible agent, and/or employer, and/or

24  employee, and/or partner, and/or member, and/or manager, and/or director, and/or shareholder,

25  and/or alter ego of the other, and with respect to the allegations alleged herein, were at all times

26  acting within the scope of one or more of such relationships and with the implied and/or

27

28                                            4

1    expressed direction, approval or ratification of each of the other defendants."

2

3    **B. JUDICIAL NOTICE**

4         Facts subject to judicial notice may be considered by a court on a motion to dismiss.  In re

5    Russell, 76 F.3d 242, 244 (9th Cir. 1996); Mullis v. United States Bankruptcy Court, 828 F.2d

6    1385, 1388 (9th Cir. 1987).   The court may take judicial notice of facts that are capable of

7    accurate and ready determination by resort to sources whose accuracy cannot reasonably be

8    questioned.  Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir.

9    1993).  Judicial notice may be taken of court records.  See, e.g., Colonial Penn Ins. Co. v. Coil,

10   887 F.2d 1236, 1239 (4th Cir. 1989); Mullis v. United States Bank. Ct., 828 F.2d 1385, 1388 n.9

11   (9th Cir. 1987).   The court takes judicial notice of the court records in Flores I.

12

13                                      **DISCUSSION**

14   **A.  FIKE DEFENDANTS**

15        Preliminarily, the court notes that the current complaint contains a cause of action for

16   malicious prosecution against Emerich & Fike, a professional corporation, David R. Emerich,

17   David A. Fike, Jeffery D. Simonian, Thomas A. Pedreira, and Lawrence E. Westerlund ("Fike

18   Defendants").   On August 31, 2006, Judge Oliver W. Wanger, who was then the District Court

19   Judge assigned to this action, granted the Fike Defendants' motion to dismiss and dismissed the

20   Fike Defendants as defendants from this action.   On October 12, 2006, Judge Wanger entered

21   judgment in favor of the Fike Defendants.   After further briefing from the parties, on March 29,

22   2007, Judge Wanger granted Plaintiffs' motion for certification under Rule 54(b) of the Federal

23   Rules of Civil Procedure and directed the Clerk of the Court to enter final judgment in favor of

24   the Fike Defendants and against Plaintiffs.   The same day, the Clerk of the Court made the

25   following entry in the docket of this action at Document #190:

26        MINUTE ORDER: TEXT ONLY ENTRY - The Court's Judgment entered on
          10/12/06 at document number 139 is considered the Court's Final Judgment in
27

28                                           5

1    favor of the Fike defendants and against Plaintiff. (Robles, S) (Entered:
2    03/29/2007)

3        Normally, a final judgment is not entered in an action until all claims have been resolved.

4    However, Rule 54(b) of the Federal Rules of Civil Procedure allows for the entry of final

5    judgment with respect to less than all parties or claims in an action if the court makes "an express

6    determination that there is no just reason for delay" and expressly directs "entry of judgment."

7    Fed.R.Civ.P. 54(b).   Absent a final order pursuant to Rule 54(b), any order or other decision

8    that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties

9    does not end the action as to any of the claims or parties and may be revised at any time before

10   the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Id.

11       In this action, the court has entered a final judgment pursuant to Rule 54(b) as to the Fike

12   Defendants.    Because a final judgment pursuant to Rule 54(b) has been entered, this action

13   ended as to the Fike Defendants as of March 29, 2007.   The current complaint's "amended

14   pleadings" concerning the Fike Defendants are not appropriate.   Rule 12(f) of the Federal Rules

15   of Civil Procedure allows the court to strike from "any pleading any insufficient defense or any

16   redundant, immaterial, impertinent, or scandalous matter."   Striking allegations pursuant to Rule

17   12(f) is proper if it will make the trial less complicated or if the allegations will be prejudicial.

18   See  Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir 1993), rev'd on other grounds, 510

19   U.S. 517 (1994).   The court finds that references to claims against the Fike Defendants, for

20   which final judgement has been entered, will complicate and confuse the issues remaining in this

21   action.   No causes of action may proceed against the Fike Defendants in light of the Rule 54(b)

22   judgment.   Thus, the court will strike the causes of action and allegations against the Fike

23   Defendants from the complaint.

24

25   **B.  MALICIOUS PROSECUTION**

26       The basis of Plaintiffs' malicious prosecution cause of action is the counterclaim filed by

27

28                                      6

1  the DDJ Entities in <u>Flores I</u> for $11,000.00.    The complaint contends this counterclaim should

2  have been dismissed when it became known that Traft & Traner, Inc ("T&T") had purchased the

3  DDJ Entities' liabilities and property.    Plaintiffs argue that the DDJ Entities had no basis to

4  litigate a claim belonging to T&T.    The complaint also contends that Plaintiff Connie Flores

5  was named as a counter defendant to this claim, yet she had not signed the contract at issue.   The

6  jury in <u>Flores I</u> ultimately found in Plaintiffs' favor on the DDJ Entities' counterclaim.    In their

7  cause of action for malicious prosecution, Plaintiffs contend that DDJ Entities had no good cause

8  to prosecute the counterclaim when Defendants knew the dispute had been sold to T&T and

9  Plaintiff Connie Flores was not a signatory to the relevant contracts.

10      Defendants contend that any malicious prosecution claim against Defendants is subject to

11  dismissal based on orders issued by Judge Oliver W. Wanger earlier in this case.    Second,

12  Defendants contend that Plaintiffs have failed to show that it was Defendants, and not the DDJ

13  Entities, who caused the counterclaim to be filed.

14      The court takes judicial notice of prior complaints and orders in this action.    Both the

15  original complaint and amended complaint alleged malicious prosecution causes of action against

16  the Fike Defendants and Defendants.    On February 21, 2006, Judge Wanger struck the malicious

17  prosecution cause of action as to the Fike Defendants pursuant to California's "Anti-SLAPP"

18  statute, California Code of Civil Procedure Section 425.16.    When determining whether the

19  complaint state a claim, Judge Wanger found, in part,:[1]

20          . . . . The elements of a prima facie case of malicious prosecution are (1) a
        judicial proceeding favorably terminated; (2) lack of probable cause; and (3)
21      malice. *Villa v. Cole,* 4 Cal. App. 4th 1327, 1335 (1992). Malicious prosecution
        actions are disfavored under California law. . . .
22          The first element is satisfied in this case because the Flores' obtained a
        favorable jury verdict in Flores I and defeated the defendants' cross-complaints.
23      The Fike Defendants maintain that Plaintiffs are unable to establish either lack of

24  _____

25      [1]  The court notes Plaintiffs, and at times, Judge Wanger, referred to the counterclaim as a
    cross-complaint.   Because the DDJ Entities were not co-parties with Plaintiffs in <u>Flores I</u>, their
26  claim against Plaintiffs was a counterclaim and not a cross-complaint.    The court finds that the
    use of the term cross-complaint is simply a clerical error and when referencing the DDJ Entities'
27  cross-complaint Plaintiff and Judge Wanger were referring to the counterclaim.

28                                         7

probable cause or malice.

(1) Probable cause.

Here, Plaintiffs allege that the Fike Defendants prosecuted the cross-complaint in Flores I without probable cause as to both Joe and Connie Flores. The Flores' make a number of general arguments in support of this contention, but none of these arguments satisfy Plaintiffs' burden. First, Joe Flores suggests that the absence of probable cause is established because the jury found that the Flores' were not liable under the cross-complainant. This argument defies logic. The first element of a prima facie case of malicious prosecution is a "judicial proceeding favorably terminated." The jury's verdict satisfies the first element, but Joe Flores suggests that the verdict also satisfies the second element -- absence of probable cause. If this were the case, the second element would be redundant and unnecessary. A greater showing is needed to establish absence of probable cause.

Probable Cause exists to file a claim whenever "any reasonable attorney would have thought the claim tenable." *Sheldon Appel.*, 47 Cal. 3d at 885. Litigants have the right to present claims that are arguably correct, "even if it is extremely unlikely that they will win." *Id.* at 885. Plaintiff correctly points out that, even if a reasonable attorney might believe in the merits of a claim, one cannot escape liability if the action "was prosecuted with knowledge of the falsity of the claim." *Albertson v. Raboff*, 46 Cal. 2d 375, 382; *Bertero*, 13 Cal. 3d at 55.

Turning then to the factual allegations contained within the Complaint and the Flores' oppositions to this motion to strike, the Flores' have not alleged facts to show absence of probable cause or knowledge of the falsity of the claim. First, the Flores' conclusorily allege that the Fike Defendants lacked probable cause to believe that any debt was owed by the Flores' at all under the promissory note. They do not allege facts showing why or how the Fike defendants could then know the claims were merit less. But, the Fike Defendants represent that they reviewed the accounting records and concluded that these records evidenced a $9,843.66 debt to FMI. Although the jury in Flores I ultimately found that the Flores did not owe DDJ, as assignee, any money on the counterclaim, nothing in the record indicates that the Fike Defendants knew at the time that the claim was filed that the allegations in the counterclaim were false or that the monetary claim was spurious. Nor is there any indication in the record that no reasonable attorney would have believed the counter-claim debt owed was unjustified. (Plaintiffs bear the burden of establishing as much in this case, and cannot rely upon the trial record from Flores I unless there are undisputed judicially noticeable facts that exist.)

Second, the Flores' emphasize that, although Joe Flores signed a promissory note to DDJ, DDJ later sold the note to a third party, Taft & Trainer, Inc. The Fike Defendants acknowledge that this transfer occurred, but maintain that DDJ Inc. had an agreement with Taft & Trainer that DDJ would defend the Flores I lawsuit and pursue any counterclaim for the Flores' outstanding debt under the note. (Fike Decl. ¶16) The existence of such an agreement was supported by written agreements. (Id. at Exhibit 2.) Although the jury in Flores I ultimately found that the Flores' did not owe money to either DDJ or Taft & Turner, there is absolutely no indication that the indemnity, assignment, and litigation enforcement agreement was invalid, and, even if invalid, that the Fike Defendants knew of any invalidity or that no reasonable attorney would have believed the agreement to be valid.

Finally, Ms. Flores specifically alleges that the Fike Defendants lacked probable cause to claim that she was a signatory to the promissory note.

8

Accordingly, Ms. Flores alleges that there was no probable cause to name her as a counter-defendant. Ms. Flores correctly points out that the promissory note itself repeatedly refers to Mr. Flores and never to Ms. Flores (or Connie Flores). For example, it declares that "DDJ, Inc. holds a secured interest in certain apples and proceeds belonging to Mr. Flores." However, the Fike Defendants submit that both Joe and Connie Flores were responsible for the promissory note because both were signatories to various packaging and marketing agreements and that the promissory note was entered into as part of an overall package of agreements. (Fike Decl. ¶ 15.) Moreover, the promissory note itself states that the note "is secured by the financing statement given to lender from borrower pursuant to their Packing and Marketing Agreement dated February 18, 1997." (See Promissory Note.) The only relevant inquiry is whether the attorney's client provides facts that establish the existence of probable cause for the lawsuit's claims. The opposing party's competing evidence is irrelevant.

> Plaintiffs and their attorneys are not required, on penalty of tort liability, to attempt to predict how a trier of fact will weigh competing evidence, or to abandon their claim if they think it likely that evidence will ultimately weigh against them. They have a right to bring a claim they think unlikely to succeed, so long as it is arguably meritorious.

*Wilson v. Parker Covert & Cadaster*, 28 Cal. 4th at 822. Plaintiffs offer no evidence suggesting that the Fike Defendants had any reason to doubt the existence of probable cause to believe that Ms. Flores was a proper counter-defendant.

(2) Malice.

To prove malice, Plaintiffs must show that the Fike Defendants filed the underlying action with a wrongful motive. . . .*Centers v. Dollar Markets*, 99 Cal. App. 2d 534, 541 (1950). Malice can be inferred from willful misconduct, *see Drum v. Beau, Fox & Assoc.*, 107 Cal. App. 4 1009, 1020 (2003), but no willful misconduct, such as the intent to vex or annoy, on the part of the Fike Defendants is alleged in the complaint or otherwise evident in the record. This omission is a fatal defect in a malicious prosecution claim.

The Anti-Slap law applies to Plaintiffs' second cause of action. However, Plaintiffs have failed to establish that this claim is "both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Arrow*, 31 Cal. 4th at 738. The Fike Defendants' motion to strike the second cause of action for malicious prosecution is GRANTED, with leave to amend.

(Feb/21/06 Order at 20-25).

After Plaintiffs filed the first amended complaint, on August 31, 2006, Judge Wanger found that it had been improper for the court to have given leave to amend the malicious prosecution claim.    Regardless, Judge Wanger found the first amended complaint still did not state a cause of action against the Fike Defendants for malicious prosecution.    After rejecting new arguments and new facts found in the first amended complaint, Judge Wanger stated:

Second, Plaintiffs re-assert an argument that was rejected by the prior memorandum opinion –- that the Fike Defendants knew or should have known that the counterclaim was false because DDJ had assigned the alleged claim to a third party. The prior memorandum opinion reasoned that:

> The Fike Defendants acknowledge that this transfer occurred, but maintain that DDJ Inc. had an agreement with Taft & Trainer that DDJ would defend the Flores I lawsuit and pursue any counterclaim for the Flores' outstanding debt under the note. (Fike Decl. ¶16) The existence of such an agreement was supported by written agreements. (Id. at Exhibit 2.) Although the jury in Flores I ultimately found that the Flores' did not owe money to either DDJ or Taft & Turner, there is absolutely no indication that the indemnity, assignment, and litigation enforcement agreement was invalid, and, even if invalid, that the Fike Defendants knew of any invalidity or that no reasonable attorney would have believed the agreement to be valid.

(Doc. 108 at 23.) Plaintiffs now assert that the agreement with Taft & Trainer "does not acknowledge the cross-complaint, or that Tracer & Taft assigned or otherwise agreed to permit assignment of said liability for Fike Defendants to pursue [the cross complaint] on behalf of DDJ, Inc." (FAR at ¶ 182.) Plaintiffs, however, do not explain the legal significance of this failure. Plaintiffs cite, without clearly explaining, several other pieces of evidence in support of their contention that the Fike Defendants lacked probable cause to believe that DDJ retained the right to assert claims against the Flores. For example, Plaintiffs argue that:

> Although Fike Defendants...do mention that "David A. Fike's clients provided him with both testimonial and documentary evidence that DDJ, Inc., has an agreement with Trainer & Taft, Inc., that DDJ Inc., would take responsibility for defending the underlying lawsuit and for pursuing the counterclaim for Flores' outstanding debt. (Fike Decl., ¶ 16). (See Memorandum of Points and Authorities in Support of Motion to Strike Certain Causes of Action from Complaint at 11:22-25). In addition, David A. Fike, in his Declaration clearly indicates that "DDJ Inc., had an agreement with Tracer & Taft, Inc., that DDJ Inc., would take responsibility for defending the underlying lawsuit and for pursuing the counterclaim for Flores' outstanding debt. (See Declaration of David A. Fike, at ¶ 16).  The sworn testimony of David A. Fike which references Dennis Vartan and Dennis Hagobian, is quite the opposite of what David A. Fike contends in his Declaration. (See Declaration of Attorney, Marshall C. Whitney, in support of Motion to Strike at Exhibit 'A' at pg. 949-962 [testimony of Dennis Vartan at trial on underlying action] also see id at Exhibit 'B' at pgs. 1306-1428:2 [testimony of Dennis Hagobian]). More specifically, Dennis Hagobian testified that Tracer & Taft assigned [to] DDJ, Inc., the Flores' liability note back to DDJ, Inc. [sic] Should testimonies of both, Dennis Vartan and Dennis Hagobian be credible, then surely DDJ Inc., and Fike Defendants were not prosecuting the counterclaim for breach of contract on behalf of Tracer & Taft as the Court contends.

