# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE FLORES, an individual, and<br>CONNIE FLORES, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>EMERICH & FIKE, a professional<br>corporation, et al.,<br>Defendants. | 1: 05 - CV - 0291 AWI DLB<br><br>ORDER GRANTING MOTION TO<br>DISMISS AND DISMISSING THIRD<br>AMENDED COMPLAINT WITHOUT<br>LEAVE TO AMEND AND WITH<br>PREJUDICE<br><br>(Documents #370 & #384) |

## BACKGROUND

On July 21, 2008, Plaintiff Joe Flores and Plaintiff Connie Flores ("Plaintiffs") filed a third amended complaint ("complaint") in this action. The complaint contains five causes of action: (1) Civil violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") in violation of 18 U.S.C. § 1962(c) based on Defendants' alleged mail fraud and wire fraud concerning amounts owed to Plaintiffs; (2) Civil RICO in violation of 18 U.S.C. § 1962(a) & (b) based on Defendants' capital infusion into Defendant Yosemite technologies, Inc. ("Yosemite"); (3) Laundering of Monetary Instruments in violation of 18 U.S.C. § 1957; (4) Negligence - Breach of Duty to Preserve DDJ, Inc. and DDJ LLC ("DDJ Entities")'s Funds; and (5) Constructive Trust.

On August 7, 2008, Defendants Dennis Hagobian, Victoria Hagobian, Dennis Hagobian Residence Trust, Victoria Hagobian Residence Trust, Rod Christensen, and Yosemite

Technologies Inc. ("Hagobian Defendants") filed a motion to dismiss the complaint. Defendant Rod Christensen specially appeared in the motion to dismiss. On August 8, 2008, Defendant Russell Davidson joined the motion to dismiss filed by Hagobian Defendants. On August 13, 2009, Defendants Sandy L. Vartan, Judith Yeramian, the Judith Mary Yeramian Family Trust, and the Lee Yeramian Exempt QTIP Trust ("Yeramian Defendants") joined the motion to dismiss. Defendants contend that Plaintiffs' have not alleged a pattern of racketeering activity sufficient to support a claim under 18 U.S.C. § 1962(c). Defendants contend that Plaintiffs have not alleged a sufficient pattern of criminal activity or the necessary investment of control to support their claim for a violation of 18 U.S.C. §§ 1962(a) & (b). Defendants contend Plaintiffs' negligence theory fails because they had no duty to safeguard DDJ Entities's assets for Plaintiffs' benefit. Hagobian Defendants contend that Plaintiffs' request for a trust pursuant to the Perishable Agricultural Commodities Act (PACA) should be dismissed because this issue has been addressed numerous times.

On September 19, 2008, Plaintiff Joe Flores filed an opposition to the motion to dismiss. On September 19, 2008, Plaintiff Connie Flores joined in the opposition of Plaintiff Joe Flores. Plaintiffs contend that they have alleged sufficient facts concerning the mail and wire frauds about the amounts Plaintiffs were allegedly due to show a pattern of racketeering activity. Plaintiffs contend that the fraudulent communications between Dennis Hagobian and Rod Christiansen, which resulted in the capital infusion of over one million dollars from DDJ Entities' proceeds, are sufficient to state a pattern of racketeering activity through collection of an unlawful debt for the purpose of investing in Defendant Yosemite. Finally, Plaintiffs admit that this court has previously found no PACA trust is available.

On September 19, 2008, Hagobian Defendants filed a reply brief.

//
//

# LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted". Fed.R.Civ.Pro. 12(b)(6). A Rule 12(b)(6) dismissal can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984). In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976); Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003).

For a complaint to avoid dismissal pursuant to Rule 12(b)(6) the complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007); Weber v. Department of Veterans Affairs, 512 F.3d 1178, 1181 (9th Cir. 2008). However, the complaint's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 127 S.Ct. at 1964-65. Federal Rule of Civil Procedure 8(a)(2) requires a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of entitlement to relief. Id. at 1965 n. 3. Thus, a Rule 12(b)(6) motion to dismiss should be granted when a plaintiff fails to nudge his or her claims "across the line from conceivable to plausible." Id. at 1974.