(Doc. 110 at 3.) But, the testimony cited by the Flores is from the jury trial before Judge Ishii and has little or no bearing on whether the Fike Defendants had

probable cause to file the counterclaims in the first place. Moreover, a review of the testimony cited by the Flores' reveals that Dennis Hagobian consistently testified that DDJ retained the right to pursue a counterclaim against the Flores' to collect outstanding debt. (See Doc. 34, Whitney Decl., Ex. B at 1427.) Again, the existence of somewhat contradictory testimony elsewhere in the trial record does not establish the absence of probable cause. It supports the inference that evidence exists to support both positions.

. . . .

Finally, Plaintiffs re-assert the previously rejected argument that the Fike Defendants "knew or should have known that Connie Flores was not participating in the marketing agreement or any kind of financial agreement with DDJ, Inc., for the crop year of 1997." As evidence in support of this assertion, Plaintiffs rely exclusively on Judge Ishii's memorandum decision in Flores I concerning Connie Flores' petition in for attorney's fees under California Civil Code § 1717.

. . . .Plaintiffs suggest that DDJ's assertion of this defense (and Judge Ishii's discussion of the defense in the memorandum decision) supports a finding that the Fike Defendants, who represented DDJ in Flores I, knew at the time the counterclaim was field that Ms. Flores had not signed the relevant documents and therefore lacked probable cause to file the counterclaim against her.

Plaintiffs read too much into Judge Ishii's decision, which examined the jurisprudence pertaining to attorney's fees awards under section 1717 in some detail. The decision reasoned that Ms. Flores would only be entitled to an award under section 1717 if she would have been liable on the contract claim had the jury returned a verdict in favor of Defendants. But, contrary to Plaintiffs' suggestion, Judge Ishii specifically noted in his analysis that DDJ "clearly believed if [it] prevailed, [] Connie Flores would have been liable for the advanced funds along with Flores would have been liable for the advanced funds along with [] Joe Flores." (Doc. 342 at 6.) In part as a result of this finding, Judge Ishii concluded that Connie Flores was entitled to attorney's fees under section 1717. Judge Ishii's opinion does not on its own support a finding that the Fike Defendants lacked probable cause to name Connie Flores in the counterclaim. In fact, it supports the opposite conclusion by finding that DDJ clearly believed" in the merit of its original counterclaim against Ms. Flores. The Flores' advance no additional evidence or arguments in support of such a finding.

(08/31/06 Order at 22-26).

Defendants contend in the current motion to dismiss that Plaintiffs' allegations as to Defendants are the same as the allegations previously alleged as to the Fike Defendants. Defendants contend that the malicious prosecution cause of action against Defendants must follow the same result as the malicious prosecution cause of action against the Fike Defendants.

**1. Claim Preclusion**

Res judicata, or claim preclusion, "bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action between the parties, where the

previous action was resolved on the merits."  Tahoe-Sierra Preservation Council v. Tahoe

Regional Planning Agency, 322 F.3d 1064, 1078 (9th Cir. 2003); United States ex rel. Barajas v.

Northrop Corp., 147 F.3d 905, 909 (9th Cir. 1998)).   Res judicata applies when there is (1) an

identity of claims, (2) a final judgment on the merits, and (3) privity between the parties.  Hells

Canyon Preservation Council v. U.S. Forest Service, 403 F.3d 683, 686 (9th Cir. 2005);

Headwaters Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1052 (9th Cir. 2005);  Tahoe-Sierra, 322

F.3d at 1077.  "The doctrine of res judicata provides that a final judgment on the merits bars

further claims by parties or their privies based on the same cause of action, and is central to the

purpose for which civil courts have been established, the conclusive resolution of disputes within

their jurisdiction."  Headwaters, 399 F.3d at 1051-52 (internal quotation marks omitted).

### a.  Identity of Claims

To find claim preclusion, the court must find identity of claims between Plaintiffs'

malicious prosecution cause of action against the Fike Defendants and the malicious prosecution

cause of action against Defendants.   "The central criterion in determining whether there is an

identity of claims between the first and second adjudications is whether the two suits arise out of

the same transactional nucleus of facts."  Frank v. United Airlines, Inc., 216 F.3d 845, 851 (9th

Cir. 2000) (internal quotations omitted).   Specifically, courts consider the following factors:  (1)

whether the rights or interests established in the prior judgment would be destroyed or impaired

by prosecution of the second action; (2) whether substantially the same evidence is presented in

the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether

the two suits arise out of the same transactional nucleus of facts.   Id.

Here, the malicious prosecution cause of action against the Fike Defendants and

Defendants arise from the same transactional nucleus of facts.   The malicious prosecution

claims against both the Fike Defendants and Defendants concern their alleged involvement in the

DDJ Entities' counterclaim against Plaintiffs during Flores I.   The malicious prosecution claim

against Defendants rests on their alleged actions that compelled the Fike Defendants to file the

12

counterclaim on behalf of the DDJ Entities.    Finding that a malicious prosecution claim is available against Defendants but not available against the Fike Defendants is inconsistent.    The alleged facts underlying both malicious prosecution claims are almost identical.    In both claims, Plaintiffs allege that Defendants and the Fike Defendants filed a counterclaim based on accounting information they knew was incorrect and for which they had no legal basis. Plaintiffs allege that both the Fike Defendants and Defendants infringed on the same right - the right to be free of lawsuits based on knowingly false information.    Simple put, both malicious prosecution causes of action concern Defendants' and the Fike Defendants' actions that resulted in the DDJ Entities filing a knowingly false and frivolous counterclaim.    Thus, determining that Plaintiffs' malicious prosecution cause of action against Defendants must be decided the same as Plaintiffs' cause of action against the Fike Defendants is supported because the identity of the claims is the same.

### *b.  Final Judgment*

Had Judge Wanger merely dismissed the malicious prosecution claim against the Fike Defendants, it would be deemed an interlocutory order that would have no res judicata effect. See Luben Indus., Inc. v. United States, 707 F.2d 1037, 1040 (9th Cir.1983) (an unappealable decision is "not sufficiently firm to give it collateral estoppel effect").    However, besides dismissing the Fike Defendants, Judge Wanger entered final judgment pursuant to Rule 54(b) and the parties have appealed the dismissal.  Because there was an entry of final judgment pursuant to Rule 54(b), there has been a final judgment for claim preclusion purposes on the malicious prosecution claim against the Fike Defendants.

### *c.  Privity*

"Privity . . . is a legal conclusion designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved."  F.T.C. v. Garvey, 383 F.3d 891, 897 (9th Cir. 2004); In Re Schimmels, 127 F.3d 875, 881 (9th Cir. 1997).  Privity is a flexible concept dependent on the particular relationship between

13

the parties in each individual set of cases.    Garvey, 383 F.3d at 897.    A non-party can be bound

by the litigation choices made by his virtual representative only if certain criteria are met: "[A]

close relationship, substantial participation, and tactical maneuvering all support a finding of

virtual representation; identity of interests and adequate representation are necessary to such a

finding." Headwaters, 399 F.3d at 1053-54 (quoting Irwin v. Mascott, 370 F.3d 924 (9th Cir.

2004)).    Examples of privity include:

> (1) where a non-party has succeeded to a party's interest in property; (2) where a non-party controlled the original suit; (3) where the non-party's interests were adequately represented by a party in the original suit; (4) where there is a "substantial identity" between the party and the non-party; (5) where the non-party had a significant interest and participated in the prior action; (6) where the interests of the non-party and the party are so closely aligned as to be virtually representative; and (7) where there is an express or implied legal relationship by which parties to the first suit are accountable to non-parties who file a subsequent suit with identical issues.

Garvey, 383 F.3d at 897 n.5; In re Schimmels, 127 F.3d at 881.

In this action, the complaint's allegations show privity between the Fike Defendants and

Defendants.    The complaint alleges that Defendants controlled the litigation in Flores I, and

Plaintiffs take the position that the Fike Defendants filed the counterclaim against Plaintiffs

because Defendants told them to.    Based on the complaint's allegations, the Fike Defendants'

and Defendants' interests are closely aligned for the purposes of defeating any malicious

prosecution claim.[2]    By claiming that they are entitled to the same outcome as the Fike

Defendants, Defendants are essentially conceding that they should be held in privity to the Fike

Defendants for the purposes of claim preclusion.    The court agrees.

**2. Plaintiff's Position**

Plaintiffs do not provide argument or legal authority on why the doctrine of claim

preclusion should not apply to the malicious prosecution cause of action.    Plaintiffs' only real

contention concerning the applicability of Judge Wanger's ruling on the malicious prosecution

cause of action is that Judge Wanger was incorrect and the issue is on appeal.    Plaintiffs'

---

[2]  The court makes this finding based on the complaint's allegations.

disagreement with Judge Wanger notwithstanding, it does not provide a basis for the court to find the current malicious prosecution cause of action against Defendants is not precluded by claim preclusion.

Finally, the court notes that in the opposition, Plaintiffs contend that DDJ, Inc's lack of corporate status during the trial in <u>Flores I</u> is another reason to find Defendants' actions in filing the counterclaim were malicious.   This theory of malicious prosecution is not included in the complaint, and as such, cannot save this cause of action from dismissal.   In addition, this theory was not raised in earlier complaints, and was not litigated between Plaintiffs and the Fike Defendants.   Claim preclusion bars both relitigation of grounds of recovery that were asserted or could have been asserted earlier.  <u>See</u> <u>Tahoe-Sierra Preservation Council</u>, 322 F.3d at 1078. Thus, it would be futile for the court to grant leave to amend the complaint to add this theory of liability because it is also barred by claim preclusion.

Accordingly, the malicious prosecution cause of action is subject to dismissal without leave to amend.

## C.  MALICIOUS USE OF PROCESS

The basis of Plaintiffs' malicious use of process cause of action arises from the discovery that occurred during <u>Flores I</u>.   Specifically, the complaint alleges that Tom Grainer, an employee of DDJ Entities, testified under oath that he observed Defendant Dennis Hagobian destroying documents. The complaint alleges that David R. Emerich, the DDJ Entities' attorney, wrote letters to Plaintiffs demanding payment.   The complaint alleges that DDJ Entities required 53 cents  per page to copy documents Plaintiffs requested as part of an accounting. The complaint alleges that David R. Emerich wrote a letter to Hemphill & Wilson Enterprises, Inc., who had contracted with Plaintiffs to pack their 1998 crop, stating that Plaintiffs owed the DDJ Entities money.

Defendants contend that Judge Wanger's orders, which dismissed the abuse of process

causes of action against the Fike Defendants, bar litigation of these issues against Defendants.

Both the original complaint and amended complaint alleged an abuse of process cause of action

against the Fike Defendants and other Defendants.   On February 21, 2006, Judge Wanger found

as follows:

> Plaintiff's third cause of action is entitled "malicious use of process," but appears to be a claim for "abuse of process."  The tort of abuse of process constitutes "the use of a legal process against another to accomplish a purpose for which it is not designed." *Drum*, 107 Cal. App. 4th at 1019. Its elements are: (1) "an ulterior motive;" and (2) "a willful act in the use of process not proper in the regular conduct of the proceedings." *Id*.
>
> The essence of the tort 'abuse of process' lies in the misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice....
>
> Here, Plaintiffs allege that the Fike Defendants abused legal process in several ways:
> > (1)   By attempting to charge Joe Flores $0.53 per page for copying FMI's documents before the Flores filed suit;
> > (2)   By sending correspondence to another packing agent, H&W, with an attached UCC-1 Financing Statement, notifying H&W that FMI had a secured interest in the Flores' 1998 apple crop based on an outstanding debt, thereby causing other packers to "blackball" the Flores';
> > (3)   By failing to produce documents in discovery that the Fike Defendants later attempted to use at trial and by destroying (or somehow aiding or having knowledge of the destruction of) relevant documents that should have been preserved for discovery.
> (Compl. ¶¶180, 182, 184, 189-192, 196.)

> **a. Applicability of the Anti-SLAP Statute.**
>
> The Anti-SLAP statute has been applied to abuse of process claims where the underlying act arises from the exercise of the right to petition the courts for redress. *See Siam v. Kizilbash*, 130 Cal. App. 4th 1563, 1570 (2005)(reasoning that a cause of action for abuse of process is subject to the Anti-SLAP statute because "it arises from the exercise of the right of petition.").
>
> The important question is whether the underlying act constitutes an exercise of the right of petition and/or invokes the court process. It is not so clear whether the Fike Defendants' initial demand that Plaintiffs pay $0.53 per page to copy DDJ documents was made in connection with the underlying lawsuit. In other words, it is not clear that Plaintiff's conduct invoked any "process" of the court or implicated the Fike Defendants' right to petition the courts. The dispute over copy costs occurred before any lawsuit was filed. Nor is it clear whether a lawsuit was anticipated at that time. The copy charge complaint, if not connected with a lawsuit, cannot constitute "abuse of process." Giving Plaintiffs the benefit of the doubt on this point, even if Fike Defendants' attempt to collect $0.53 per page for copying DDJ documents was made in anticipation of litigation, the Anti-SLAP statute would apply as the attempt to collect copying costs is an incident of the litigation process by which the Fike Defendants sought to defend DDJ before a court of law. Moreover, the Flores, as prevailing parties, could have

sought to recover excessive copying costs through a cost bill or otherwise addressed during the underlying lawsuit.

The Fike Defendants' mailing of the notice of secured interest to H&M is more closely connected to the Fike Defendants' right of petition. Communications made in anticipation of litigation may be protected by both the Anti-SLAP provision and the litigation privilege. *See Briggs v. Eden Council for Hope & Opportunity,* 19 Cal. 4th 1106, 1115 (1999) ("Just as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b)....such statements are equally entitled to the benefits of section 425.16."). The letter to H&M is a communication made in anticipation of litigation. It specifically puts another crop-lender/creditor that FMI/DDJ expects H&W to "honor and recognize the prior secured interest held by [FMI/DDC] in apple crops and proceeds otherwise belonging to Mr. Flores. In the event that [H&W] distributes proceeds without regard to the security interest of [FMI/DDJ] in those proceeds, [FMI/DDJ] <u>will exercise all remedies available to it with respect to such conduct</u>." (See Ex. B to Emerich Decl. (emphasis added)). The mailing of this letter is an act protected by the Anti-SLAP statute, as it is a conventional notice of the claim of a prior security interest in crops, which endeavored to protect the priority of that security interest and put the new lender on notice.