# ALLEGED FACTS

The complaint alleges that Plaintiffs owned and operated an apple farm. Plaintiffs sued DDJ Entities in a case entitled Flores v. DDJ, Inc., et al., 1:99-CV-5878 AWI DLB ("Flores I"). On July 25, 2003, the jury returned a special verdict in Plaintiffs' favor for over $750,000.00.

The complaint alleges that Defendants Dennis Hagobian, Victoria Hagobian, Dennis Vartan, Judith Yeramian, Russell Davidson, William Davidson, Michael Hedberg, and W.D. Farming, LLC are the owners, shareholders, directors, and members of DDJ Entities. The complaint alleges that Defendant Rod Christensen is the co-founder and chief technology officer of Defendant Yosemite. The complaint alleges that these Defendants conspired with Defendant Rod Christiansen to actively participate in the pattern of unlawful activities alleged in the complaint. The complaint alleges that Defendant Dennis Hagobian and Dennis Vartan, shortly after the sale of all assets and property belonging to DDJ entities, were fired by DDJ Entities as consultants to find investments for DDJ Entities. The complaint alleges that Defendant Dennis Hagobian and Dennis Vartan, with the blessing of the remaining shareholders and members, found it worthy to invest a capital infusion into Defendant Yosemite by converting proceeds that rightfully belonged to Plaintiffs and other creditors. The complaint alleges that shortly after the conversion of proceeds that belonged to Plaintiffs into Defendant Yosemite, Defendant Dennis Hagobian became the president, chief executive officer, and chief operating officer of Defendant Yosemite.

The complaint alleges that after the judgment was filed in <u>Flores I</u> on March 10, 2004, Plaintiffs made attempts to collect said judgment to no avail. The complaint alleges that shortly after, Plaintiffs learned that DDJ Entities had transferred some of its assets as a capital infusion into Defendant Yosemite, which ultimately dictated Defendant Dennis Hagobian's position as president and chief financial officer of Defendant Yosemite.

The complaint alleges that Defendants participated in a racketeering enterprise as defined in 18 U.S.C. § 1961 by forming a group of individuals associated in fact to create schemes to defraud the public, specifically Plaintiffs.

The complaint alleges that the racketeering enterprise advanced Defendants' wrongful acts and unlawful activities by transferring DDJ Entities' property and using said property for a capital infusion into Defendant Yosemite. The complaint alleges that this transferred property

was income that had been derived directly or indirectly from a closed end pattern of criminal acts.

## DISCUSSION

**A. RICO Violation of 18 U.S.C. § 1962(c)**

The first cause of action alleges a civil RICO in violation of 18 U.S.C. § 1962(c) based on Defendants' alleged mail fraud and wire fraud concerning amounts owed to Plaintiffs. Defendants contend that the complaint does not contain sufficient facts to state a claim for a RICO violation. RICO, 18 U.S.C. §§ 1961-1968, creates a civil cause of action for "'[a]ny person injured in his business or property by reason of a violation of section 1962.'" Beck v. Prupis, 529 U.S. 494, 495 (2000) (quoting section 1964(c)). Title 18 U.S.C. § 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). To state a claim under 18 U.S.C. § 1962(c) a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985); Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir. 2007) (en banc), *cert. denied*, – U.S. –, 128 S.Ct. 464 (2007).

Defendants contend that the complaint fails to allege the predicate acts that are needed to create a pattern of racketeering activity. RICO violations under § 1962(c) require a "pattern of racketeering activity." 28 U.S.C. § 1962(c). Title 18 U.S.C. § 1961(1) defines what acts will be considered acts of "racketeering activity." Defendants contend the complaint fails to allege mail and wire fraud as required by Rule 9 of the Federal Rules of Civil Procedure.

A review of the complaint indicates that Defendants' alleged racketeering acts for the first cause of action are mail fraud and wire fraud. A mail fraud in violation of 18 U.S.C. § 1341 can serve as a predicate act. See 18 U.S.C. § 1961(1). Section 1341 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing . . . .

18 U.S.C. § 1341. Wire fraud may also serve as a predicate act. See 18 U.S.C. § 1961(1).

Title 18 U.S.C. § 1343 reads, in part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, . . . .