The allegations of discovery misconduct and the related destruction of evidence are also acts that fall within the scope of the Anti-SLAP statute.

Defendants have met their burden of establishing that the Anti-SLAP statute should apply to this cause of action.

**b. Applicability of the Litigation Privilege.**

Defendants assert generally that all of the acts which underlie the abuse of process claim are subject to the litigation privilege. As discussed above, the letter to H&M is a communication sent in anticipation of litigation to protect a claimed security interest, which naturally falls within the coverage of the litigation privilege. The applicability of the privilege to the other alleged acts is not so clear-cut. On the one hand, the attempt to charge the Flores' $0.53 per page for copies is communicative, and arguably conduct: the act of demanding payment for copies. Similarly, the Fike Defendants alleged attempt to use documents at trial that were not produced at discovery and the Fike Defendants alleged involvement in the destruction of evidence is arguably conduct, not communication. However, such matters are inherently part of the discovery process and were redressible under discovery rules and should have been addressed during the underlying litigation.

Arguendo, even if the litigation privilege does not absolutely bar this claim, the conduct is not sufficiently described and not for a purpose the law intends to constitute abuse of process as opposed to alleged discovery abuse.

**c. Merits of the Abuse of Process Claim.**

Even if the litigation privilege does not apply, because the Anti-SLAP statute applies to all of the alleged acts underlying Plaintiff's abuse of process claim, Plaintiffs must establish a possibility of prevailing on an abuse of process claim based upon these facts. In other words, do these factual allegations set forth a prima facie claim of abuse of process. The elements of an abuse of process claim are: (1) "an ulterior motive;" and (2) "a willful act in the use of process not proper in the regular conduct of the proceedings."

The ulterior motive element can be inferred from proof of a willful improper act, *Drum,* 107 Cal. App. 4th, at 1020, so the critical question is whether

Plaintiffs have established a "willful act in the use of process not proper in the regular conduct of the proceedings."

Put another way, to abuse process, a defendant must use court process for a purpose not intended, such as to obtain a collateral advantage. Plaintiffs' allegations are confusing, but it can be inferred from Plaintiffs' submissions that in early 1998, the Flores began to suspect that DDJ was using inappropriate accounting practices to calculate the amount of moneys owed to the Flores' for several years worth of apple crops. The Flores began to demand access to DDJ's accounting records but were never satisfied with the manner and scope of access granted to those documents. The specific allegation of the Complaint is that costs were wrongfully demanded for copying these documents. The Flores believed they were entitled to copies of accounting for their crops, without having to pay for them. They allege that the Fike Defendants and DDJ believed (at least at the time) that defendants were entitled to be reimbursed for the costs of copying the documents. It also appears that the Flores' and the Fike Defendants had numerous disagreements as to the time, manner, and method of access to the accounting documents.

Eventually, the Flores' turned to the Marketing Enforcement Branch of the California Department of Food & Agriculture ("MEB") to assist in resolving the disputes over access to the documents.  Individuals at MEB appear to have corresponded with the Fike Defendants to direct the Fike Defendants' attention to applicable regulations. These regulations required DDJ to afford the Flores' access to documents concerning the marketing of their fruit. This and other correspondence eventually resulted in an agreement that the Fike Defendants and DDJ would provide the Flores with copies of certain files. **Critically, however, nowhere in the complaint is it alleged that it was improper for the Fike Defendants to demand reimbursement for the costs of copying documents for the Flores.** Nor could it be. (It is also worth noting that the Fike Defendants ended up <u>not</u> charging the Flores' $0.53 per page.) Plaintiffs have made no allegation that the demand for copy cost reimbursement was "a willful act in the use of process not proper in the regular conduct of the proceedings." Moreover, the issue could and should have been redressed at the underlying trial.

Even if the notice of secured interest sent to H&W was not a communication protected by the litigation privilege, the mailing of that notice which was a normal step a secured party takes to protect priority of a security interest and was not an abuse of process. Nothing submitted demonstrates that the Fike Defendants lacked probable cause to believe that the Flores' actually owed money to FMI/DDJ pursuant to the promissory note and that a filed financing statement reflecting a security interest in the Flores' crops had been granted and perfected. Sending notice of the second promissory note debt for crop loans along with a warning that FMI/DDJ would take steps to protect its security interest was a commercially reasonable and permissible action, unless Plaintiffs can allege contrary facts.

Although the Fike Defendants acknowledge that there were numerous discovery disputes during the Flores I litigation, nothing in the record indicates that the Fike Defendants engaged in "a willful act in the use of process not proper in the regular conduct of the proceedings." In the hundreds of pages of submissions from the Flores regarding the instant motions, the alleged discovery violations are mentioned only a few times. Specifically, Joe Flores' declaration, at paragraphs 60 and 61, states:

On January 14, 2003, after Fike, on numerous occasions declaring that there were no more documents in their care, custody

1   or control, suddenly by Court Order, manages to find numerous
    documents previously requested which he denied existed.
2   [citations]
         Accordingly, it is well documented and further evidenced
3   that Defendants, David R. Emerich, Esq., and David A. Fike, Esq.,
    knew or should have known they were abusing the process since
4   inception of this matter, which commenced on April 29, 1999
    [citation],and continued on through pre-trial discovery by the
5   spoilation and concealment of evidence...

6        These conclusory allegations are insufficient to establish that the Fike
    Defendants willfully used "process not proper in the regular conduct of the
7   proceedings." At most, they suggest a violation of civil discovery rules. Such a
    violation, on its own, does not constitute an abuse of process. Moreover, there
8   were adequate remedies to enforce the discovery rules in the prior case. It is
    impermissible to sue for prior violations of discovery rules in a subsequent
9   lawsuit. There are any number of legitimate (i.e., not improper) reasons why
    documents initially not disclosed might later be provided in discovery. This is the
10  nature of civil litigation.
         The Fike Defendants' motion to strike the third cause of action is
11  GRANTED.

12  (Feb/21/06 Order at 25-32).

13       For the reasons discussed above, the court finds that claim preclusion bars re-litigation of

14  the abuse of process cause of action for which judgment has been entered.   The abuse of process

15  cause of action against both the Fike Defendants and Defendants concern the alleged destruction

16  of discovery documents, copy costs to review documents, and letters written by the Fike

17  Defendants concerning amounts Plaintiffs allegedly owed.   There is a final judgment on the

18  merits of the abuse of process cause of action.   The court further finds privity between

19  Defendants and the Fike Defendants.

20       In addition, the abuse of process claims cause of action is based almost entirely on the

21  conduct of the DDJ Entities and the DDJ Entities' attorneys, not Defendants.  This alone is

22  grounds to dismiss this claim.

23       Finally, Plaintiffs' basis for the abuse of process cause of action were raised and litigated

24  in Flores I.   To the extent discovery violations occurred, they were resolved by the Magistrate

25  Judge and the undersigned.   To the extent the DDJ Entities' employees' allegedly destroyed

26  evidence, falsified records, and wrongly demanded money, these issues were also presented to

27

28                                        19

1  the jury during Flores I and used by Plaintiffs in Flores I to prove unlawful conduct by the DDJ

2  Entities.   These issues were redressed at the Flores I trial.   Thus, Judge Wanger's earlier orders in

3  this action and the litigation that occurred in Flores I bar Plaintiffs' abuse of process cause of

4  action.   This cause of action will be dismissed without leave to amend.

5

6  **D. CONVERSION**

7       The complaint contains several events by Defendants that Plaintiffs allege show

8  Defendants converted Plaintiffs' assets.   The complaint alleges that on July 25, 2003, the jury in

9  Flores I found that the DDJ Entities had converted property belonging to Plaintiffs.    The

10  complaint alleges that Defendants worked in an agency relationship as fiduciaries of the DDJ

11  Entities.   The complaint alleges that Defendants breached their fiduciary duty to the DDJ

12  Entities by converting assets and property that were being held in trust by the DDJ Entities from

13  the sale of Plaintiffs' fruit.    The complaint alleges that Defendants paid themselves dividends

14  from converted property belonging to Plaintiffs, made investments with Defendant Yosemite,

15  and settled another civil lawsuit brought by T&T.

16       Defendants contend that Plaintiffs have not identified the property belonging to them that

17  could be the subject of a conversion.   Defendants argue that money alone cannot form the basis

18  of a conversion cause of action.

19       "Conversion is the wrongful exercise of dominion over the property of another."  Irving

20  Nelkin & Co. v. South Beverly Hills Wilshire Jewelry & Loan,  129 Cal.App.4th 692, 699

21  (2005).  The elements of a conversion are: (1) the plaintiff's ownership or right to possession of

22  the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or

23  disposition of property rights; and (3) damages.  Oakdale Village Group v. Fong, 43 Cal.App.4th

24  539, 543-44 (1996); Hartford Financial Corp. v. Burns, 96 Cal.App.3d 591, 598 (1979).   Money

25  cannot be the subject of an action for conversion unless a specific sum capable of identification is

26  involved.  Haigler v. Donnelly, 18 Cal.2d 674, 681 (1941); Software Design & Application, Ltd.

27

28                                              20

1    v. Hoefer & Arnett, Inc., 49 Cal.App.4th 472, 485 (1996); Weiss v. Marcus, 51 Cal.App.3d 590,

2    599 (1975).    However, "it is not necessary that each coin or bill be earmarked." Weiss, 51

3    Cal.App.3d at 599.

4         Money can be the basis of a conversion claim when it is held on a plaintiff's behalf by

5    another party as an agent or trustee.   An agent, with knowledge of another's right to receive a

6    specific amount of money, can be liable for conversion when he or she applies the money for his

7    or her own use.  Fischer v. Machado, 50 Cal.App.4th 1069, 1073 (1996).   For example, in

8    Fischer v. Machado, 50 Cal.App.4th 1069 (1996), the defendant accepted money as an agent for

9    the plaintiff.   The California Court of Appeal found that a conversion cause of action was

10   available against the defendant-agent because he allegedly used the funds for its own benefit

11   rather than paying the money to the plaintiff-principal. Id. at 1073-74.  In Weiss v. Marcus, 51

12   Cal.App.3d 590 (1975), the complaint alleged that the defendant attorneys, who had taken over

13   representation of the plaintiff attorney's client, had received settlement money, distributed it to

14   the client, and converted the amount of the plaintiff's lien to their own use.  Id. at 595-96.   The

15   California Court of Appeal found his allegation was sufficient to state a cause of action for

16   conversion.  Id. at 559.  In Watson v. Stockton Morris Plan Co., 34 Cal.App.2d 393 (1939), a

17   savings and loan was held liable for conversion of a bank account where it issued a duplicate

18   passbook and delivered the funds in the plaintiff's account to a third party.   Noting that trover, or

19   conversion, will not ordinarily lie to recover money deposited in a bank, the California Court of

20   Appeal found the tort of conversion available because the "the bank wrongfully exercised

21   dominion and control over not only the genuine pass book, but the account which it represents,

22   and by discounting and cashing the account for a sum less than its real value, to the profit of the

23   company."  Id. at 407.

24   **1. Specific Funds**

25        Here, Plaintiffs have not alleged a specific sum that Plaintiffs were holding for them as a

26   fiduciary.  From the complaint, Plaintiffs' conversion theory appears to be based on the fact that

27

28                                        21

1  the DDJ Entities owed Plaintiffs money pursuant to the judgment in <u>Flores I</u> and Defendants

2  converted money from the DDJ Entities' accounts, by virtue of their position as shareholders and

3  directors of the DDJ Entities, that should have been given to Plaintiffs to pay off the <u>Flores I</u>

4  judgment.    Such a theory is an impermissible theory of conversion based on money.    There is

5  no allegation that the DDJ Entities gave money to Defendants to pay off the <u>Flores I</u> judgment.

6  There is no allegation that Defendants ever acted as Plaintiffs' agent for which they were

7  required to turn over the <u>Flores I</u> judgment.   To the contrary, the complaint's allegations appear

8  to allege that the DDJ Entities were without funds by the time Plaintiffs demanded the <u>Flores I</u>

9  judgment.   Thus, the complaint fails to allege that the DDJ Entities gave money to Defendants to

10 satisfy the <u>Flores I</u> judgment.   Plaintiffs provide no legal support for a conversion theory based

11 on an individuals' conduct that results in a corporation lacking the funds it needs to pay a

12 judgment.   Thus, Plaintiffs' conversion cause of action must be dismissed.

13 **2.   Immediate Right to Possession**

14         The fact most of Defendants' alleged bad acts concerning their disposition of the DDJ

15 Entities' assets appear to have taken place prior to the <u>Flores I</u> judgment is also fatal to Plaintiffs'

16 conversion claim.   The plaintiff's immediate right to possession of the property at the time of

17 conversion is an element to be proven in the conversion case.   <u>Snapp & Associates Ins. Services,</u>

18 <u>Inc. v. Malcolm Bruce Burlingame Robertson</u>, 96 Cal. App. 4th 884, 892 n.2 (2002);  <u>Messerall</u>

19 <u>v. Fulwider</u>, 199 Cal.App.3d 1324, 1329 (1988).   To the extent Defendants' alleged unlawful

20 action is giving  DDJ Entities' assets to Defendant Yosemite ***before*** the judgment in <u>Flores I,</u>

21 Plaintiffs had no immediate right to possess the money at the time Plaintiffs allegedly converted

22 it.  This bars any conversion cause of action.

23 **3.  Defendants' Alleged Personal Conversion Based on Events in <u>Flores I</u>**

24         In their opposition, Plaintiffs appear to allege different facts in support of their conversion

25 cause of action.   Instead of focusing on Defendants' actions in taking money belonging to the

26 DDJ Entities that should have been available to pay the <u>Flores I</u> judgment, the opposition focuses

27

28                                              22

on Defendants' alleged actions from 1995 through 1998, in which they did not pay Plaintiffs

sums Plaintiffs were owed for fruit sales.

The court notes that in <u>Fischer</u> a commission merchant took funds received from the sale

of consigned farm products, put them into a corporate account, and used them to pay operating

expenses and repay loans. <u>Fischer</u>, 50 Cal.App.4th at 1071. When the farmers were not paid and

sued for conversion, the California Court of Appeal concluded that the farmers had a common

law conversion action against the agent "who commingled such proceeds with its general

accounts and then went out of business." <u>Id</u>. Under <u>Fisher</u> and related cases, a merchant's

failure to pay a farmer funds owed can be grounds for conversion. This is exactly the conversion

claim that Plaintiffs succeeded on in <u>Flores I</u>.

Plaintiffs cannot now raise a conversion claim based on the same facts as litigated in

<u>Flores I</u> against Defendants for several reasons. First, any conversion claim against Defendants

based on conduct occurring in 1995 through 1998 is barred by the statute of limitations.

Conversion is subject to a three-year statute of limitations. Cal.Civ.Pro. Code § 338; <u>AmerUS</u>

<u>Life Ins. Co. v. Bank of America, N.A.</u>, 143 Cal.App.4th 631, 639 (2006). Normally, "[t]he

statute of limitations for conversion is triggered by the act of wrongfully taking property."