"[A] wire fraud violation consists of (1) the formation of a scheme or artifice to defraud; (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." Odom v. Microsoft Corp., 486 F.3d 541, 554 (9th Cir. 2007); Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1400 (9th Cir.1986). A mail fraud violation requires the plaintiff to show that "(1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." Miller v. Yokohama Tire Corp., 358 F.3d 616, 620 (9th Cir. 2004); Schreiber, 806 F.2d at 1400.

The complaint alleges that Defendants used the United States mail to distribute inaccurate accounting information to Plaintiffs and other members of the public and the contents of this accounting information did not contain information required by law. The complaint alleges

1  Defendants would prepare fraudulent accounting information that was mailed or faxed between
2  September 1995 and when discovery closed in Flores I action on June 1, 2003.    If Plaintiffs
3  questioned these documents, Defendants would use the telephone to again perpetrate the fraud.
4  The complaint alleges that Defendants also used the United States Mail, fax and telephones as
5  part of their scheme to defraud Plaintiffs during discovery and the trial in Flores I.  The
6  inaccurate accounting records included:   (1) altered pack-out reports; (2) insufficient documents
7  to support downward price adjustments; (3) altered billing invoices; (4) altered bills of lading; (5)
8  altered growers history reports; (6) omitted material facts regarding money collected and due; (7)
9  false information regarding liens to Hemphill & Wilson Enterprise, Inc,. (H&W); (8) omitted
10 accounts of sales as prescribed by relevant Food & Agricultural Codes; and (9) represented that
11 Plaintiffs' apples and/or oranges were sold for a higher price than those reported and mailed.

12      Hagobian Defendants contend that complaint fails to meet Rule 9(b) of the Federal Rule
13 of Civil Procedure's requirement that allegations of fraudulent mail and fraudulent wire transfers
14 must be alleged with particularity.   The court agrees that the third amended complaint's
15 allegations do not resolve the Rule 9 deficiencies found by the court regarding Plaintiffs' second
16 amended complaint.  As previously found by the court, some of the elements to state a claim for
17 mail fraud and wire fraud must be alleged with particularity as required by Rule 9.   The Ninth
18 Circuit has found as follows:

> To the degree that the first requirement--the formation of a scheme or artifice to defraud--requires a showing of the defendants' state of mind, general rather than particularized allegations are sufficient. Similarly, the third requirement--specific intent to deceive or defraud--requires only a showing of the defendants' state of mind, for which general allegations are sufficient. The only aspects of wire fraud that require particularized allegations are the factual circumstances of the fraud itself.

23 Odom, 486 F.3d at 554.

24      Rule 9(b) requires that fraud be pled with particularity.  Rule9 (b) provides: "In all
25 averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with
26 particularity.   Malice, intent, knowledge, and other condition of mind of a person may be averred

generally." Fed.R.Civ.Pro. 9(b). "Rule 9(b) requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." Odom, 486 F.3d at 553, 555. "The pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Odom, 486 F.3d at 553-54; Schreiber Distrib, 806 F.2d at 1401. "While the factual circumstances of the fraud itself must be alleged with particularity, the state of mind--or scienter--of the defendants may be alleged generally." Odom, 486 F.3d at 553-54; In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1547 (9th Cir.1994) (en banc).

The complaint's allegations concerning Defendants' use of the United States Mail and wire service to transfer information concerning Defendants' packing and accounting statements, along with reproductions of these documents made during discovery in Flores I are insufficient to meet Rule 9. The complaint alleges that inaccurate records were mailed to Plaintiff, repeated over the phone lines, and confirmed during discovery. According to the complaint, these record included pack-out reports, billing invoices; bills of lading, growing history reports, money collected and due, information regarding liens, accounts of sale, and representations that Plaintiffs' crops sold for a different price than those reported and mailed. These allegations are not specific enough to meet Rule 9's standards. While the complaint does generally allege documents contained the allegedly false information, the complaint does not allege the specific content of these documents. While the complaint alleges these false transmissions were made between 1995 and 2003, the complaint does not allege the specific time or place of the each alleged fraudulent communication. While it appears many of these alleged false mail and wire transmissions were made to Plaintiffs, the complaint implies some may have been made to other growers or Plaintiffs' attorneys; Yet the complaint does not specifically allege the other people to whom these false misrepresentations were made. Finally, the complaint does not allege what Defendants made which false representations. Thus, the complaint fails to allege mail or wire fraud.