<u>AmerUS Life Ins.</u>, 143 Cal.Appl.4th at 639; <u>Bono v. Clark</u>, 103 Cal.App.4th 1409, 1433 (2002).

However, when "the defendant in a conversion action fraudulently conceals the relevant facts or .

. . fails to disclose such facts in violation of his or her fiduciary duty to the plaintiff," "the statute

of limitations does not commence to run until the aggrieved party discovers or ought to have

discovered the existence of the cause of action for conversion." <u>AmerUS Life Ins.</u>, at 143

Cal.App.4th at 639 (quoting <u>Strasberg v. Odyssey Group, Inc.</u>, 51 Cal.App.4th 906, 915-16

(1996)). Here, Plaintiffs clearly knew that the DDJ Entities and those employed by the DDJ

Entities had converted their property by at least 1999, when <u>Flores I</u> was filed. Thus, assuming

a conversion cause of action is available against Defendants as employees and agents of the DDJ

Entities for events occurring in 1995 through 1999, it is barred by the statute of limitations.

1    Second, allowing litigation over whether Defendants, acting through the DDJ Entities,

2   converted Plaintiffs' property in 1995 through 1998 would be duplicative of <u>Flores I</u>.   The court

3   has discretion to dismiss a duplicative complaint with prejudice to prevent a plaintiff from

4   "fragmenting a single cause of action and litigating piecemeal the issues which could have been

5   resolved in one action."   <u>Adams v. California Dept. of Health Services</u>, 487 F.3d 684, 688 (9th

6   Cir. 2007) (quoting <u>Flynn v. State Bd. of Chiropractic Exam'rs</u>, 418 F.2d 668, 668 (9th Cir.1969)

7   (per curiam)).    Based on the complaint's allegations, Defendants were employees, agents,

8   directors, and shareholders of the DDJ Entities at the time of the events described in both <u>Flores I</u>

9   and this action, and thus a second action against them based on what they did on behalf of the

10   DDJ Entities is barred.   <u>See</u>, <u>e.g.</u>, <u>Adams</u>, 487 F.3d at 691 (finding employees of corporation in

11   privity when employees submitted evidence in prior action and corporation's liability predicated

12   on action's of employees).   Thus, Plaintiffs' theory of conversion based on Defendants' actions

13   in <u>Flores I</u> are subject to dismissal.

14   **4.   Section 17200 and 17500 Violations**

15    In the opposition, Plaintiffs mention possible violations of California Business and

16   Professions Code §§ 17200 and 17500 within their discussion of why the conversion cause of

17   action should not be dismissed.   Section 17200 defines unfair competition as "any unlawful,

18   unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading

19   advertising and any act prohibited by Chapter 1."   Section 17500 prohibits false or misleading

20   statements by any person, firm, corporation,  association, or any employee thereof.   Nothing in

21   these statutes nor Plaintiffs' opposition brief explains how these two Sections support a cause of

22   action against Defendants for conversion.   In addition, neither of these Sections is mentioned in

23   the complaint or listed as a cause of action.   Thus, the court will spend no further time

24   addressing Plaintiffs' reference to these Sections to support a conversion cause of action.

25   **5. Amendment**

26    The court recognizes that when dismissing a complaint, the Ninth Circuit has stated that

27

28                                                                24

1   "leave to amend should be granted unless the district court determines that the pleading could not

2   possibly be cured by the allegation of other facts." Bly-Magee v. California, 236 F.3d 1014, 1019

3   (9th Cir.2001) (internal quotation marks omitted);   Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir.

4   (9th Cir. 1996).   Here, the court is aware of no facts that could be alleged that would provide

5   Plaintiffs with a conversion cause of action against Defendants based on either Defendants'

6   conduct in 1995 through 1999 or their alleged conduct in dissipating the DDJ Entities' assets.

7   Thus, the conversion cause of action will be dismissed without leave to amend.

8

9   **E.   RICO**

10      Defendants contend that the complaint does not state a claim for a RICO violation.    The

11   Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, creates a

12   civil cause of action for '[a]ny person injured in his business or property by reason of a violation

13   of section 1962.'" Beck v. Prupis, 529 U.S. 494, 495 (2000) (quoting section 1964(c)).   Title 18

14   U.S.C. § 1962(c) provides:

15          It shall be unlawful for any person employed by or associated with any enterprise
            engaged in, or the activities of which affect, interstate or foreign commerce, to
16          conduct or participate, directly or indirectly, in the conduct of such enterprise's
            affairs through a pattern of racketeering activity or collection of unlawful debt.
17
     18 U.S.C. § 1962(c).   To state a claim under 18 U.S.C. § 1962(c), a plaintiff must allege "(1)
18
     conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L.
19
     v. Imrex Co., 473 U.S. 479, 496 (1985); Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir.
20
     2007).
21
     **1. Statute of Limitations**
22
           A civil RICO action is governed by the four-year statute of limitations borrowed from the
23
     Clayton Act. Rotella v. Wood, 528 U.S. 549, 553 (2000); Agency Holding Corp. v. Malley-Duff
24
     & Assocs., Inc., 483 U.S. 143, 156 (1987).   "The limitations period for civil RICO actions
25
     begins to run when a plaintiff knows or should know of the injury which is the basis for the
26
     action.  Thus, Plaintiffs' RICO claims accrued when Plaintiffs had actual or constructive
27

28                                                    25

1  knowledge of [Defendant's] fraud."   Living Designs, Inc. v. E.I. Dupont de Nemours and Co.,

2  431 F.3d 353, 365 (9th Cir .2005).   A plaintiff may be deemed to have constructive knowledge

3  of the injury when it had enough information to warrant an investigation which, if reasonably

4  diligent, would have led to discovery of the injury.   Id. at 365;   Pincay v. Andrews, 238 F.3d

5  1106, 1110 (9th Cir. 2001).   The statute of limitations does not wait to accrue when the plaintiff

6  knew or should have known of the last predicate act, which is part of the same pattern of

7  racketeering activity.   Klehr v. A.O. Smith Corp., 521 U.S. 179, 186-87 (1997).   The "discovery

8  of the injury, not discovery of the other elements of a claim, is what starts the clock." Rotella,

9  528 U.S. at 555.  It is clear that there is no last predicate act rule under which recovery can be

10  had for injuries predating the four year period even if at least one predicate act was committed

11  within it.  Klehr, 521 U.S. at 186-87.

12        The RICO cause of action is divided up into several predicate acts.    For the purposes of

13  the statute of limitations analysis, the court will review the predicate acts based on the time frame

14  in which they were alleged to occur.

15        ***a.   Acts Accruing Between 2001 and 2005***

16        Predicate Act Two alleges mail and wire fraud.   The Second Part of Predicate Act Two

17  concerns Defendant Yosemite's and Defendant Rod Christiansen's use of the United States Mail

18  and wire service to transfer information concerning the capital infusion into Defendant Yosemite.

19  The complaint is unclear as to the exact time frame in which Defendants used the mail and wire

20  to transfer information about Defendant Yosemite.   To the extent such mail and wire transfers

21  occurred within four years from the filing date of this action, these mail and wire frauds are not

22  barred by the statute of limitations.

23        Predicate Act Three alleges interstate and foreign travel to aid in racketeering.   Plaintiffs

24  allege that Defendants used travel in interstate and foreign commerce, including postal services

25  and internet services, to distribute proceeds that Defendants unlawfully converted from Plaintiffs.

26   This claim appears to be premised on Plaintiff's allegations that at some time after 1999,

27

28                                              26

Defendants unlawfully converted the property of DDJ, Inc. and DDJ LLC for their own purposes, including funding Defendant Yosemite.   The complaint is unclear as to the exact time frame of Defendants' travel to aid in racketeering.   To the extent such travel occurred within four years from the filing date of this action, this predicate act is not barred by the statute of limitations.[3]

Predicate Act Four alleges laundering of monetary instruments.   The Second Part of Predicate Act Four alleges that Defendants unlawfully converted the money Plaintiffs were owed from Flores I into Defendant Yosemite.   The complaint is unclear as to the exact time frame of Defendants' alleged laundering of money by converting the money Plaintiffs were owed from Flores I into Defendant Yosemite.   To the extent such laundering occurred within four years from the filing date of this action, it is not barred by the statute of limitations.

Predicate Act Five alleges that Defendants engaged in monetary transactions in property derived from unlawful activity.   Plaintiffs allege that Defendants converted money owed by the DDJ Entities as an investment and capital infusion into Defendant Yosemite to avoid paying Plaintiffs the money owed from Flores I.   As with the other allegations concerning Defendants' actions in taking the money held by DDJ Entities that should have been used to pay the verdict in Flores I, the complaint is unclear as to the exact time frame of Defendants' alleged money transfers.   To the extent such transactions occurred within four years from the filing date of this action, they are not barred by the statute of limitations.

Predicate Act Seven alleges the receipt of income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt.   While the exact basis of this act is unclear, it appears to be based on Yosemite's continued use of money obtained by Defendants' alleged unlawful conduct.   To the extent Plaintiffs are alleging the receipt of income occurred within four year of the filing of this action, these acts are not barred by the statute of limitations.

---

[3]   However, this predicate act is subject to dismissal without leave to amend for the reasons set forth below.

1          *b. Acts Accruing Prior to 2001*

2          Plaintiffs may not recover damages based on some of the predicate acts listed in the

3    complaint because they occurred outside the statute of limitations.   Predicate Act One alleges

4    theft from interstate shipments occurred.   As support for Predicate Act One, Plaintiffs allege that

5    between 1995 and 1999, Defendants were involved in shipping stolen fruits and vegetables.

6    Because this occurred more than four years before this action was filed, damages from this

7    predicate act are prohibited.   Predicate Act Two alleges mail and wire fraud.   The complaint

8    alleges that Defendants in their roles and involvements periodically used the United States Mail

9    and fax machines to send fraudulent information concerning monies owed to Plaintiffs.   These

10   acts occurred between 1995 and 1999, when Defendants allegedly gave Plaintiffs false

11   information, and Plaintiffs not recover damages.   Predicate Act Three alleges interstate foreign

12   travel to aid in racketeering.   As noted above, the complaint is unclear as to when Defendants

13   traveled to aid their racketeering.   Acts prior to 2001 are be barred under the statute of

14   limitations.   Predicate Act Four alleges laundering of monetary instruments.   The First Part of

15   Predicate Act Four alleges that money belonging to Plaintiffs was maliciously converted by the

16   DDJ Entities.   The DDJ Entities' act of converting Plaintiff's property occurred between 1995

17   and 1999, and it is thus barred by the statute of limitations.  Predicate Act Six alleges trafficking

18   in counterfeit goods.   Defendants' alleged acts of misbranding fruit clearly occurred between

19   1995 and 1999.   Thus, damages for this act are barred by the statute of limitations.

20         *c.  Fraudulent Concealment*

21         In their opposition, Plaintiffs contend that the predicate acts occurring outside the statute

22   of limitations are not barred by the four year statute of limitations based on the doctrine of

23   fraudulent concealment.   The Supreme Court has left unsettled the question of whether equitable

24   principles of tolling apply to RICO as they do to other federal statutes of limitation. Rotella, 528

25   U.S. at 560-61.   However, in the Ninth Circuit, the equitable doctrine of fraudulent concealment

26   "is read into every federal statute of limitation."   Thorman v. Am. Seafoods Co., 421 F.3d 1090,

27

28                                                    28

1   1095 n. 4 (9th Cir. 2005) (quoting <u>Holmberg v. Armbrecht</u>, 327 U.S. 392, 397 (1946)).  And, the

2   Ninth Circuit applies the doctrine of fraudulent concealment to RICO claims.  <u>See</u> <u>Pincay</u>,  238

3   F.3d at 1110; <u>Grimmett v. Brown</u>, 75 F.3d 506, 514 (9th Cir. 1996).

4         "The doctrine of fraudulent concealment is invoked only if the plaintiff both pleads and

5   proves that the defendant actively misled her, and that she had neither actual nor constructive

6   knowledge of the facts constituting his cause of action despite her due diligence."   <u>Grimmett v.</u>

7   <u>Brown</u>, 75 F.3d 506, 514 (9th Cir. 1996).   To establish fraudulent concealment, the plaintiff

8   carries the burden of proving that (1) the defendant affirmatively misled the plaintiff as to the

9   operative facts that gave rise to the claim, and (2) the plaintiff had neither actual nor constructive

10  knowledge of these operative facts despite his diligence in trying to uncover them.  <u>Thorman</u>,

11  421 F.3d at 1094.   Merely keeping someone in the dark is not the same as affirmatively

12  misleading the plaintiff.  <u>Id</u>. at 1095-96.  The plaintiff must establish "affirmative conduct upon

13  the part of the defendant which would, under the circumstances of the case, lead a reasonable

14  person to believe that he did not have a claim for relief."  <u>Pincay</u>, 238 F.3d at 1110; <u>Volk v. D.A.</u>

15  <u>Davidson & Co.</u>, 816 F.2d 1406, 1415 (9th Cir. 1987).   A plaintiff who is not reasonably diligent

16  may not assert fraudulent concealment.  <u>Klehr</u>, 521 U.S. at 194.

17        To succeed on Plaintiffs' fraudulent concealment arguments, Plaintiffs would have to

18  show that they did not know about the claims accruing prior to 2001, despite their diligence,

19  because of Defendants' concealment.   Plaintiffs contend that Predicate Act One, theft from

20  interstate shipments, is supported by the jury verdict in their favor on July 25, 2003, finding that

21  DDJ, Inc. and DDJ LLC had converted Plaintiffs' apples for their own use.   Plaintiffs contend

22  that based on the doctrine of fraudulent concealment, these claims did not accrue until the jury

23  returned a verdict in Plaintiff's favor in 2003.   Plaintiffs also appear to allege that the First Part

24  of Predicate Act Two, alleging mail and wire fraud concerning monies owed as part of the fruit

25  packing, the First Part of Predicate Act Four, alleging laundering of monetary instruments by

26  converting the DDJ Entities's funds, and Predicate Act Six,  alleging trafficking in counterfeit

27

28                                          29

goods, were somehow also not known until within the limitations' period.

The complaint does not allege fraudulent concealment.   There simply is no concealment where Plaintiffs knew or should have known about the facts allegedly underlying the claims at issue.   The very conduct at issue in these acts was known by 1999, and in fact, <u>Flores I</u> was based, in part, on this conduct.   The mere fact that Plaintiffs did not know this conduct was also a RICO violation and/or tactically decided not to include a RICO cause of action in <u>Flores I</u> does not meet the standard for fraudulent concealment.   The claims arising between 1995 and 1999, which concern alleged unlawful conduct in packing fruit and incorrect payments to Plaintiffs, were known by Plaintiffs long before the statute of limitations began to run in 2001.   Because these events were clearly known to Plaintiffs earlier, the court finds that Plaintiffs will never be able to obtain damages for these predicate acts based on the doctrine of fraudulent concealment. Accordingly, leave to amend these events will not be granted.   <u>See</u> <u>Bly-Magee</u>, 236 F.3d at 1019 ( "leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts").