The racketeering acts underlying the first cause of action are alleged mail and wire frauds. Because these racketeering not sufficiently alleged, the complaint fails to state a RICO cause of action, and the first cause of action based on Section 1964(c) must be dismissed.

The court recognizes that when dismissing a complaint, the Ninth Circuit has stated that "leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir.2001) (internal quotation marks omitted); Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. (9th Cir. 1996). However, in this case, the complaint's Rule 9 deficiencies have already been explained to Plaintiffs, and Plaintiffs have already been given leave to amend to comply with Rule 9. If a court has already granted a plaintiff leave to amend once, the court's discretion in determining whether to allow additional opportunities to amend is "particularly broad." Miller v. Yokohama Tire Corp., 358 F.3d 616, 622 (9th Cir. 2004); Chodos v. West Publishing Co., 292 F.3d 992, 1003 (9th Cir. 2002). The court finds that Plaintiffs are either unwilling or unable to plead additional information pursuant to Rule 9. The court is already proceeding on a third amended complaint. The court therefore finds that a fourth amendment complaint, in which Plaintiffs are allowed, yet again, to allege the mail or wire fraud with more particularity, is neither an efficient use of the court's limited resources, fair to Defendants, nor likely to obtain a complaint on which Plaintiff may proceed. Thus, the first cause of action brought under 18 U.S.C. § 1962(c) is subject to dismissal without leave to amend.

**B. Civil RICO in Violation of 18 U.S.C. § 1962(a)&(b)**

The second cause of action alleges violations of 18 U.S.C. § 1962(a) and 18 U.S.C. § 1962(b). This cause of action is based on Defendants' alleged fraudulent transfers of a capital infusions into Yosemite.

Title 18 U.S.C. § 1962(a) prohibits a person who receives income derived from a pattern of racketeering activity from using or investing such income in an enterprise engaged in interstate

commerce. Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1147 (9th Cir. 2008). A violation of 18 U.S.C. § 1962(a) requires proof of the following elements: (1) a person receives income derived directly or indirectly from a pattern of racketeering activity; (2) that person uses or invests, directly or indirectly, any part or proceeds of such income in the acquisition of any interest in, or the establishment or operation of any enterprise; and (3) that enterprise is engaged in or its activities affect interstate or foreign commerce. United States v. Robertson, 15 F.3d 862, 868 (9th Cir. 1994), *reversed on other grounds by* United States v. Robertson, 514 U.S. 669 (1995). "[A] plaintiff seeking civil damages for a violation of section 1962(a) must allege facts tending to show that he or she was injured by the use or investment of racketeering income." Nugget Hydroelectric, L.P. v. Pacific Gas and Elec. Co., 981 F.2d 429, 437 (9th Cir. 1992).

Under 18 U.S.C. § 1962(b), a person may not "through a pattern of racketeering activity . . . acquire or maintain, directly or indirectly, any interest in or control of any enterprise." Section 1962(b) "prohibits engaging in a racketeering activity to acquire or maintain an interest in or control of an enterprise." Schreiber Distrib., 806 F. 2d at 1398. "Thus, it requires a specific nexus between the control of the enterprise and the racketeering activity." Sea-Land Service, Inc. v. Atlantic Pacific Int'l, 57 F. Supp. 2d 1048, 1055 (D. Haw. 1999). As explained in one RICO treatise, section "1962(b) was aimed primarily at situations in which criminal methods were employed to take control of legitimate businesses. To . . . cite Mario Puzo, The Godfather depicts a violation of § 1962(b) when Michael Corleone obtained an interest in a Las Vegas gambling casino by means of murder and extortion, both predicate offenses under the RICO Act." D. McCormack, 1 Racketeer Influenced Corrupt Organizations § 5.22, at 5-25 (1997). See also National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 259 (1994) ("enterprise" referred to in section 1962(b) is something acquired through the use of illegal activities).