The court notes that Plaintiffs appear to argue that Predicate Act Three, alleging interstate and foreign travel prior to 2001, was also not known until within the limitations period.   This Predicate Act is based on Defendants' actions in dissolving the DDJ Entities as part of the pattern or racketeering.   Based on the complaint, any such travel prior 2001 is barred under the statute of limitations.   The complaint does not sufficiently allege fraudulent concealment for this predicate act.   However, unlike the acts concerning fruit packing and payments, the court cannot say that no fraudulent concealment allegation could be made by the addition of other facts.   <u>See</u> <u>Bly-Magee</u>, 236 F.3d at 1019.   While the court would normally give Plaintiffs leave to amend Predicate Act Three to show fraudulent concealment, for the reasons discussed below, the predicate act is subject to dismissal for failing to state a violation of the Travel Act.[4]

---

[4] The use of acts occurring outside the statute of limitations as predicate acts to establish a pattern of racketeering is discussed below in "Section D, 3, a".

**2. Enterprise**

Defendants contend that the complaint fails to make the connection in continuity and relationship between the acts of the Defendants to meet the enterprise element of RICO. Plaintiffs do not respond to Defendants' contentions concerning the complaint's failure to adequately allege an enterprise.   The complaint alleges that the enterprise consists of individuals associated-in-fact and they are not a legal entity.

Title 18 U.S.C. § 1961(4) defines an enterprise as " any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."   "As is evident from the text, this definition is not very demanding.   A single 'individual' is an enterprise under RICO.   Similarly, a single 'partnership,' a single 'corporation,' a single 'association,' and a single 'other legal entity' can all enterprises."   <u>Odom</u>,  486 F.3d at 548.   To allege the last category, an associated-in-fact enterprise, the plaintiff must allege three elements.   First, the plaintiff must allege that the defendants associated for "a common purpose of engaging in a course of conduct."   <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981);  <u>Odom</u>,  486 F.3d at 552.   Second, the plaintiff must allege an "ongoing organization," either "formal or informal."   <u>Turkette</u>, 452 U.S. at 583;  <u>Odom</u>, 486 F.3d at 552.    An ongoing organization is a vehicle for the commission of two or more predicate crimes.  <u>Odom</u>,  486 F.3d at 552.    Third, the plaintiff must allege facts that, if proved, provide sufficient "evidence that the various associates function as a continuing unit."   <u>Turkette</u>, 452 U.S. at 583;  <u>Odom</u>,  486 F.3d at 552.   While every member need not be involved in each of the underlying acts of racketeering, the continuity requirement requires the associates behavior to be ongoing  rather than isolated activity.   <u>Odom</u>,  486 F.3d at 552.  An associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise.   <u>Id</u>. at 551.

***a.  Common Purpose***

To find Plaintiffs have alleged an associated-in-fact enterprise, the court must first

1   determine whether Plaintiffs have sufficiently alleged that Defendants associated for "a common

2   purpose of engaging in a course of conduct."   According to the complaint, Defendants had the

3   common purpose of defrauding Plaintiffs and converting Plaintiffs' property for a capital

4   infusion into Defendant Yosemite.   Defendants furthered this common purpose by creating sham

5   corporations to perpetrate fraud, breach contracts, and convert property and assets for their own

6   selfish gain.   Under the standard set forth in Odom, these allegations are adequate to allege that

7   Defendants had a common purpose of creating sham companies that were used to convert

8   Plaintiff's property through fraudulent means.

9       **_b.  Ongoing Organization_**

10      As set forth in Odom, a Plaintiff must show an "ongoing organization is a vehicle for the

11  commission of two or more predicate crimes." Odom, 486 F.3d at 552.   According to Plaintiffs,

12  Defendants worked over many years to use sham corporations to defraud and convert assets for

13  the benefit of Defendant Yosemite and Defendants.   Whether the complaint sufficiently alleges

14  two or more predicate crimes is discussed below.   However, for the purposes of the enterprise

15  requirement, the complaint sufficiently alleges an ongoing organization.

16      **_c. Continuing Unit_**

17      Finally, Plaintiffs must allege facts that, if proved, provide sufficient "evidence that the

18  various associates function as a continuing unit."   Turkette, 452 U.S. at 583.   Here, Plaintiffs

19  have alleged that Defendants acts were ongoing and not an isolated activity.   Defendants'

20  alleged actions to defraud Plaintiffs and convert Plaintiffs' money allegedly happened over many

21  years and Defendants not only committed fraud and conversion when packing Plaintiffs' fruit,

22  Defendants allegedly continued to commit fraud and converted Plaintiffs' assets when they

23  dissolved corporations owning money to Plaintiffs and made litigation decisions that left these

24  corporations without funds.   The complaint alleges Defendants' RICO conduct began in 1995

25  and continued until June 2003.   This seven-year time span is adequate to establish that

26  Defendants functioned as a continuing unit.

27

28                                      32

1    Thus, the complaint's allegations allege an enterprise.

2    **3. Racketeering Activity**

3    Defendants next contend that the complaint fails to allege racketeering activity.   RICO

4    violations under § 1962(c) require a "pattern of racketeering activity." 28 U.S.C. § 1962(c).   The

5    RICO statute defines a "pattern of racketeering activity" to be "at least two acts of racketeering

6    activity, one of which occurred within ten years (excluding any period of imprisonment) after the

7    commission of a prior act of racketeering activity." 18 U .S.C. § 1961(5).   Title 18 U.S.C. §

8    1961(1) defines what acts will be considered acts of "racketeering activity."

9    ***a.  Predicate Act One – Theft of Interstate and Foreign Shipments in Violation of 18***

10    ***U.S.C. § 659***

11    Theft of interstate shipments in violation of 18 U.S.C. § 659 can serve as a predicate act

12    of racketeering.   See 18 U.S.C. § 1961(1). Title 18 U.S.C. § 659 prohibits embezzlement,

13    stealing, and unlawfully taking, carrying away, or concealment, with intent to convert to his or

14    her own use, any goods or chattels moving as or which are a part of or which constitute an

15    interstate or foreign shipment of freight, express, or other property.   As support for this predicate

16    act, Plaintiffs allege that between 1995 and 1999, Defendants were involved in shipping stolen

17    fruits and vegetables.   Plaintiffs contend that this predicate act is supported by the jury verdict

18    in their favor on July 25, 2003, finding that DDJ, Inc. and DDJ LLC converted Plaintiffs' fruit

19    for their own use.

20    *i.  Statute of Limitations*

21    Defendants contend that this predicate act is barred by the statute of limitations.

22    Defendants provide no authority that an act falling within the ten year pattern of racketeering but

23    not within the statute of limitations cannot serve as a predicate act.   Such an argument is not

24    supported by the rule that the statute of limitations looks to the discovery of injury, not the date

25    of the predicate acts.   See Rotella, 528 U.S. at 555; Klehr, 521 U.S. at 186-87.   As discussed

26    above, this act is barred by the statute of limitations and Plaintiffs may not seek damages from

27

28    33

1   this Predicate Act nor may they contend that this act serves as an accrual date for the statute of

2   limitations.   However, Plaintiffs may still use this act to show a pattern of racketeering.   Absent

3   authority to the contrary, the court finds that the fact a predicate act did not occur within four

4   years from the accrual date does not bar the use of the act as a predicate act to show a pattern of

5   racketeering because a pattern the racketeering requires two or more predicate acts within ten

6   years, not four years.

7           *ii.  Failure to State a Claim for Theft of Shipments*

8           Regardless of Defendants' statute of limitations argument, Defendants next contention for

9   dismissal is persuasive.   The basis of Predicate Act One is the jury's verdict in Flores I, which

10  found that DDJ, Inc. and DDJ LLC converted apples.   However, DDJ, Inc. and DDJ LLC are

11  neither Defendants to this action nor alleged members of the enterprise.   The complaint fails to

12  link the Defendants in this action to the jury's findings that DDJ, Inc. and DDJ LLC converted

13  Plaintiffs' property.   The court's finding in Flores I that the named Defendants in this action are

14  not DDJ, Inc.'s and DDJ LLC's alter egos in Flores I precludes Plaintiffs from being able to

15  allege these Defendants stole the property at issue in this predicate act based on the complaint's

16  allegations.   Thus, this predicate act will be dismissed.

17          The court recognizes that in the complaint, Plaintiffs allege that Defendants are the agents

18  for the DDJ Entities.   As such, it is possible that Plaintiffs could allege that Defendants, as the

19  agents for DDJ Entities, committed the thefts at issue in Flores I.   While such a claim may state

20  a predicate act, the court finds that claim preclusion bars such a predicate act because it could

21  have been raised in Flores I.   The complaint alleges that the theft claim is identical to the

22  conversion claim in Flores I, the complaint alleges there is a final judgment in Flores I, and the

23  complaint alleges that there was privity between the DDJ Entities and Defendants.   Thus, this

24  predicate act is barred by claim preclusion.   See Western Radio Services Co., Inc. v. Glickman,

25  123 F.3d 1189, 1192 (9th Cir.1997).

26          Even if claim preclusion does not bar such a cause of action, the court finds, in its

27

28                                              34

discretion, such a claim is duplicative of Flores I.   The conversion claim in Flores I and the theft

predicate act against Defendants share a common transactional nucleus of facts.   In addition,

Plaintiffs themselves allege privity between the Flores I defendants and Defendants.   See, e.g.,

Adams, 487 F.3d at 691 (finding employees of corporation in privity when employees submitted

evidence in prior action and corporation's liability predicated on action's of employees); Irwin,

370 F.3d at 930-31 (finding senior corporate officer virtually represented by his corporation).

Thus, assuming a theft predicate act is available based on a theory that Defendants acted as the

DDJ Entities' agents when committing the thefts at issue in Flores I, the court finds such a

predicate act is barred because it should have been raised in Flores I.   Accordingly, the court will

not give leave to amend Predicate Act One.

### b. Predicate Act Two -- Mail Fraud and Wire Fraud

Defendants contend that the complaint does not allege a predicate act of mail or wire

fraud.   Mail fraud in violation of 18 U.S.C. § 1341 can serve as a predicate act.   See 18 U.S.C.

§ 1961(1).   Section 1341 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud,
> or for obtaining money or property by means of false or fraudulent pretenses,
> representations, or promises, or to sell, dispose of, loan, exchange, alter, give
> away, distribute, supply, or furnish or procure for unlawful use any counterfeit or
> spurious coin, obligation, security, or other article, or anything represented to be
> or intimated or held out to be such counterfeit or spurious article, for the purpose
> of executing such scheme or artifice or attempting so to do, places in any post
> office or authorized depository for mail matter, any matter or thing whatever to be
> sent or delivered by the Postal Service, or deposits or causes to be deposited any
> matter or thing whatever to be sent or delivered by any private or commercial
> interstate carrier, or takes or receives therefrom, any such matter or thing, or
> knowingly causes to be delivered by mail or such carrier according to the direction
> thereon, or at the place at which it is directed to be delivered by the person to
> whom it is addressed, any such matter or thing . . . .

18 U.S.C. § 1341.   Wire fraud may also serve as a predicate act.   See 18 U.S.C. § 1961(1).  Title

18 U.S.C. § 1343 reads, in part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud,
> or for obtaining money or property by means of false or fraudulent pretenses,
> representations, or promises, transmits or causes to be transmitted by means of
> wire, radio, or television communication in interstate or foreign commerce, any

writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, . . . .

The complaint alleges that Defendants, in their roles and involvements, periodically used the United States Mail or fax machines to send accounting information, including checks, downward price adjustments, billing invoices, bills of lading, growers statements, growers history reports, interest rates, interest rates charged, pack-out reports, re-pack reports, and other information to packers, Plaintiffs, and other members of the public.  The complaint alleges that these accountings are regulated and Defendants failed to include information required by law. Specifically, the complaint alleges that Defendants would prepare fraudulent weekly statements and checks and place them in the mail and/or fax them to Plaintiffs,  Defendants would then confirm the fraudulent statements and checks over the phone when Plaintiffs questioned the amount, and Defendants would later fax documents containing false information as part of the discovery in <u>Flores</u> I.   The complaint also alleges that Defendant Yosemite and Defendant Christiansen used the United States Mail and wire service to transfer information concerning the capital infusion into Defendant Yosemite.

### i.  Statute of Limitations

Defendants contend that other than the mail and wire uses involving Defendant Yosemite, these acts are barred by the statute of limitations.   As discussed above, the statute of limitations looks to the discovery of the injury, not the date of predicate acts.  An act may serve as a predicate act if it falls within ten years of another predicate act even if the act does not fall within the statute of limitations.   While the alleged wire and mail frauds occurring between 1995 and 1999 may serve as predicate acts, Plaintiffs may not seek damages from these alleged predicate acts because any cause of action based on these acts did not accrue within the limitations period. Plaintiffs may only use these acts to show a pattern of racketeering.

To the extent Plaintiffs can allege in any amended complaint that Defendant Yosemite's and Defendant Rod Christiansen's use of the United States Mail and wire service to transfer

information concerning the capital infusion into Defendant Yosemite occurred within the statute

of limitations, damages for these actions are not barred by the statute of limitations.

### ii.  Failure to State a Claim for Mail or Wire Fraud

Defendants contend that complaint fails to meet Rule 9(b) of the Federal Rule of Civil

Procedure's requirement that allegations of fraudulent mail and wire transfers must be alleged

with particularity.   "[A] wire fraud violation consists of (1) the formation of a scheme or artifice

to defraud; (2) use of the United States wires or causing a use of the United States wires in

furtherance of the scheme; and (3) specific intent to deceive or defraud."  Odom v. Microsoft

Corp., 486 F.3d 541, 554 (9th Cir. 2007);  Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806

F.2d 1393, 1400 (9th Cir.1986).   A mail fraud violation requires the plaintiff to show that "(1) the

defendants formed a scheme or artifice to defraud; (2) the defendants used the United States

mails or caused a use of the United States mails in furtherance of the scheme; and (3) the

defendants did so with the specific intent to deceive or defraud."  Miller v. Yokohama Tire

Corp., 358 F.3d 616, 620 (9th Cir. 2004); Schreiber, 806 F.2d at 1400.  Portions of the elements

of mail fraud and wire fraud must be alleged with particularity as required by Rule 9 of the

Federal Rules of Civil Procedure.

> To the degree that the first requirement--the formation of a scheme or artifice to
> defraud--requires a showing of the defendants' state of mind, general rather than
> particularized allegations are sufficient. Similarly, the third requirement--specific
> intent to deceive or defraud--requires only a showing of the defendants' state of
> mind, for which general allegations are sufficient. The only aspects of wire fraud
> that require particularized allegations are the factual circumstances of the fraud
> itself.

Odom, 486 F.3d at 554.