Both Section 1962(a) and Section 1962(b) require "racketeering activity", which is the commission of a predicate act found in 18 U.S.C. § 1961(1). See Wilcox v. First Interstate Bank of Oregon, N.A., 815 F.2d 522, 529 (9th Cir. 1987) (discussing differences and similarities

between Section 1962(a), Section 1962(b), and Section 1962(c)); <u>Von Grabe v. Sprint PCS</u>, 312 F.Supp.2d 1285, 1309 (S.D.Cal. 2003); <u>Trudel v. Stoltz</u>, 1995 WL 566935, *3 (9th Cir.1995) (in order to state a "RICO violation, a plaintiff must allege each of the following elements: (1) conduct, (2) of an enterprise, (3) though a pattern (4) of racketeering activity." . . . . "Although section 1962(c) differs somewhat from section 1962(b), both require a 'pattern of racketeering activity'").

### *1. Racketeering Activity - Mail and Wire Fraud Concerning DDJ Entities*

It is not entirely clear what racketeering activity Plaintiffs contend is at issue in the second cause of action. It appears that some of the racketeering activity at issue in Plaintiffs' second cause of action is the mail and wire fraud conducted by DDJ Entities and discussed above. For the same reasons that Plaintiffs have failed to comply with Rule 9 to state a claim under Section 1962(c) as discussed above, Plaintiffs have failed to adequately allege a mail or wire fraud predicate act for Section 1962(a) and Section 1962(b) claims.

### *2. Racketeering Activity - Mail and Wire Fraud Concerning Yosemite*

Another predicate act of racketeering, used to support Plaintiffs' Section 1962(a) and Section 1962(b) claims, is a separate mail and wire fraud than those discussed above. It appears the mail and wire frauds at issue in the second cause of action are those frauds committed between October 2000 and continuing to the present concerning the capital infusions DDJ Entities' shareholders/members made into Yosemite. The complaint's allegations concerning Defendants' use of the mail and wire concerning Defendants' capital infusion into Yosemite are insufficient to meet Rule 9. Plaintiffs have failed to identify the circumstances constituting fraud so that Defendants can prepare an adequate answer from the allegations. Plaintiffs have simply recited that a mail and wire fraud existed without providing any specificity. Such allegations are insufficient to state a predicate act for mail and wire fraud.

### 3. Racketeering Activity – Conversion

It is also possible that the predicate acts for Plaintiffs' Section 1962(a) and Section 1962(b) claims are DDJ Entities' shareholders/members converting proceeds belonging to DDJ Entities to make a capital infusion into Yosemite. Conversion is not a predicate act under Section 1961. Thus, this theory of a predicate act fails.

### 4. Racketeering Activity – Section 1956(a) Money Laundering

In the opposition, Plaintiffs contend that one of the predicate acts at issue for the Section 1962(a) and Section 1962(b) claim is money laundering in violation of 18 U.S.C. § 1956(a). To show money laundering under Section 1956 the plaintiff must prove that the defendant: (1) engaged in a financial transaction which involved proceeds from specified illegal activity; (2) knew the proceeds were from illegal activity; and (3) intended the transaction either to promote the illegal activity or to conceal the nature, source, or ownership of the illegal proceeds. United States v. Marbella, 73 F.3d 1508, 1514 (9th Cir. 1996).

As used in Section 1956, the term "specified unlawful activity" means:

> (A) any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31;
> (B) with respect to a financial transaction occurring in whole or in part in the United States, an offense against a foreign nation involving--
> . . . .
> (ii) murder, kidnaping, robbery, extortion, destruction of property by means of explosive or fire, or a crime of violence (as defined in section 16);

18 U.S.C. § 1956(c)(7).

#### a. "Specified Unlawful Activity" - Mail and Wire Fraud

The "specified unlawful activity" at issue in a Section 1956(a) violation can be activities constituting an offense listed in 18 U.S.C. § 1961(1). See 18 U.S.C. § 1956(c)(7)(A). Section 1956(a)(1) essentially provides a separate predicate act for engaging in financial transactions with the intent to promote or conceal other racketeering acts. The complaint's allegations of

12

mail and wire fraud are inadequate for the reasons discussed above. As such, neither mail nor wire fraud can be the "specific unlawful activity" necessary for a Section 1956(a)(1) violation.