Rule 9(b) of the Federal Rules of Civil Procedure requires that fraud be pled with

particularity.  It provides: "In all averments of fraud . . . , the circumstances constituting fraud . . .

shall be stated with particularity.   Malice, intent, knowledge, and other condition of mind of a

person may be averred generally."  Fed.R.Civ.Pro. 9(b).   "Rule 9(b) requires the identification of

the circumstances constituting fraud so that the defendant can prepare an adequate answer from

the allegations." <u>Odom</u>, 486 F.3d at 553, 555.  "The pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."  <u>Odom</u>, 486 F.3d at 553-54;  <u>Schreiber Distrib</u>, 806 F.2d at 1401.  "While the factual circumstances of the fraud itself must be alleged with particularity, the state of mind--or scienter--of the defendants may be alleged generally." <u>Odom</u>, 486 F.3d at 553-54; <u>In re GlenFed, Inc. Sec. Litig.</u>, 42 F.3d 1541, 1547 (9th Cir.1994) (en banc).

The complaint's allegations concerning Defendants' use of the United States Mail and wire service to transfer information concerning the accountings and capital infusion into Defendant Yosemite are not specific enough to meet Rule 9's standards.   The complaint does not allege the time or place of the alleged fraudulent communications.   The complaint does not allege the content of the false representations.   The complaint does not allege to whom the misrepresentations were made.     Finally, the complaint does not allege the identities of the parties to the misrepresentation.  It is unclear if only Defendant Christensen made the false representations or if other Defendants also made misrepresentations.    Thus, the mail and wire fraud predicate act must be dismissed.    Because it may be possible to cure this defect of Rule 9, this predicate act will be dismissed with leave to amend.

### c.  Predicate Act Three – Interstate and Foreign Travel To Aid a Racketeering Enterprise

The complaint alleges that Defendants traveled to aid in their racketeering enterprise. Title 18 U.S.C. §1952(a), also known as the Travel Act, prohibits a person from traveling in interstate or foreign commerce or using the mail in interstate or foreign commerce, with intent to:

(1) distribute the proceeds of any unlawful activity; or
(2) commit any crime of violence to further any unlawful activity; or
(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performing or attempting to perform an act described in paragraphs (1), (2) or (3). 18 U.S.C.A. § 1952(a).   In order to prove a violation of 18 U.S.C. § 1952, the plaintiff must

38

show that the defendant: (1) traveled in interstate commerce with the intent to promote an

unlawful activity, and (2) committed an overt act in furtherance of that activity.  See United

States v. Stafford, 831 F.2d 1479, 1482 (9th Cir. 1987).   The Travel Act requires only proof of a

subsequent overt act in furtherance of the unlawful activity, and it does not require proof that the

defendants performed or attempted to perform the activity they were planning at the time of the

travel.  See United States v. Winslow, 962 F.2d 845, 852 (9th Cir.1992).   The purpose of Section

1952 is to deny individuals who act for a criminal purpose access to the channels of commerce.

Erlenbaugh v. United States, 409 U.S. 239, 246 (1972); United States v. Stafford, 831 F.2d 1479,

1484 (9th Cir. 1987).

        As to Predicate Act Three, the complaint alleges that Defendants traveled in interstate and

foreign commerce and used the postal services and internet serves to distribute the proceeds that

were unlawfully converted by Defendants from the DDJ Entities.    The complaint alleges that

the funds obtained from the DDJ Entities and used as a capital infusion into Defendant Yosemite

have now "gone global with the product Defendant Yosemite is presently marketing."

        The Travel Act requires an "unlawful activity".   The "unlawful activity" required for a

Travel Act violation may be based upon a violation of certain state laws.  "Unlawful activity" is

defined as:

> (1) any business enterprise involving gambling, liquor on which the Federal
> excise tax has not been paid, narcotics or controlled substances . . . . or
> prostitution offenses in violation of the laws of the State in which they are
> committed or of the United States, (2) extortion, bribery, or arson in violation of
> the laws of the State in which committed or of the United States, or (3) any act
> which is indictable under subchapter II of chapter 53 of title 31, United States
> Code, or under section 1956 or 1957 of this title . . . .

18 U.S.C.A. § 1952(b)(ii).     The court has reviewed the complaint's allegations and concludes

that Plaintiffs' Travel Act violation is premised on some un-named Defendants traveling with the

intent to convert amounts the DDJ Entities owed Plaintiffs.   The complaint alleges the travel

being done was to convert assets, as alleged in the second cause of action.   In other words, the

"unlawful activity" at issue in the alleged Section 1952 predicate act is Defendants' conversion.

The second cause of action for conversion alleges a violation of California tort law.  California tort laws dealing with conversion are not considered an "unlawful activity" within the meaning of Section 1952.   Thus, the complaint fails to state a predicate act for a violation of the Travel Act.

In addition, even assuming conversion could serve as the basis for the "unlawful activity" Defendants traveled to distribute, the complaint does not allege a viable conversion cause of action.   If the alleged unlawful activity turns out not to be a violation of state law, there is no violation of the Travel Act.   See United States v. Brown, 505 F.2d 261 (4th Cir. 1974).  For example, in Brown, the defendant was charged with traveling in interstate commerce and using interstate facilities with the intent to carry on an unlawful activity; The unlawful activity being giving and receiving bribes in violation of West Virginia law.  Id. at 262 .  When the West Virginia Supreme Court held that there had not been a violation of its law because the person allegedly bribed was not subject to accepting a bribe under the West Virginia law at issue, the Fourth Circuit found that the defendant's conviction for violating Section 1952 could not stand. Here, the court has concluded that the complaint fails to allege any Defendant committed a conversion of Plaintiffs' money.   As such, it is impossible for Plaintiffs to allege a violation of Section 1952 because there is no sustainable allegation of an "unlawful activity", conversion. Thus, to the extent Plaintiff's Section 1952 predicate act is based on conversion, Plaintiffs have failed to state a claim.

Because the tort of conversion cannot serve as the "unlawful activity," allowing Plaintiffs the opportunity to amend would be futile.   In addition, the court has concluded that Plaintiffs would be unable to state a claim for conversion even if leave to amend were given.  Thus, leave to amend Predicate Act Three will not be granted.[5]

---

[5]   To the extent Plaintiffs believe Defendants committed another "unlawful activity" as defined by Section 1952(b), Plaintiff may request leave to file an amended complaint containing such a claim, along with a showing that such activity can serve as the basis for a Travel Act violation.

1    ***d.  Predicate Act Four – Laundering of Monetary Instruments in Violation of 18***

2    ***U.S.C. § 1956(a)(1)***

3    Title18 U.S.C. § 1956(a)(1) prohibits a defendant, knowing that property involved in a

4    financial transaction represents the proceeds of some form of unlawful activity, to conduct or

5    attempt to conduct financial transactions which in fact involve the proceeds of specified unlawful

6    activity, with the intent to promote the carrying on of the specified unlawful activity.   To show

7    money laundering under 18 U.S.C. § 1956(a)(1), the plaintiff must prove that the defendant: (1)

8    engaged in a financial transaction which involved proceeds from specified illegal activity; (2)

9    knew the proceeds were from illegal activity; and (3) intended the transaction either to promote

10   the illegal activity or to conceal the nature, source, or ownership of the illegal proceeds.  United

11   States v. Marbella, 73 F.3d 1508, 1514 (9th Cir. 1996).

12   The complaint alleges that the Defendants converted money, as alleged in the second

13   cause of action, and Defendants invested the money into Defendant Yosemite, which constitutes

14   a specific unlawful activity.   The complaint states that additional specified unlawful activities

15   include robbery, theft from interstate shipments, mail fraud, wire fraud, racketeering, laundering

16   of investments, monetary transactions of property, and trafficking in counterfeit goods.

17   *i.  Conversion*

18   A Section 1956 violation requires proceeds from some "unlawful activity."   As used in

19   Section 1956, "the term 'knowing that the property involved in a financial transaction represents

20   the proceeds of some form of unlawful activity' means that the person knew the property

21   involved in the transaction represented proceeds from some form, though not necessarily which

22   form, of activity that constitutes a felony under State, Federal, or foreign law, regardless of

23   whether or not such activity is" a specified illegal activities.  18 U.S.C. § 1956(c)(1).   There are

24   no allegations that the conversion alleged in the complaint is a felony under state or federal law.

25   In addition, the ***tort*** of conversion is clearly not a crime, but a tort.   Thus, the complaint fails to

26   state a Section 1956(a) Predicate Act because the proceeds involved in a Section 1956 violation

27

28                                              41

1  cannot be based on the tort of conversion.

2      The term "specified unlawful activity" in Section 1956(a)(1) also has a specific

3  definition.   Defendants contend that the tort of conversion under state law is not listed as a

4  "specified unlawful activity."   Defendants are correct that the tort of conversion is not a specified

5  unlawful activity.   See 18 U.S.C. § 1956(c)(7).   Thus, the allegations alleged in the second

6  cause of action for conversion cannot form the "specific unlawful activity" necessary for a

7  Section 1956(a)(1) violation.

8      *ii.   Use of Other Predicate Acts*

9      The "specified unlawful activity" at issue in a Section 1956(a) violation can be activities

10  constituting an offense listed in 18 U.S.C. § 1961(1).   See 18 U.S.C. § 1956(c)(7)(A).   From the

11  complaint, it appears that Plaintiffs are alleging that the other Predicate Acts alleged in the

12  complaint are also a "specified unlawful activity" for the purposes of a Section 1956(a) violation.

13   Section 1956(a)(1) essentially provides a separate predicate act for engaging in financial

14  transactions with the intent to promote or conceal other racketeering acts.   As such, the

15  complaint states a "specific unlawful activity" necessary for a Section 1956(a)(1) violation to the

16  extent it states another predicate act as alleged in Section 1961(1).[6]

17      As discussed in this memorandum opinion and order, the complaint fails to state another

18  predicate act as listed in Section 1961(1).   As discussed above, the complaint fails to state a

19  predicate act for theft.   As discussed above, the complaint fails to state a predicate act for mail

20  and wire fraud.   As discussed above, the complaint fails to state a predicate act for a violation of

21  the Travel Act.   As discussed below, the complaint fails to state a predicate act for unlawful

22  monetary transactions.   As discussed below, the complaint fails to state a predicate act for

23  counterfeiting.   Because the complaint fails to adequately allege a predicate act listed in Section

24  1961(1), Predicate Act Four for money laundering also fails because the complaint fails to allege

25

26

27      [6]  In addition, the defendant must have known that the property involved an activity that constitutes a felony under State, Federal, or foreign law.   See 18 U.S.C. § 1956(c)(1).

28                               42

1   the "specified unlawful activity" necessary for a money laundering predicate act.

2       *iii.   Robbery*

3       The court notes that the complaint alleges a robbery within its allegations concerning

4   Section 1956(a) money laundering.   Section 1961(1)(A) lists specific crimes that can constitute

5   predicate acts of racketeering.   Under Section 1956(c)(1), this list can also serve as the

6   "specified unlawful activity" necessary to show Section 1956(a) money laundering.   One of the

7   specific crimes listed in Section 1961(a)(A) is any act or threat involving robbery which is

8   chargeable under State law and punishable by imprisonment for more than one year.   Robbery

9   chargeable under state law for punishment by imprisonment for more than one year could also

10  constitute a felony, as to meet the "knowing that the property involved in a financial transaction

11  represents the proceeds of some form of unlawful activity" requirement.   Thus, the crime of

12  robbery can be the basis of a money laundering violation.

13      The complaint does not discuss this alleged robbery within Predicate Act Four, within

14  another alleged predicate act, or elsewhere in the complaint.   The complaint simply does not

15  plead enough facts to allege the felony of robbery for the court to find Plaintiffs could prove a

16  robbery that is plausible on its face.  See  Twombly, 127 S.Ct. at 1974.   The court recognizes

17  that the complaint attempts to allege a conversion and generally discusses Defendants' taking

18  Plaintiffs' money.   However, while the complaint does not need to contain detailed factual

19  allegations, merely alleging that all Defendants committed a robbery as defined in Section

20  1961(1)(A) is not enough to raise Plaintiffs' right to relief above the speculative level.  See

21  Twombly, 127 S.Ct. at 1964-65.   Thus, the court finds that the complaint fails allege a robbery,

22  and as such, the complaint fails to allege a "specified unlawful activity" necessary for a money

23  laundering predicate act.

24      *iv.   Leave to Amend*

25      The court will dismiss this predicate act with leave to amend within certain parameters.

26  Because the time frame within which these alleged financial transactions occurred is unclear, this

27

28                                          43

predicate act will be dismissed with leave to amend to provide additional details about when the financial transactions took place.   In addition, Plaintiffs are given leave to include additional allegations about an alleged robbery that Defendants attempted to promote or conceal through financial transactions.   Finally, if the amended complaint states another viable predicate act, for which Plaintiffs' have been given leave to amend, Plaintiffs may also amend their Section 1957(a) predicate act to include this Section 1961(1) act as a "specified unlawful activity".

**e.   _Predicate Act Five – Monetary Transactions in Violation of Section 1957_**

Title 18 U.S.C. § 1957(a) prohibits knowingly engaging or attempting to engage in a monetary transaction in criminally derived property of a value greater than $10,000 that is derived from specified unlawful activity.   For a Section 1957(a) violation, the term "specified unlawful activity" has the meaning given that term in Section 1956(a) discussed above.   See 18 U.S.C. § 1957(f)(3).

Plaintiffs' allegations concerning the alleged Section 1957(a) predicate act are essentially identical to the allegations just discussed concerning the alleged Section 1956(a) predicate act of money laundering.   Because both sections define "specified unlawful activity" the same, this alleged predicate act will suffer the same fate as the Section 1956(a) predicate act.

The court will dismiss this predicate act with leave to amend within certain parameters. Because the time frame within which the alleged financial transactions occurred is unclear, this predicate act will be dismissed with leave to amend to provide additional details about when the financial transactions took place.   In addition, if the amended complaint states another viable predicate act, for which Plaintiffs' have been given leave to amend, Plaintiffs may also amend their Section 1957(a) monetary transaction predicate act to include this act as a "specified unlawful activity."   Finally, Plaintiffs are given leave to include additional allegations that Defendants engaging or attempting to engage in a monetary transaction in criminally derived property of a value greater than $10,000 that is derived from a robbery.

1        *f.  Predicate Act Six – Trafficking in Counterfeit Goods*

2        The complaint alleges that witnesses during the <u>Flores I</u> trial testified that they

3  misbranded or otherwise altered marks to falsely identify the contents of a container.

4  Specifically, the complaint allege that Defendants changed the marks on containers showing the

5  size and grade of the inclosed fruit after it had been inspected by U.S.D.A. Inspectors.   The

6  complaint alleges the marks put on the shipping containers were interposed and carried over to

7  billing statements submitted to buyers.   The complaint alleges that this conduct violated 18

8  U.S.C. § 2320 and 21 U.S.C. § 331(a)(b)(c)(k).

9        *i.  Counterfeiting*

10        Title 18 U.S.C. § 2320 prohibits trafficking or attempting to traffic "in goods or services

11  and knowingly uses a counterfeit mark on or in connection with such goods or services . . .

12  knowing that a counterfeit mark has been applied thereto, the use of which is likely to cause

13  confusion, to cause mistake, or to deceive"  18 U.S.C. § 2320(a).   Trafficking in goods or

14  services bearing counterfeit marks can serve as a predicate act of racketeering.   <u>See</u> 18 U.S.C. §

15  1961(1).