### b. "Specified Unlawful Activity" – Robbery

The "specified unlawful activity" at issue in a Section 1956(a) violation can be an activity constituting an offense listed in 18 U.S.C. § 1961(1). See 18 U.S.C. § 1956(c)(7)(A). Section 1961(1)(A) lists specific crimes that can constitute predicate acts of racketeering. Under Section 1956(c)(1), this list can also serve as the "specified unlawful activity" necessary to show Section 1956(a) money laundering. One of the specific crimes listed in Section 1961(a)(A) is any act or threat involving robbery which is chargeable under State law and punishable by imprisonment for more than one year. In the complaint, Plaintiffs appear to allege that Defendants robbed proceeds that belonged to DDJ Entities' creditors. A robbery under state law can constitute a specified unlawful activity. California law defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Cal. Penal Code § 211.

In addition, a "specified unlawful activity" can also be a robbery as defined in Section 16. 18 U.S.C. § 1956(c)(7)(B)(2). Title 18 U.S.C. § 16 provides as follows:

> The term "crime of violence" means--
> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16. In the RICO context, robbery is defined as the "unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining." 18

13

U.S.C. 1961(b)(1).

Under all of these definitions of robbery the unlawful taking must be accompanied with force or fear. An alleged taking or misappropriation of DDJ Entities' assets is not sufficient to allege a robbery. There are no allegations that Defendants actions toward Plaintiffs were done by force, violence, or fear. Thus, robbery under either Section 18 U.S.C. § 1956(c)(7)(A) (robbery under state law) or 18 U.S.C. § 1956(c)(7)(B)(ii) (crime of violence under federal law) cannot serve as the "specified unlawful activity" needed for money laundering as defined un Section 1956(a).

### *5. Racketeering Activity – Section 1957(a) Money Laundering*

Plaintiffs appear to contend that one of the predicate racketeering acts at issue for the Section 1962(a) and Section 1962(b) claims is money laundering in violation 18 U.S.C. § 1957(a). Section 1957(a) prohibits knowingly engaging or attempting to engage in a monetary transaction in criminally derived property of a value greater than $10,000 that is derived from specified unlawful activity. For a Section 1957(a) violation, the term "specified unlawful activity" has the meaning given that term in Section 1956(a) discussed above. See 18 U.S.C. § 1957(f)(3).

Plaintiffs' allegations concerning the alleged Section 1957(a) "specified unlawful activity" act are similar to the allegations just discussed concerning the alleged Section 1956(a) predicate act of money laundering. Because both sections define "specified unlawful activity" the same, this alleged predicate act will suffer the same fate as the Section 1956(a) predicate act.

### *6. Racketeering Activity - Theft of an Interstate Shipment*

In the complaint, Plaintiffs make a brief reference to Yosemite using criminally derived property to purchase inventory for Yosemite and then shipping this inventory via interstate shipments in violation of 18 U.S.C. § 659, which prohibits theft from interstate shipments. As

14

discussed above, 18 U.S.C. § 1961(1) defines what acts will be considered acts of "racketeering activity." Theft of interstate shipments in violation of Section 659 is listed as a racketeering activity in Section 1691(1). Section 659 prohibits the embezzling, stealing, or unlawful taking, carrying away or concealing or obtaining deceptively, with intent to convert, "any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment." Section 659 also prohibits buying or receiving or possessing "goods or chattels, knowing the same to have been embezzled or stolen."

As explained in the court's June 18, 2008 order dismissing the prior compliant, the theft at issue in this action is Defendants' alleged actions to obtain money belonging to DDJ Entities and Plaintiffs. While the complaint alleges Defendants used this unlawfully taken money to purchase Yosemite's inventory, which was then sent through interstate commerce, the complaint does not allege that Defendants stole the inventory while it was moving in interstate commerce or possessed inventory that was stolen. Section 659 says nothing about stolen money. Because Section 659 concerns the theft of property and not the theft of money used to then buy property, the complaint fails to state a predicate act of racketeering under Section 659.