16        Defendants contend that the complaint's allegations fails to state a counterfeiting

17  violation.[7]   Defendants argue that the complaint's allegations only allege that Defendants placed

18  the wrong marks on containers, not that the Defendants used a "counterfeit mark" as required to

19  prove counterfeiting.   As used in Section 2320, the term "counterfeit mark" is given a specific

20  definition.   "Counterfeit mark" means a spurious mark that is used in connection with trafficking

21  in any goods "that is identical with, or substantially indistinguishable from, a mark registered on

22  the principal register in the United States Patent and Trademark Office and in use, whether or not

23  the defendant knew such mark was so registered."   18 U.S.C.A. § 2320(e)(1)(A).   Here, the

24

25        [7]   Defendants also contend this predicate act occurred outside the statute of limitations.

26  As discussed above, the fact an act occurred outside the statute of limitations only bars Plaintiffs'
from obtaining damages for this act, but does not bar the use of the act to show a pattern of

27  racketeering.

complaint does not allege that Defendants used a mark that was identical or substantially

indistinguishable from a grading mark.   Rather, the complaint alleges that Defendants used

legitimate grading marks.   The complaint merely alleges that Defendants used the wrong mark

on containers and/or changed the correct mark to the wrong mark to indicate a higher grade.

Falsely identifying the contents of a container does not constitute counterfeiting as defined in

Section 2320.   Plaintiffs offer no argument or authority to the contrary.   Thus, the complaint

fails to allege a predicate act of counterfeiting.   Given that the facts alleged do not constitute

counterfeiting, allowing Plaintiffs leave to amend the complaint to add additional facts would be

futile.

ii.   _Violations of the Federal Food, Drug, and Cosmetic Act_

Predicate Act Six also states that the facts show a violation of 21 U.S.C. §

331(a)(b)(c)(k).   Title 21 U.S.C. § 331 lists prohibited acts under the Federal Food, Drug, and

Cosmetic Act.   Section 331(a) prohibits the "introduction or delivery for introduction into

interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded."

Section 331(b) prohibits the "adulteration or misbranding of any food, drug, device, or cosmetic

in interstate commerce."   Section 331(c) prohibits the "receipt in interstate commerce of any

food, drug, device, or cosmetic that is adulterated or misbranded, and the delivery or proffered

delivery thereof for pay or otherwise.   Section 331(k) prohibits the "alteration, mutilation,

destruction, obliteration, or removal of the whole or any part of the labeling of, or the doing of

any other act with respect to, a food . . . if such act is done while such article is held for sale

(whether or not the first sale) after shipment in interstate commerce and results in such article

being adulterated or misbranded."

The complaint's allegations appear to allege violations of 21 U.S.C. § 331.   Defendant's

alleged acts in misbranding or changing marks to falsely identify the contents of a container

appear to be violations of 21 U.S.C. § 331.   However, such allegations have no relevance to

Plaintiffs' RICO cause of action.   As discussed above, RICO requires a pattern of racketeering

1   activities.   See 18 U.S.C. § 1962(c); Odom, 486 F.3d at 547.    Not all unlawful conduct is a

2   racketeering activity, and 18 U.S.C. § 1961(1) defines what acts will constitute racketeering

3   activity.    Performing the prohibited conduct listed in 21 U.S.C. § 331 is not a predicate activity.

4    The legality of Defendants' alleged misbranding and falsely identifying the contents of

5   containers notwithstanding, this conduct is simply not a predicate act of racketeering.   Thus, the

6   complaint's alleged violations of 21 U.S.C. § 331 do not state a predicate act, and as such, do not

7   show a pattern of racketeering.   Given the complaint already states a violation of 21 U.S.C. §

8   331, allowing Plaintiffs leave to amend the complaint to add additional facts would be futile.   No

9   additional facts will add violations of 21 U.S.C. § 331 to the list of predicate activities.

10      **g.   *Predicate Act Seven – Violations of 18 U.S.C. § 1962(a) and 18 U.S.C. § 1962(b)***

11      The complaint lists as Predicate Act Seven violations of 18 U.S.C. § 1962(a) and 18

12   U.S.C. § 1962(b).   Violations of these sections are not listed as predicate activities in Section

13   1961(1), and thus violations of these sections cannot serve as predicate acts of racketeering.

14      The RICO statute, found at 18 U.S.C. § 1962, lists several types of unlawful activities,

15   which are set forth in subsections (a), (b), (c), and (d).   18 U.S.C. § 1962(a) prohibits investing

16   income derived from a pattern of racketeering in an "enterprise."   Section 1962(b) prohibits

17   acquiring or maintaining an interest in an enterprise by means of a pattern of racketeering

18   activity.   Section 1962(c) prohibits conducting the affairs of an enterprise through a pattern of

19   racketeering activity.     As alleged in the complaint and discussed by all parties, Plaintiffs are

20   proceeding on a Section 1962(c) RICO cause of action.    If Plaintiffs desire to proceed on a

21   Section  1962(a) cause of action or a Section 1962(b) cause of action, Plaintiffs must plead

22   separate RICO causes of action.    These sections offer separate theories of liability and are not

23   predicate acts of racketeering to support a Section 1962(c) cause of action.

24      Because it may be possible for Plaintiffs to allege a Section 1962(a) cause of action or a

25   Section 1962(b) cause of action, Plaintiffs will be given leave to amend to add allegations

26   concerning these sections.    However, Plaintiffs are forewarned that they may not use

27

28                                              47

racketeering activities found barred by this order as to Plaintiffs' Section 1962(c) RICO cause of action to support an alleged Section 1962(a) cause of action or a Section 1962(b) cause of action. Although the court will allow Plaintiffs leave to amend to an allege a Section 1962(a) cause of action and/or a Section 1962(b) cause of action, Plaintiffs are advised that any amended complaint that includes such causes of action must be based upon a well-founded belief that a cognizable or arguable legal theory exists that would support such a cause of action. See Fed. R. Civ. P. 11.

**F. NEGLIGENCE – BREACH OF THE DUTY OF CARE**

The complaint alleges that the shareholder/members of the DDJ Entities breached their duty of care by aiding and abetting in tortuous conduct against Plaintiffs in this action. The complaint alleges that Defendants knew or should have known that their actions would injure Plaintiffs, and negligently failed to take or order appropriate actions to avoid harming Plaintiffs. The complaint alleges that the shareholder/members of the DDJ Entities participated in all the referenced torts alleged in the complaint, thereby the shareholder/members intentionally breached their fiduciary duty to the DDJ Entities, and in so doing, breached their duty of care to Plaintiffs as a third party. The complaint alleges that Defendants were safeguarding assets and proceeds for Plaintiffs, and as such, owed a duty to Plaintiffs that a normal prudent person would carry out. Specifically, the complaint alleges that between August 1999 and September 23, 2003, Defendants paid themselves dividends and proceeds in an amount that exceeds Plaintiffs' judgment in Flores I. The complaint also alleges that Defendants breached their duty by availing themselves to the proceeds and Plaintiffs have not been able to collect those proceeds and assets that were in Defendants' control since 1995.

In their motion to dismiss, Defendants contend that this negligence cause of action is based on the jury verdict in Flores I. Defendants claim that they are unable to decipher what duty that they owed to Plaintiffs that they allegedly breached. Defendants argue that because

1   the complaint fails to allege a duty, this negligence cause of action must be dismissed.

2       In the opposition, Plaintiffs contend that Defendants, as owners, shareholders, members,

3   directors and agents of the DDJ Entities, knowingly participated in all the torts referenced in the

4   complaint.   Plaintiffs then go on to discuss the licensing structure of the DDJ Entities and the

5   Perishable Agricultural Commodities Act ("PACA").   Plaintiff argue that Defendants were

6   safeguarding assets and proceeds for Plaintiffs.   Plaintiffs also discuss the rule holding that

7   corporate officers and directors cannot escape liability for their own wrongdoing by contending

8   they were acting on behalf of the corporation.

9   **1.  Legal Standards for Negligence**

10      In California, the elements of a negligence cause of action are the existence of a legal

11  duty of care, breach of that duty, and the breach as the proximate cause of the resulting injury.

12  Ladd v. County of San Mateo, 12 Cal.4th 913, 917-18  (1996); Mendoza v. City of Los Angeles,

13  66 Cal.App.4th 1333, 1339 (1998).   At issue in the pending motion to dismiss is whether

14  Defendants owed Plaintiffs any duty.

15      As correctly discussed by Plaintiffs in their opposition, directors and officers of a

16  corporation are liable for torts committed by them on the corporation's behalf.  Frances T. v.

17  Village Green Owners Assn., 42 Cal.3d 490, 503-04 (1986);  United States Liab. Ins. Co. v.

18  Haidinger-Hayes, Inc., 1 Cal.3d 586, 595 (1970); PMC, Inc. v. Kadisha, 78 Cal.App.4th 1368,

19  1382 (2000); O'Connell v. Union Drilling & Petroleum Co., 121 Cal.App. 302, 308-09 (1932).

20  For example, in PMC, Inc. v. Kadisha, 78 Cal.App.4th 1368 (2000), the California Court of

21  Appeal found that directors, officers, and principal shareholders could be held liable for

22  misappropriation of trade secrets and other corporate misconduct if they knew or had reason to

23  know that employees, who once worked for a competitor, were using stolen confidential

24  information and processes.  Id. at 1385.   In  Michaelis v. Benavides, 61 Cal.App.4th 681 (1998),

25  the California Court of Appeal held that a corporate president who personally participated in and

26  directed the construction of the plaintiffs' patio and driveway, which was alleged to be

27

28                                                        49

structurally inadequate, could be held personally liable because he breached his duty to the plaintiffs, and not just his duty to the corporation.    In <u>Granoff v. Yackle</u>, 196 Cal.App.2d 253 (1961), a corporate officer who misappropriated funds for the corporation's benefit was held personally liable. <u>Id.</u> at 256-57.   In <u>McClory v. Dodge</u>, 117 Cal.App. 148 (1931), directors who, through reasonable diligence and care could have known that they did not own stock acquired under exchange agreement, were held personally liable for value along with the corporation. <u>Id</u>. at 153, *disapproved on other grounds in* <u>Mary Pickford Co. v. Bayly Bros.</u>, 12 Cal.2d 501, 522 (1939).  Plaintiffs' correctly cite to <u>Granoff v. Yackle</u>, 196 Cal.App.2d 253 (1961), which holds:

> It is well settled by the great weight of authority in this country that the officers of a corporation are personally liable to one whose property has been converted by them to the uses of the corporation, although they derived no personal benefit therefrom and acted merely as agents of the corporation. The underlying reason for this rule is that an officer should not be permitted to escape the consequences of his individual wrongdoing by saying that he acted on behalf of a corporation in which he was interested.

<u>Granoff</u>, 196 Cal.App.2d at 257 (internal quotes and citations omitted).

Plaintiffs' legal discussion is sound and, under the principle of agency, directors are liable along with corporations for torts.   The problem with Plaintiffs' position is ***not*** the law they cite. Rather, the problem is that the complaint is unclear on exactly what conduct Defendants did as the agents of the DDJ Entities that constituted a tort on Plaintiffs.

**2.  Defendants' Actions as the DDJ Entities' Agents for Events Litigated in <u>Flores I</u>**

From the opposition, it appears Plaintiffs contend that Defendants, as directors and agents of the DDJ Entities, were the ones that actually committed the torts against Plaintiffs that were litigated in <u>Flores I</u> and found true by the jury.   Plaintiffs allege that Defendants failed to pay them sums owed going all the way back to 1995.   Thus, it appears that Defendants' liability is based on the torts committed by the DDJ Entities because Defendants were the DDJ Entities' agents and the persons who committed the <u>Flores I</u> torts on the DDJ Entities' behalf.

Presuming that Defendants' liability is based on the DDJ Entities' negligence, this 2005 case is not the place to contend that Defendants should be liable to Plaintiffs, along with the DDJ

1   Entities, for the torts the DDJ Entities committed.   Plaintiffs cannot now obtain damages against

2   Defendants for their actions on the DDJ Entities' behalf that were litigated and resolved in <u>Flores</u>

3   <u>I</u>.   To the extent the jury in <u>Flores I</u> found that the DDJ Entities committed torts against

4   Plaintiffs, and to the extent various Defendants committed these torts while serving as the DDJ

5   Entities' agents, Plaintiffs may have alleged a viable theory of liability as to these Defendants.

6   The problem is the time to have raised these contentions was during <u>Flores I</u>.   Plaintiffs' claims

7   that Defendants, on DDJ Entities' behalf, failed to turn over money that belonged to Plaintiffs

8   from their fruit was litigated in <u>Flores I</u>.   While <u>Flores I</u> only sought to impose liability on the

9   DDJ Entities, <u>Flores I</u> could have alleged torts committed by Defendants under the theory that

10  Defendants are liable for torts, along with the DDJ Entities, based on their positions as the DDJ

11  Entities' agents.   Because this negligence / tort theory based on Defendants' unlawful conduct

12  could have been raised in <u>Flores I</u> the court declines to allow a duplicative action on such a

13  theory now.   <u>See</u> <u>Adams</u>, 487 F.3d at 692.   In addition, negligence / torts based on Defendants'

14  conduct between 1995 and 1999 are barred by the statute of limitations.

15  **3.  Negligence Occurring After 1999 and Not Litigated in <u>Flores I</u>**

16          While the opposition seems to imply the complaint's negligence claim is based on

17  Defendants' actions as agents for the DDJ Entities, for which the DDJ Entities were held liable in

18  <u>Flores I</u>, the court does recognize that the complaint itself contains a factual basis for negligence

19  apart from improper payments between 1995 and 1999.   The complaint also alleges that

20  Defendants, at times after 1999, unlawfully took the DDJ Entities' assets for their own purposes,

21  including funding Defendant Yosemite.   While it is unclear exactly when this conduct occurred,

22  it appears to have occurred after 1999, and thus this conduct would not be duplicative of <u>Flores I</u>.

23          As to this factual contention, Plaintiffs have not alleged what duty Defendants owed to

24  Plaintiffs.   The law concerning an agent's liability for actions done on behalf of a corporation is

25  of no assistance because Plaintiffs have not shown that the DDJ Entities were negligent toward

26  Plaintiffs by allowing their funds to be depleted.   Plaintiffs have not shown what duty of care

27

28                                                    51

1   the DDJ Entities or any agent of the DDJ Entities owed to them after 1999.    Making Plaintiffs'

2   argument for them, it appears that Plaintiffs believe that the DDJ Entities, and thus any agent of

3   the DDJ Entities, owed them a duty to ensure that the DDJ Entities had enough money to pay off

4   the judgment in Flores I.    However, Plaintiffs have cited no statute or case authority supporting

5   such a theory.    It is not this court's obligation to search statutes and case law to determine if such

6   a duty is owed to plaintiffs in a lawsuit.     Thus, the court finds that the complaint fails to state a

7   cause of action for negligence.