### *7. Racketeering Activity – Other Predicate Acts*

In Plaintiffs' opposition, Plaintiffs mention other possible predicate acts. Plaintiff notes that in the second amended complaint and the court's order dismissing the second amended complaint with leave to amend, Plaintiffs had attempted to allege the predicate act of interstate and foreign travel to aid a racketeering enterprise. Title 18 U.S.C. §1952(a), also known as the Travel Act, prohibits a defendant from: (1) traveling in interstate commerce with the intent to promote an unlawful activity, and (2) committing an overt act in furtherance of that activity. See United States v. Stafford, 831 F.2d 1479, 1482 (9th Cir. 1987). The court has reviewed the current complaint and found minimal, if any, allegations concerning Defendants' violations of the Travel Act. In Paragraph 28 of the complaint Plaintiffs list the predicate acts that they

15

believe advanced the pattern of racketeering. Plaintiffs list mail and wire fraud pursuant to Section 1341 and Section 1342, money laundering in violation of Section 1956, and money laundering in violation of Section 1957. Because the complaint contains no allegations concerning the Travel Act, Plaintiff's arguments about this being a predicate act of racketeering are unavailing.

References to the Travel Act were made in the second amended complaint. However, this complaint was dismissed and the current complaint supercedes the second amended complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). An amended complaint must be "complete in itself without reference to the prior or superceded pleading." Local Rule 15-220. Any causes of action or claims alleged in a prior complaint that are not alleged in an amended complaint are waived. King, 814 F.2d at 567; London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981).

### 8. *Leave to Amend*

The court recognizes that when dismissing a complaint leave to amend should ordinarily be granted. Bly-Magee, 236 F.3d at 1019; Chang, 80 F.3d at 1296 However, in this case, the complaint's deficiencies have already been explained to Plaintiffs, and Plaintiffs have already been given leave to amend. The court finds that Plaintiffs are either unwilling or unable to plead additional information necessary to allege the required predicate acts of racketeering. The court is already proceeding on a third amended complaint. The court therefore finds that a fourth amendment complaint is neither an efficient use of the court's limited resources, fair to Defendants, or likely to obtain a complaint on which Plaintiff may proceed. Thus, leave to amend Plaintiff's second cause of action for a violation of Section 1962(a) and Section 1962(b) will not be granted.

//

## C. Third Cause of Action – Independent Violation of Section 1957 - Money Laundering

Plaintiffs' third cause of action alleges laundering of monetary instruments in violation of Section 1957. Preliminarily, the court notes that Plaintiff does not have an independent civil remedy for a violation of Section 1957. Plaintiffs have a civil remedy for violation of Section 1962 pursuant to 18 U.S.C. § 1964, with provides the District Courts with jurisdiction to prevent and restrain violation of Section 1962. However, Section 1964 does not give a civil remedy for a violation of Section 1957. Section 1957 itself also does not give a civil remedy. Thus, on its face, Plaintiffs' cause of action for a violation of Section 1957 fails.

Regardless, for the reasons discussed above, Plaintiffs have failed to state a claim for a violation of Section 1957. Section 1957(a) prohibits knowingly engaging or attempting to engage in a monetary transaction in criminally derived property of a value greater than $10,000 that is derived from specified unlawful activity. For a Section 1957(a) violation, the term "specified unlawful activity" has the meaning given that term in Section 1956(a). See 18 U.S.C. § 1957(f)(3). As used in Section 1957, the term "specified unlawful activity" means:

> (A) any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31;
> (B) with respect to a financial transaction occurring in whole or in part in the United States, an offense against a foreign nation involving--
> . . . .
> (ii) murder, kidnaping, robbery, extortion, destruction of property by means of explosive or fire, or a crime of violence (as defined in section 16);