8          While it is doubtful Plaintiffs will be able to allege a duty to preserve the DDJ Entities'

9   funds that was owed by the DDJ Entities and/or Defendants, the court will dismiss Plaintiffs'

10  negligence claim with leave to amend.    However, such a negligence claim may only concern

11  Defendants failure to preserve the funds DDJ Entities should have had to pay the Flores I

12  judgment, and this claim may not include negligence or other duties imposed by the packing

13  relationship litigated in Flores I.    Plaintiffs are advised that any amended complaint that

14  includes a negligence cause of action must be based upon a well-founded belief that a cognizable

15  or arguable legal theory exists that would support a finding that Defendants owed a duty to

16  Plaintiffs to preserve the DDJ Entities' assets.  See Fed. R. Civ. P. 11.

17

18  **G.  CIVIL CONSPIRACY**

19         Defendants contend that the fifth cause of action for civil conspiracy fails to state a claim.

20  The complaint's specific allegations concerning conspiracy are minimal.   The complaint  alleges

21  that Defendants conspired amongst themselves by aiding and abetting to commit the wrongful

22  acts as alleged in the complaint.    The complaint also alleges that Defendants were the

23  fiduciaries of the DDJ Entities.   In the motion to dismiss, Defendants contend that even if

24  Plaintiffs have alleged Defendants were the DDJ Entities' fiduciaries, the complaint still fails to

25  allege an agreement by Defendants to perform a wrongful act with knowledge that the act was

26  wrongful.

27

28                                                 52

**1.   Separate Cause of Action for Conspiracy**

The complaint's fifth cause of action alleges civil conspiracy as a free standing cause of action.   However, under California law, civil conspiracy is not a separate and distinct cause of action.  Entm't Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211, 1228 (9th Cir. 1997).   "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.  Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal.4th 503, 510-11 (1994).   There is no civil action for conspiracy to commit a recognized tort unless the wrongful act itself is committed and damages result.  Mehrtash v. Mehrtash, 93 Cal.App.4th 75, 82 (2001).   Through participation in the conspiracy, each coconspirator "effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy."  Applied Equipment Corp., 7 Cal.4th at 511.   Standing alone, "a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of the actual tort."  Id.  Because conspiracy is not an independent tort, "it allows tort recovery only against a party who already owes a duty and is not immune from liability based on applicable substantive tort law principles."  Id.   Thus, based on the applicable law, the complaint fails to state a cause of action for conspiracy because no independent cause of action for conspiracy exists.

**2.  Conspiracy to Commit Other Torts**

From the complaint, it is possible that Plaintiffs' conspiracy theory is that there was a conspiracy to commit the other torts alleged in the complaint, including malicious prosecution, abuse of process, conversion, and negligence.   However, as noted above, Plaintiffs' malicious prosecution, abuse of process, conversion, and negligence causes of action all fail to state a claim. In the absence of allegations showing malicious prosecution, abuse of process, conversion, and negligence, the complaint fails to allege a conspiracy to commit these torts.

**3.   Allegations Concerning Elements**

The complaint also fails to allege the elements of conspiracy.    Liability for civil conspiracy generally requires three elements: (1) formation of the conspiracy (an agreement to commit wrongful acts); (2) operation of the conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of the conspiracy.   Applied Equipment Corp., 7 Cal.4th at 511.   The major significance of a civil conspiracy "lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity." Doctors' Co. v. Superior Court, 49 Cal.3d 39, 44 (1989).   The complaint does not allege any agreement between Defendants to perform a wrongful act or knowledge that the act was wrong. Thus, the conspiracy cause of action is subject to dismissal.

In the opposition, Plaintiffs clarify the basis of their conspiracy claim.   Plaintiffs contend that Defendants, as the owners of the DDJ Entities, had unbridled control over the DDJ Entities. Plaintiffs then allege that the DDJ Entities were found by a jury to have maliciously, oppressively, or fraudulently converted Plaintiffs' property.   The court takes the opposition's allegations to mean that Plaintiffs believe there was a conspiracy between Defendants to use the DDJ Entities to fraudulently convert Plaintiffs' property.   The references to the jury's finding in Flores I, the use of this verdict as an exhibit, and Plaintiffs' legal discussion about directors' liability for their participation in a corporation's tortuous conduct lead the court to conclude that the basis of the conspiracy is Defendants' actions, on behalf of the DDJ Entities, between 1995 and 1999, to convert Plaintiffs' fruit.   A conspiracy cause of action based on a conspiracy between Defendants, and also possibly the DDJ Entities, to fraudulently convert Plaintiffs' property as it pertains to the DDJ Entities not paying Plaintiffs all money owed, as found by the jury in Flores I, is not available in this action for two reasons.

First, a conspiracy claim based on the Defendants' alleged conspiracy to fraudulently convert Plaintiffs' property is barred by the statute of limitations.   "Whether or not a cause of

54

action for conspiracy is timely must be determined by reference to the statute of limitations applicable to the underlying cause of action."   Filmservice Laboratories, Inc. v. Harvey Bernhard Enterprises, Inc., 208 Cal.App.3d 1297, 1309 (1989).   A three-year statute of limitations applies to fraud claims.  Cal. Civ. Pro. Code § 338(d)   A three-year statute of limitations also applies to conversion claims.  Cal. Civ. Proc. § 338(c);  Bono v. Clark, 103 Cal.App.4th 1409, 1432 (2002). Thus, any conversion claim based on acts occurring prior to March 1, 2002, is barred by the statute of limitations.   Because Plaintiffs imply their conspiracy claim is based on the same fraud and conversion that resulted in the Flores I verdict, the three year statute of limitations bars Plaintiffs' conspiracy claim.

Second, such a conspiracy claim is duplicative of Flores I.  A cause of action alleging that Defendants conspired with each other, and possibly the DDJ Entities, could have been raised in Flores I.   The court declines to allow a duplicative action on a theory that could have been, but was not, raised in Flores I.  See Adams, 487 F.3d at 692.[8]

**4.  Leave to Amend**

The conspiracy cause of action is subject to dismissal.   The court declines to give leave to amend the conspiracy claim.   Further factual allegations would not resolve the duplicative nature of the conspiracy claim and not resolve the statute of limitation problems discussed above.

---

[8]  In the opposition to the conspiracy claim, Plaintiffs mention violations of California Business and Professions Code §§ 17200 and 17500.   Section 17200 defines unfair competition as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1."   Section 17500 prohibits false or misleading statements by any person, firm, corporation,  association, or any employee thereof.   It appears Plaintiffs cite these sections as a basis to show Defendants are liable for the actions of the DDJ Entities.   Not only is there no cause of action based on California Business and Professions Code §§ 17200 and 17500 in the complaint, these Sections do not explain how Defendants can be liable now for the Flores I verdict based on their alleged control over the DDJ Entities at the time the DDJ Entities violated Plaintiffs' rights.   These Sections offer no basis for a conspiracy claim and no explanation for how a conspiracy claim based on the DDJ Entities' actions is not barred by the statute of limitations.   Thus, they will not be discussed further.

1    **H.  CONSTRUCTIVE TRUST**

2         The complaint alleges that the causes of action in the complaint give rise to a constructive

3    trust that arises by operation of law as a response to Defendants' wrongful actions.   The

4    complaint alleges that Defendants breached their duty to Plaintiffs by converting Plaintiffs'

5    property and used said conversion of property, for among other things, purchasing ownership

6    shares of Defendant Yosemite, paying off on a compromise settlement with T&T on September

7    23, 2003, and paying illegal dividends to the DDJ Entities' shareholders and members.

8    Defendants contend that the complaint does not allege a constructive trust because the complaint

9    fails to trace specific funds currently in Defendants' possession to Plaintiffs' apple proceeds.

10         Preliminarily, the court notes that a constructive trust is not a cause of action but rather an

11   equitable remedy.  Stansfield v. Starkey, 220 Cal.App.3d 59, 76 (1990); 13 Witkin, CAL.

12   PROCEDURE, TRUSTS, §319 (2005).   Thus, to the extent Plaintiffs seek to maintain an

13   independent cause of action for a constructive trust, no such cause of action is available.

14   Accordingly, the sixth cause of action for a constructive trust is subject to dismissal.   However, a

15   constructive trust can be a remedy.   As such, the court will consider whether the complaint

16   validly alleges a constructive trust as a remedy.

17         Constructive trusts are generally covered by statute.   California Civil Code § 2224

18   provides:

19              One who gains a thing by fraud, accident, mistake, undue influence, the violation
                of a trust, or other wrongful act, is, unless he or she has some other and better
20              right thereto, an involuntary trustee of the thing gained, for the benefit of the
                person who would otherwise have had it.
21

22   Cal.Civ.Code § 2224.   The imposition of a constructive trust requires:  (1) the existence of res

23   (property or some interest in property); (2) the right of the complaining party to that res; and (3)

24   some wrongful acquisition or detention of the res by another party who is not entitled to it.

25   Cassirer v. Kingdom of Spain,  461 F.Supp.2d 1157, 1178 (C.D.Cal. 2006); Campbell v.

26   Superior Court, 132 Cal.App.4th 904, 920 (2005);  Communist Party v. 522 Valencia, Inc., 35

27

28                                          56

Cal.App.4th 980, 990 (1995).

> A constructive trust is an involuntary equitable trust created by operation of law as a remedy to compel the transfer of property from the person wrongfully holding it to the rightful owner. [Citations.] The essence of the theory of constructive trust is to prevent unjust enrichment and to prevent a person from taking advantage of his or her own wrongdoing.

Communist Party, 35 Cal.App.4th at 990.

A constructive trust is imposed where there is a wrongful acquisition of property.   The complaint alleges that Defendants' wrongful acquisition was done when Defendants breached their duty to Plaintiffs and converted Plaintiffs' property.   As explained above, the complaint fails to state a cause of action for either negligence or conversion.    Thus, the complaint also fails to allege an entitlement to a constructive trust because the complaint fails to allege a wrongful act requiring a constructive trust.

Regardless, Defendants correctly argue that there is nothing on which to impose a constructive trust.   A constructive trust requires "money or property identified as belonging in good conscience to the plaintiff [which can] clearly be traced to particular funds or property in the defendant's possession." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134, 1150 (2003) (quoting Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213 (2002)).  A constructive trust is available where the specific res or funds can be identified and attached, "but not where the plaintiff seeks to impose general personal liability as a remedy for the defendant's monetary obligations."   Honolulu Joint Apprenticeship and Training Committee of United Ass'n Local Union No. 675 v. Foster, 332 F.3d 1234, 1238 (9th Cir. 2003).

The complaint does not allege that Defendants took and continue to hold certain property or money belonging to Plaintiffs.   Rather, the complaint alleges that Defendants took money in the DDJ Entities' possession, which belonged to Plaintiffs, and purchased ownership shares in Defendant Yosemite, paid off a compromise settlement with T&T, and paid illegal dividends. Other than the alleged illegal dividends, the complaint's clear allegations are that the money at issue is no longer in Defendants' possession.   The complaint fails to trace funds or property in

Defendants' possession to property or money belonging to Plaintiffs.   The complaint fails to

allege that the money paid as illegal dividends or property purchased with Plaintiffs' money is

still in Defendants' possession.   Thus, the complaint fails to allege that particular funds in

Defendants' current possession can be traced to money belonging to Plaintiffs.

Where the property sought to be recovered, or its proceeds, have been dissipated so that

no product remains, the plaintiff cannot enforce a constructive trust and the plaintiff's claim is

that of a general creditor.  Great-West Life & Annuity Ins. Co., 534 U.S  at 213-14.   To obtain a

constructive trust, "the action generally must seek not to impose personal liability on the

defendant, but to restore to the plaintiff particular funds or property in the defendant's

possession."  Id. at 214.   Here, Plaintiffs seek to obtain money Plaintiffs contend they were

deprived of by Defendants' unlawful actions.   Such an allegation may, if based on cognizable

causes of action, allow for monetary damages.   This allegation, however, does not provide for a

constructive trust over particular funds in Defendants' current possession.   Thus, to the extent

the complaint requests a constructive trust as a remedy, this remedy is not available based on the

complaint's allegations.   Accordingly, the request for a constructive trust must be dismissed.

### ORDER

Accordingly, based on the above memorandum opinion and order, the court ORDERS

that:

A.   The causes of action and allegations against the Fike Defendants, found on pages

11 through 15 of the complaint, are HEREBY STRICKEN.

B.   Defendants' motion to dismiss is GRANTED.

C.   The complaint is DISMISSED WITHOUT LEAVE TO AMEND EXCEPT as

allowed for by this order as follows.

    D.      Plaintiffs are GRANTED LEAVE to file an amended complaint that contains:

            1.      An 18 U.S.C. § 1962(c) RICO Cause of Action based on:

                        a.      The Predicate Act of mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343.

                        b.      The Predicate Act of money laundering  in violation of 18 U.S.C. § 1956(a)(1) if such amended complaint contains the time frame within which the alleged financial transactions occurred, additional facts supporting a robbery, and additional facts supporting mail and wire fraud.

                        c.      The Predicate Act of monetary transactions in violation of 18 U.S.C. § 1957(a) if such amended complaint contains the time frame within which the alleged financial transactions occurred, additional facts supporting a robbery, and additional facts supporting mail and wire fraud.

            2.      An 18 U.S.C. § 1962(a) RICO cause of action and/or a Section 1962(b) RICO cause of action so long as the allegations for these new RICO causes of action do not include theories found barred by the court in this order.

            3.      A negligence cause of action based on Defendants' failure to preserve the funds the DDJ Entities should have had available to pay the <u>Flores I</u> judgment.

            4.      Allegations requesting a constructive trust.

//

E.    The following causes of action are DISMISSED WITHOUT LEAVE TO
      AMEND:

    1.    Malicious Prosecution.

    2.    Malicious Use of Process.

    3.    Conversion.

    4.    The Portions of the 18 U.S.C. § 1962(c) RICO Cause of Action based on:

        a.    The Predicate Act of theft in violation of 18 U.S.C. § 659.

        b.    The Predicate Act of interstate travel to aid a racketeering
            enterprise in violation of 18 U.S.C.A. § 1952.

        c.    The Predicate Act of trafficking in counterfeiting in violation of 18
            U.S.C. § 2320.

        d.    The Predicate Act of a violation of the Federal Food, Drug, and
            Cosmetic Act as prohibited by 21 U.S.C. § 331(a)(b)(c)(k).

    5.    The Portions of the RICO Cause of Action that seek damages for acts
      occurring prior to 2001.[9]

    6.    Any negligence cause of action based on a theory or duty other than
      Defendants' failure to preserve the funds the DDJ Entities should have had
      available to pay the Flores I judgment.

    7.    Any cause of action resting on a conspiracy theory of liability.

F.    Plaintiffs shall file any amended complaint within thirty days of this order's date
      of service.

G.    Plaintiffs are FOREWARNED that failure to file an amended complaint within

---

[9] Earlier conduct that serves as a predicate act to establish a pattern of racketeering, for which Plaintiffs do not seek damages, may be included.

thirty days that complies with the confines of this order will result in sanctions, including dismissal of this action.

IT IS SO ORDERED.

**Dated:**   **June 17, 2008**                              /s/ Anthony W. Ishii
                              UNITED STATES CHIEF DISTRICT JUDGE