18 U.S.C. § 1956(c)(7). As discussed above, the "specified unlawful activity" at issue in a Section 1957(a) violation can be activities constituting an offense listed in 18 U.S.C. § 1961(1). See 18 U.S.C. § 1956(c)(7)(A). Because the complaint's mail and wire fraud allegations are deficient, as discussed above, they cannot serve as a "specific unlawful activity" necessary for a Section 1957 violation. The "specified unlawful activity" at issue in a Section 1957 can also be specific state crimes listed in Section 1961(1)(A), such as the crime of robbery. As discussed above, robbery under state law requires taking possession of another's personal property by threat

or fear. No allegations of threat or fear are in the complaint. Finally, "specified unlawful activity" can also be a robbery as defined in Section 16. 18 U.S.C. § 1956(c)(7)(B)(2). However, Section 16 also requires as an element use, attempted use, or threatened use of physical force against the person or property of another, or any other offense that is a felony and, by its nature, involves a substantial risk that physical force against the person or property. 18 U.S.C. § 16. Thus, robbery cannot serve as a "specified unlawful activity."

Accordingly, Plaintiffs' third cause of action for money laundering in violation of Section 1957 fails as a matter of law. Leave to amend will not be given because it would be futile.

**E. PACA Trust**

To the extent the complaint alleges a PACA trust, this claim has been rejected in numerous orders and in numerous cases. Were the court not dismissing the complaint without leave to amend, sanctions would be imposed for raising this issue yet again.

**F. State Law Claims for Negligence and Constructive Trust**

The complaint alleges that the shareholder/members of DDJ Entities breached their duty of care to Plaintiffs by dissipating DDJ Entities' assets. As a remedy, Plaintiffs ask that a constructive trust be created under state law. At this stage of the proceedings, Plaintiffs' possible state law negligence claim is the only cause of action.

Supplemental jurisdiction, also know as pendant jurisdiction, "is a doctrine of discretion not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to the litigants; if these are not present, a federal court should hesitate to exercise jurisdiction over state claims." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). The court may decline to exercise supplemental jurisdiction over state claims when the federal claims are dismissed before trial. See 28 U.S.C. § 1367(c)(3); Gibbs, 383 U.S. at 726. In the usual case in which federal causes of action are eliminated before trial, the balance of factors points toward

declining to exercise jurisdiction over the remaining state law claims. Reynolds v. County of San Diego, 84 F.3d 1162, 1171 (9th Cir. 1996), *overruled on other grounds by* Acri v. Varian Associates, Inc, 114 F.3d 999, 1000 (9th Cir. 1997); Schneider v. TRW. Inc., 938 F.2d 986, 993 (9th Cir. 1991). However, just because state law claims "should" be dismissed if federal claims are dismissed before trial, no case requires that they be dismissed. Acri, 114 F.3d at 1000. In deciding whether to retain jurisdiction, the court should consider economy, convenience, fairness, and comity. Satey v. JPMorgan Chase & Co., 521 F.3d 1087, 1091 (9th Cir. 2008); Acri, 114 F.3d at 1001.

Plaintiffs have advanced no reason why this court should retain supplemental jurisdiction over the purported negligence cause of action left. The remaining state cause of action concerns the possible duty owed by a corporations' shareholders/ members to creditors and potential creditors of that corporation. No party has shown the court what duty of care DDJ Entities or any DDJ Entities' agent owed Plaintiffs. Plaintiffs have cited no statute or case authority supporting such a theory of negligence. Plaintiffs' foray into the exact confines of shareholders/members's duties is best defined by the California courts. Defining this duty is of more importance to the people of this state. The court will, therefore, decline to exercise supplemental jurisdiction and dismiss the remaining negligence cause of action without prejudice.

//
//
//
//
//
//
//

# ORDER

Accordingly, based on the above memorandum opinion and order, the court ORDERS that:

    A.    Defendants' motion to dismiss is GRANTED.

    B.    The complaint is DISMISSED WITHOUT LEAVE TO AMEND and WITH PREJUDICE as to the federal causes of action but WITHOUT PREJUDICE to the re-filing of the state negligence cause of action in state court; and

    C.    The Clerk of the Court is DIRECTED to close this case.

IT IS SO ORDERED.

**Dated:   March 31, 2009**                      /s/ Anthony W. Ishii
CHIEF UNITED STATES DISTRICT JUDGE